

**FORM 1.997.   CIVIL COVER SHEET**

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form shall be filed by the plaintiff or petitioner for the use of the Clerk of Court for the purpose of reporting judicial workload data pursuant to Florida Statutes section 25.075. (See instructions for completion.)

I.   CASE STYLE                    17th Circuit Court Broward County, FLORIDA

(Name of Court)

Plaintiff   Rudyard Jeffers          Case #:   **17006711**
            Maurisia Jeffers         Judge:    **12**

vs.

Defendant   AAH 2LLC, Patrick Whelan
            Havenbrook Homes LLC

II.   TYPE OF CASE        (If the case fits more than one type of case, select the most definitive category.)
                          If the most descriptive label is a subcategory (is indented under a broader
                          category), place an x in both the main category and subcategory boxes.

☐ Condominium                                    ☐ Homestead residential foreclosure $0 - $50,000
☒ Contracts and indebtedness                     ☐ Homestead residential foreclosure $50,001 - $249,999
☐ Eminent domain                                 ☐ Homestead residential foreclosure $250,000 or more
☐ Auto negligence                                ☐ Nonhomestead residential foreclosure
☐ Negligence—other                                   $0 - $50,000
  ☐ Business governance                          ☐ Nonhomestead residential foreclosure
  ☐ Business torts                                   $50,001 - $249,999
  ☐ Environmental/Toxic tort                     ☐ Nonhomestead residential foreclosure
  ☐ Third party indemnification                      $250,000 or more
  ☐ Construction defect                          ☐ Other real property actions $0 - $50,000
  ☐ Mass tort                                     ☐ Other real property actions $50,001 - $249,999
  ☐ Negligent security                            ☐ Other real property actions $250,000 or more
  ☐ Nursing home negligence                      ☐ Professional malpractice
  ☐ Premises liability—commercial                   ☐ Malpractice—business
  ☐ Premises liability—residential                  ☐ Malpractice—medical
☐ Products liability                               ☐ Malpractice—other professional
☐ Real property/Mortgage foreclosure             ☐ Other
  ☐ Commercial foreclosure $0 - $50,000            ☐ Antitrust/Trade regulation
  ☐ Commercial foreclosure $50,001 - $249,999      ☐ Business transactions
  ☐ Commercial foreclosure $250,000 or more        ☐ Constitutional challenge—statute or ordinance



IN THE ~~COUNTY~~ CIRcuit COURT OF THE 17th
JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY
FLORIDA CIVIL ACTION

CASE:        **17 0 0 6 7 1 1**
DIVISION:

Rudyard Jeffers
Maurisia Jeffers,

                    Plaintiff

SUES.

RHA2 LLC,
Havenbrook Homes,
PATRICK WHELAN,

                    Defendants

_____/

### COMPLAINT

The Plaintiff, Rudyard and Maurisia Jeffers, hereby sue Defendants, RHA2 LLC, Havenbrook

Homes LLC and Patrick Whelan, and as grounds therefore alleges as follows:

1.  This action for damages l excess of Fifteen thousand ($15, 000.00) Dollars, exclusive of

    fees and costs.

2.  At all material times Plaintiffs, Rudyard & Maurisia Jeffers, was a resident of Pompano

    Beach, Broward County, Florida and is otherwise *sui juris.*

3.  At all material times Defendant, RHA2 LLC, is a foreign registered corporations out of

    Delaware with authorization to conduct and are actively conducting business in the state

    of Florida and in Broward County, Florida.

4.  More specifically, on or about March 17, 2014 RHA2 LLC purchased the rental property

    in question 2170 NE 1st Ave, Pompano Beach FL, 33060.

5. The Plaintiffs, Rudyard & Maurisia Jeffers were the 1st and only tenants to lease from the Defendants the said property on September 6, 2014 within their 6 months of purchase and has now renewed 2 more times making us currently in our 3rd year.

6. At all material times Defendant uses, Corporation Service Company is a foreign registered corporation out of Delaware with authorized to conduct and are actively conducting business in the state of Florida.

7. More specifically, Corporation Service Company has been listed as the registered agent on record for both RHA2 LLC and Havenbrook Homes LLC during our tenancy at the rental property in question.

8. At all material times Defendant, Havenbrook Homes is a foreign registered corporation out of Delaware with authorized to conduct and is actively conducting business in the state of Florida and in Broward County, Florida.

9. More specifically, as per contracted lease between the parties, Havenbrook Homes LLC *"is authorized to manage the premises and to act on behalf of the Landlord with respect to this lease, including, without limitation, for the service of process and receiving and receipting for demands and notice"* of RHA2 LLC specifically for 2170 NE 1st Ave, Pompano Beach FL 33060, the rental property in question.

10. At all material time Defendant, Patrick Whelan is the CEO of Havenbrook Homes LLC which conducts and is actively conducting business in the state of Florida and in Broward County, Florida.

11. Rudyard and Maurisia Jeffers held two prior contracts during September 6, 2014 to September 5, 2016.

11. Rudyard and Maurisia Jeffers held two prior contracts during September 6, 2014 to September 5, 2016.

12. Rudyard and Maurisia Jeffers currently holds a renewed lease agreement with Havenbrook Homes LLC for RHA 2LLC signed July 28th, 2016 for term of 12 months from September 6, 2016 to September 5, 2017 and with a security deposit brought forward of two thousand six hundred and twenty five dollars ($2625.00) from 2014 initial lease.

13. Water stains were evident in Kitchen cupboards under the sink in 2014 and concerns were expressed but were assure that they were old stain and non essential from 2014 initial inspection.

14. Since leasing the property, 2170 NE 1st Ave, Pompano Beach FL 33060 in 2014 from the defendants, the property has had severe plumbing problems and air conditioning and water leaks.

15. Plaintiffs consistently requested maintenance services within 5 months of initial lease in 2014 for major backflow issues in the property second bathroom through the tub and toilet.

16. Reimbursements/concessions were made to plaintiffs for hotel stay during said repairs and were able to reoccupy the home upon the completion.

17. Within another several months into the next years' lease renewal for 2015 the water stains under the kitchen sinks became more and more obvious as it was spreading but once reported there was very little to no response from Havenbrook Homes LLC.

18. During the early months 2016 the house started flooding in various rooms such as laundry, bathroom, closets, kitchen and living room walls without any idea of the source.

19. In July 2016 Havenbrook reached out to us about a third (3rd) lease renewal and we responded with specific uncertainty due to the water leaks and the broken ac and we were given the assurance that they will be immediately.

20. In good faith we renewed the lease and unfortunately water and ac flooding got worse, the horrible odor increased as the walls were overloaded with water which lead to mold and infestation of roaches, flies and bugs living and breathing through the walls making the air quality poor and very difficult live in or enjoy the house.

21. Household started getting sick from poor conditions, Rudyard was rush to the hospital for treatment to due poor air quality and his son ZJ who suffers from 11 ailments including asthma also had to relocate from the house because his conditions were becoming more inflamed.

22. In November 2016 thanksgiving was embarrassing and unbearable we couldn't eat or cook in the house and had to spend most of the time outside.

23. In December we were forced to pay over $1500 to fix the ac unit and find the source of the leak behind the kitchen, however, despite numerous requests we are yet to be reimbursed for patching the copper pipes to stop the leaks.

24. Since September 2016 we were not able to use 1 bull bathroom, use the dishwasher or the washing machines, in the home despite paying full rent.

25. We reached out to the State Department in December to help us to mediate with Havenbrook fix all these problems and they denied the issues even existed whilst on the other hand claiming to have fixed them.

26. Havenbrook has been cited by the City of Pompano for many more issues that we in addition to the complaints that we have been advocating to have repaired in the home and to which they have admitted guilt.

27. We had requested early termination of lease but are at total impasse as to the terms

28. It is now almost 3 years of renting this home and its is now unintenantable

Plaintiff further states that the Defendant is/ is not in the Military Service of the United States.

Plaintiff further states that a copy of the written instrument or invoice on which this suit is based is attached hereto.

The undersigned, being duly sworn, says that the foregoing is a just and true statement of the amount owing the Plaintiff by said Defendant, exclusive of all setoffs and just grounds of defense, and that this suit is brought in good faith.

The Plaintiffs Rudyard and Maurisia Jeffers, respectfully requests this honorable Court enter a Judgment in our favor against Defendant (s) RHA2 LLC, Havenbrook Homes LLC, Corporation Service Company and Patrick Whelan, in the sum of $50, 000 (fifty thousand dollars) together with the court costs and interest, termination of the current lease, injunction Against them from posting negatively to the credit companies or filing eviction against this lease on Plaintiff that may be incurred and any other just and further relief as this Honorable Court deems just and proper.

Date: 4-13-2017

Signature of Plaintiff
Rudyard & Maurisia Jeffers
P-O Box 5764
Fort Lauderdale, FL 33310
T: 954-873-5413



## (1) RENTAL AGREEMENT

Date of Lease: <u>7/28/2016</u>

Address of Premises: <u>2170 NE 1st Ave, Pompano Beach, FL 33060</u>

Name of Owner: <u>RHA 2 LLC</u>

Agent: HavenBrook Homes, LLC

Name of Resident: <u>Rudyard Jeffers,Maurisia Jeffers</u>

Authorized Occupants: <u>Rudyard Jeffers,Leah Jeffers,Junivia Jeffers</u>

Housing Choice:

Utilities Provided: N/A

Term of Lease: <u>12</u> Months and <u>0</u> Days

Lease shall begin on: <u>9/6/2016</u>

Lease shall terminate on: <u>9/5/2017</u>, at 12 Noon.

Rent: <u>$1,926.00</u> Per Month

Security Deposit: <u>$2,625.00</u>

Pet Fee: <u>$0.00</u> *If your initial Rental Agreement indicates a Pet Fee has been paid, you are not required to pay an additional Pet Fee with this lease renewal

Re-Key Charge: <u>$150.00</u>

Pro-Rated Rent: <u>$1,605.00</u>

Document Number: 62B-FD6BA

**DISCLOSURE:** HavenBrook Homes, LLC, 3505 Koger Boulevard, Suite 400, Duluth, Georgia 30096, is authorized to manage the Premises and to act on behalf of Landlord with respect to this Lease, including, without limitation, for the purposes of serving of process and receiving and receipting for demands and notice. Management's corporate name and license number as required by the Florida Department of Business and Professional Regulation are <u>HavenBrook Homes, LLC</u> and <u>CQ1044680.</u>



# RENTAL AGREEMENT

Each person, or entity that signs this lease or any guarantor under a separate guarantor's agreement is jointly and severally liable for all Rent or other charges which come due. Management may look to any Resident or guarantor for payment of all or a part of any obligation due without first suing or attempting to collect from any other responsible party. Landlord rents to Resident, and Resident (jointly and severally) rents from Landlord the Premises, on and subject to the following conditions:

**1. DEFINITIONS:** "Landlord" means the owner of the Premises (also, sometimes, "Owner"). "Agent" means the property management company, as agent for the Landlord. "Management" means Landlord and Agent collectively. "Lease" or "Rental Agreement" means this lease agreement, as amended from time to time. "Resident" includes all tenants or other persons who signed or are obligated under the Lease and refers to the tenant. "Rent" means the base lease payment Resident shall pay to Landlord each month as further described in this Lease. "Additional Rent" means any late fees, returned check charges, or other fees as further set forth in this Lease. "Concessions" means any incentive or concession provided to the Resident as an inducement to enter into this Lease and to perform strictly according to the terms of the Lease throughout the entirety of the Term, including, but not limited to, free rent, reduced rent, or other incentives, or the reasonable value thereof. "His" shall also mean "her" when applicable. "Guests" and "Invitees" include, without limitation, the family of the Resident(s) and any individual(s), other than Resident, who are occupying, visiting, or attempting to visit the Premises for any purpose whatsoever. "Home" means the single-family structure located on the Premises. "Premises" means the Home located at 2170 NE 1st Ave, Pompano Beach, FL 33060 together with all fixtures, grounds, landscaping, improvements, and appurtenances. The full legal description of the Premises is the same as is recorded with the Clerk of the Superior Court of the county in which the Premises is located and is made a part of this Lease by reference.

**2. TERM:** The initial term of this Lease shall be for the term set forth on the first page of the Rental Agreement (the "Term"). Resident may not terminate this Lease prior to the end of the Term except in strict compliance with the provisions of this lease.

**3. POSSESSION:** If there is a delay in delivery of possession by Landlord, rent shall be abated on a daily basis until possession is granted, and Landlord shall not be liable for damages for delay in delivery of possession. The Resident acknowledges that he/she has inspected the Premises with a representative of the Management and accurately noted the condition of the Premises. Resident accepts the Premises in its current condition as suitable for occupancy by the Resident unless otherwise noted on the move-in inspection form.

**4. RENT:** Rent is payable monthly, in advance, on the first day of each month during the initial Term or any extended Term of this Lease, at the office of Management or such other place as Management may designate. No cash or third party checks will be accepted. No Management employee is authorized to accept cash under any circumstances, and the Resident may not rely on any statement made to him by a Management representative that cash will be accepted. Payment



should be made with one personal check, cashier's check, money order, credit card, debit card or electronic funds transfer and shall be payable to the order of Landlord, unless otherwise specified in written notice from Management. All other fees or charges due under this lease in addition to the Rent shall be known as "Additional Rent." In the event that this Lease commences on a date other than the FIRST day of the month, the Rent for the partial month shall be computed based upon a daily rate equal to 1/30th of the monthly Rent, and shall be due upon execution of the Lease.

**5. LATE PAYMENTS AND RETURNED CHECKS:** Time is of the essence of this Lease and, if Management elects to accept rent after the fifth (5th) day of the month, a late charge of 10% of the rent amount (the "Late Charge") shall be due at the time Rent is paid as Additional Rent. All late rents must be paid to Management in the form of a Bank Check or Money Order, as Resident's check will not be accepted. In the event Resident's check is not honored by the bank, Resident agrees to pay Management a handling charge of $30.00 or five percent (5%) of the face amount of the instrument, whichever is greater, plus an amount equal to that charged to Management by the bank as a result of the instrument not being honored and also, if due, the Late Charge. Resident agrees that the charges imposed by this paragraph are reasonable compensation for delay, administrative costs, and time in collecting past due rent, and are not penalties and that such costs are difficult to estimate accurately. Returned checks must be redeemed by Cashier's Check or Money Order. In the event more than one check is returned during the term of the Lease, Resident, upon written notice from Management, agrees to pay all future rents and charges in the form of Bank Check or Money Order. Late payment of Rent constitutes a default under the terms of this Lease; therefore, in addition to the other amounts due hereunder, any concession granted to the Resident becomes immediately due and re-payable as Additional Rent hereunder. Payments received shall be applied first to pay any unpaid Additional Rent, then to the monthly recurring Rent as stipulated in Paragraph 4

**6. SECURITY DEPOSIT AND FEES:** Resident agrees to deposit the Security Deposit with Management before taking possession of the Premises as security for Resident's fulfillment of the conditions of this Lease. Management has the right, in its sole discretion, to place the Security Deposit in an escrow account established only for the purpose of holding tenant security deposits, which may be an interest-bearing account, in which case tenant is entitled to 75% of the annualized average interest rate payable on such account or 5% per year simple interest, at Landlord's election, or to protect the deposit by a surety bond on file with the Clerk of Circuit Court and:

Resident's Security Deposit is held in an escrow account at <u>Wells Fargo Bank, 12751 S. Cleveland Ave., Fort Myers, FL 33907</u>. ___

Resident's Security Deposit will be refunded within fifteen (15) days after vacate date if:

(a) Lease Term has expired or Lease has been terminated by agreement of both parties, and Resident has vacated and surrendered possession of the Premises as of the effective date of such expiration or termination; and



(b) All monies due Management by Resident for Rent and Additional Rent have been paid through the effective date of termination; and

(c) Premises is not, in the sole discretion of Management, damaged and possession is surrendered in its original condition as of the effective date of termination or expiration, normal wear and tear accepted.

Security Deposit may be applied by Management to satisfy all or part of Resident's obligations, but such act shall not prevent Management from claiming damages in excess of the Security Deposit. Resident agrees not to apply the Security Deposit to any Rent payment and to pay the Re-Key Charge if all keys and garage door openers are not delivered to Management immediately upon Resident's move-out.

Other fees that may be due are not a Security Deposit, are not refundable, and do not reduce liability for damages to the Premises. In the event that Resident enters into a payment plan with Management with respect to the Security Deposit, Security Deposit Addendum, attached hereto and incorporated by reference into this Lease Agreement, will describe such payment plan details.

NOTICE: YOUR LEASE REQUIRES PAYMENT OF CERTAIN DEPOSITS. THE LANDLORD MAY TRANSFER ADVANCE RENTS TO THE LANDLORD'S ACCOUNT AS THEY ARE DUE AND WITHOUT NOTICE. WHEN YOU MOVE OUT, YOU MUST GIVE THE LANDLORD YOUR NEW ADDRESS SO THAT THE LANDLORD CAN SEND YOUR NOTICES REGARDING YOUR DEPOSIT. THE LANDLORD MUST MAIL YOU NOTICE, WITHIN 30 DAYS AFTER YOU MOVE OUT, OF THE LANDLORD'S INTENT TO IMPOSE A CLAIM AGAINST THE DEPOSIT. IF YOU DO NOT REPLY TO THE LANDLORD STATING YOUR OBJECTION TO THE CLAIM WITHIN 15 DAYS AFTER RECEIPT OF THE LANDLORD'S NOTICE, THE LANDLORD WILL COLLECT THE CLAIM AND MUST MAIL YOU THE REMAINING DEPOSIT, IF ANY.

IF THE LANDLORD FAILS TO TIMELY MAIL YOU NOTICE, THE LANDLORD MUST RETURN THE DEPOSIT BUT MAY LATER FILE A LAWSUIT AGAINST YOU FOR DAMAGES. IF YOU FAIL TO TIMELY OBJECT TO A CLAIM, THE LANDLORD MAY COLLECT FROM THE DEPOSIT, BUT YOU MAY LATER FILE A LAWSUIT CLAIMING A REFUND.

YOU SHOULD ATTEMPT TO INFORMALLY RESOLVE ANY DISPUTE BEFORE FILING A LAWSUIT. GENERALLY, THE PARTY IN WHOSE FAVOR A JUDGMENT IS RENDERED WILL BE AWARDED COSTS AND ATTORNEY FEES PAYABLE BY THE LOSING PARTY.

THIS DISCLOSURE IS BASIC. PLEASE REFER TO PART II OF CHAPTER 83, FLORIDA STATUTES, TO DETERMINE YOUR LEGAL RIGHTS AND OBLIGATIONS.



**7. EXTENDED TERMS:** Either party may terminate this Lease at the end of the initial Term by giving the other party at least sixty (60) days written notice prior to the end of the initial Term. If no such notice is given by either party, then the Term of this Lease will be automatically extended on a month-to-month basis (each such month being an "Extension Term") at a rent equal to the rent stipulated in the Lease renewal notice delivered by Management to the Resident, plus 20% thereof, until terminated by either party thereafter, which termination shall require fifteen (15) days notice prior to the end of any monthly period by either party. During such time as Resident remains on a month-to-month basis, Management and Resident shall remain bound by the terms of this Lease; provided, however, that Management may alter the terms and conditions of this Lease, including, without limitation, the amount of Rent due, upon sixty (60) days written notice to Resident.

**8. EARLY TERMINATION:** Resident may terminate this Lease at any time (an "Early Termination") by:

a. Giving Management at least sixty (60) days written notice (15 days during an Extension Term); plus

b. Paying all monies due through date of termination; plus

c. Paying an additional amount equal to one month's Rent as due under the Rental Agreement, as consideration for such right of termination; plus

d. Paying the amount of $2,071.00 as expenses for re-painting and cleaning the Premises if Resident hasn't resided at the Premises for at least one (1) year prior to termination; plus.

e. Repaying an amount equal to any Concessions that were given.

The foregoing shall not relieve Resident of the Resident's responsibilities and obligations regarding any damage to Premises. Resident must turn in all keys and garage door openers and receive a receipt from Management; it is the Resident's responsibility to produce this receipt as proof the keys and garage door openers were returned. If locks have been changed or if keys or garage door openers are not returned, Resident will owe and pay the Re-Key Charge. Keys and garage door openers must be physically handed to a representative of Management and may not be left in a night rent drop box. **In an Early Termination, Resident is not entitled to a refund of any termination fees or Security Deposit, even if the Premises is re-let prior to the end of the notice period.**

Management employees are not authorized to waive any notice and/or termination fees, and the Resident has no right to and may not rely on any Management employee's statement that Resident will not have to pay such fees or to comply with this provision in order to terminate the Lease early.

Notwithstanding the foregoing, if Resident is on active duty with the United States military and Resident or Resident's immediate family receives permanent change of station orders or

Page 5 of 38

62B-FD6BA

temporary duty orders for a period in excess of three months, Resident's early termination rights under this Lease shall be controlled by the Soldiers' and Sailors' Civil Relief Act of 1940 as amended in 50 U.S.C.A. § 50-590 and/or Florida Statutes Chapter 83, Part II, Section 682.

**9. NO ASSIGNMENT OR SUBLETTING:** Resident may not sub-let the Premises or assign this Lease without the prior written consent of Management, which consent may be granted or withheld in the sole discretion of Management.

**10. UTILITIES:** Resident agrees to pay promptly all utilities required under this Lease, including but not limited to electricity, gas, water, hot water, sanitation and sewer (collectively referred to "Required Utilities"), and any optional utilities desired by Resident including but not limited to telephone, internet, satellite or cable television (collectively referred to "Optional Utilities"). All utility accounts shall be established by Resident directly with the applicable utility company. Required Utilities in the Premises must remain active through the full term of the lease. In the event Resident fails to timely establish utility/services (or utilities/services are transferred back to Management during the term), Management may charge Resident for any utility/service billed to Management with respect to the property and may charge a reasonable administration fee (for each month or part thereof) for billing of the utility/service in the amount of $25 per invoice.

Landlord is responsible for the payment of trash collection only when included in municipal taxes. In the event that trash collection is billed separately from municipal taxes, payment for trash collection is Tenant's responsibility, and Tenant is required to contract for professional trash collection and may not take individual responsibility for trash removal.

Resident acknowledges that continued occupancy of the Premises when any Required Utility services have been terminated is hazardous. Resident agrees not to terminate, cut off, interrupt, or discontinue any Required Utilities to the Premises. Breach of this provision shall constitute a default under this Lease, giving Management the right to terminate Resident's right of possession and/or this Lease immediately and to obtain possession of the Premises. Any charges billed to Management for any utilities due to Resident's breach of this provision shall be due as Additional Rent upon demand. Management does not warrant that the service of the utilities will be free from interruption; Resident acknowledges that any one or more of such services may be suspended by reason of accident or of repairs, alterations or improvements, or by operation of law, or for causes beyond the reasonable control of Management. Any such interruption or discontinuance of service shall not be deemed an eviction or disturbance of Resident's use or possession of the Premises, or any part thereof, or render Management liable to Resident for any damages, or entitle the Resident to any reduction or abatement of Rent, or relieve Resident from performance of the Resident's obligations under this Lease.

**11. DAMAGE OR DESTRUCTION OF THE PREMISES**: If the Premises is damaged by fire or casualty or malfunction of equipment or utilities, Resident shall immediately notify Management. Management, at its option, may (a) terminate this Lease upon written notice to Resident without liability for termination, or (b) cause the damage to be repaired, in which event



the Rent shall be abated to the extent and only for such time and to the extent that the Premises remains untenantable. If Resident or Resident's occupants, or Guests or Invitees, were responsible for the fire or casualty or malfunction of equipment or utilities and the Premises is untenantable, then Resident and all others must vacate the Premises and will still remain liable for the rent and damages.

**12. CONDEMNATION:** If the whole of the Premises, or any portion thereof which renders the dwelling uninhabitable, is condemned by any legally constituted authority, then this Lease shall terminate as of the date of such condemnation and the rent shall be accounted for as between Management and Resident as of that date. All damages for any condemnation of all or any part of the Premises including, without limitation, all damages as compensation for diminution in value of the leasehold, reversion and fee of the Premises, shall be the sole property of the Management without any deduction therefrom for any present or future estate of Resident, and Resident hereby assigns to Management all its right, title and interest to any such award; provided, Resident shall have the right to claim and recover from the condemning authority, but not from Management, such compensation as may be separately awarded or recoverable by Resident by reason of the condemnation and for or on account of any cost or loss which Resident might occur in removing Resident's personal property, provided that the effect of such award is not to reduce the award otherwise payable to Management.

**13. HOLD OVER/TRESPASS:** Resident shall remove all of Resident's property and deliver possession of the Premises in a clean condition and good order and repair to Management upon termination or expiration of this Lease. In the event the Resident fails to vacate the Premises after termination, non-renewal or expiration of this Lease (including, without limitation, the automatic renewal provisions of Section 7 above), then Resident shall pay Management an amount equal to two (2) times the existing Rent, prorated for each day held over and beyond the termination or expiration of this Lease, in addition to the other damages provided for under this Lease. Management's rights continue and survive independently beyond expiration or termination of this lease or Resident's occupancy of the Premises.

Keys must be physically handed to a representative of Management and may not be left in the Premises. Rent and all related fees and charges shall be due until such time as Management receives the keys to the Premises. Resident is responsible for receiving a receipt from Management. Such receipt shall be the sole proof of keys being returned by Resident. After termination or expiration of this Lease, Resident shall be deemed to be a tenant at sufferance. After termination, Resident shall not return to any area of the Premises. Resident shall not permit entry of any person as his Guest or Invitee if notified that this Guest's or Invitee's presence on the Premises is subject to criminal trespass under F.S.§ 810.08-810.09 or that the Guest and/or Invitee is in violation of this Lease. Management may terminate the Lease and possession of the Premises if any Resident allows an unauthorized person or trespasser access to the Premises in violation of this provision or paragraph. Management's rights under this paragraph shall continue and survive independently beyond expiration or termination of the Lease or Resident's occupancy of the Premises.

62B-FD6BA



**14. RIGHT TO ACCESS:** Management may enter the Premises (but with no obligation to do so) during all reasonable hours, at any time, without notice. In non-emergency situations, including, without limitation, for the purpose of inspection, maintenance, repair, alterations as may be deemed necessary by Management for the safety and preservation of the Premises or for exhibiting the Premises for sale, lease, inspection, or mortgage financing, Management may enter the Premises upon 12 hours' notice to the Resident, except where prohibited by law. Management may enter the Premises at any time without notice to Resident to protect life and prevent damage to the Premises in the event of an emergency or perceived emergency by Management. For purposes of this paragraph, Resident agrees to notify Management of any anticipated extended absence in excess of seven (7) days, and, during said absence, Management is specifically authorized, but is not obligated, to enter the Premises at times reasonably necessary. Resident authorizes Management to show the Premises to prospective residents once Resident has given or received a notice of non-renewal or termination.

**15. USE:** Premises shall be occupied only by persons named in Resident's application to rent or listed as Authorized Occupants in this Lease. The Premises shall be used for Residential purposes only and so as to comply with all federal, state, county, and municipal laws and ordinances and subject to any and all covenants and restrictions of record (as they may be hereafter amended and/or modified from time to time) and any and all rules and regulations imposed by the applicable homeowner's association. Residents and Resident's Guests and Invitees shall not engage in disorderly or criminal activity, or any act intended to facilitate criminal activity, including drug-related criminal activity (including acts defined by Section 102 of the Controlled Substance Act (2) U.S.C. 802), or in acts of violence or threats of violence, including the discharge of firearms, on or near the Premises and Property. Resident agrees that Management shall be entitled to deem any arrest, indictment, charge or conviction for criminal activity as conclusive proof of his or his Guests or Invitees' engagement in such criminal activity. Management may promptly report any suspicious activities to, and cooperate fully with, the appropriate authorities without being deemed to invade the Resident's privacy. Resident shall not commit waste to the Premises and shall not commit any act nor fail to take any action that would allow or cause endangerment to life, health, safety, welfare, property, or any other person on the Premises. Resident shall maintain the Premises in a clean, orderly, and sanitary condition and shall not allow any damages to the Premises, normal wear and tear excepted, or infestation of vermin, insects, bed bugs, rodents, or other pests. Resident shall not bring abandoned or discarded furniture, clothing, bedding, or other personal property onto the Premises as it could introduce an infestation of pests and bed bugs. Resident shall not place in any trash receptacle, nor keep or dispose of any material, which is environmentally hazardous. Noxious or offensive smells are not permitted, and Resident shall be liable for damages exceeding normal wear and tear for the repair or replacement of any carpet, flooring, ceiling, or walls that are permeated with noxious or offensive odors, including, but not limited to, cigarette and tobacco smoke or animal odors. Residents shall park only on concrete or hardcore surfaces. There shall be no parking or storage of vehicles, trailers, RVs, or suchlike, on grass at any time. Resident shall not, on or in Premises, improperly dispose of motor oil, paints, paint thinners, gasoline, kerosene or any other product which can cause environmental contamination on or in



Premises. DO NOT PUT PAINT OR CHEMICALS DOWN THE DRAINS OR TOILETS except for ordinary and necessary cleaning chemicals. Motor vehicles with expired or missing license plates, non-operative vehicles, boats, trailers, RVs and campers are not permitted on Premises without written permission of the Management. Any such vehicle may be removed by Management at the expense of Resident for storage or for public or private sale, at Management's option, and Resident shall have no right or recourse against Management in connection therewith. Resident, Guests, and Invitees shall act in a courteous and reasonable manner towards Management. Resident is prohibited from committing business libel or slander or making untruthful, unfair, or misleading statements to others about Management, its employees, agents, or the Premises. Any form of verbally or physically abusive, intimidating, or aggressive behavior directed at Management or any other person is prohibited. Resident, Guests, and Invitees shall not interfere with the daily business operations or job duties of Management or its employees. When notified by Management, Resident shall be prohibited from contacting any Management or employee and must conduct all further communications in writing. Resident is liable for the conduct of his Guests and Invitees. VIOLATION OF THE ABOVE PROVISIONS SHALL BE A MATERIAL BREACH OF THIS LEASE AND SHALL CONSTITUTE CAUSE FOR IMMEDIATE TERMINATION OF THIS LEASE.

**16. PETS:** No animals of any kind, with the exception of bona fide service animals, shall be permitted on the Premises without the prior written consent of Management and the execution and delivery by Resident of a Pet Addendum to this Lease and compliance with the terms thereof. Management may enter the Premises at any time to remove any unauthorized animals, or animals believed to be neglected, distressed or endangered. Resident is liable for all costs of retrieving, caring for, and boarding of any animals removed by Management or abandoned by Resident and Resident relieves Management from liability of any kind when Management causes the removal of any animal from the Premises.

**17. DEFAULT BY RESIDENT:** If Resident fails to pay Rent or other charges as and when due hereunder, or if Resident abandons the Premises, or if Resident fails to perform any of the Resident's obligations hereunder, or if any facts contained in Resident's rental application are untrue or misleading in any material respect, or if Resident fails to pay or continue utility service as required under this Lease, or if Resident allows unauthorized persons access to the Premises in violation of this Lease, or if Resident or Guests or Invitees cause damage or cleaning in excess of normal wear and tear, or Resident or his Guests violate the Rental Agreement and any addenda, then, upon the happening of any said events, Resident shall be in default hereunder, and, Management at its sole option, may terminate this Lease and/or Resident's right of possession by written notice to Resident following seven (7) days' written notice and opportunity to cure. Resident shall surrender possession of the Premises to Management upon the effective date of such termination and Resident shall be liable to Management for, and shall indemnify Management against, all damages as a result of such breach of the Lease by Resident, available at law or in equity, including rent loss and other expenses (for, without limitation, reletting, refurbishing, cleaning or otherwise making the Premises suitable for reletting) suffered or incurred by Management as a result of Resident's default and/or the termination of this Lease. In



the event Resident fails to pay Rent or other charges when due, or in the event the Resident is otherwise in default as provided in this Lease, Resident agrees to pay all costs of collection including without limitation, any collection agency fees, and reasonable attorney's fees and other costs of Management, together with an additional administrative fee of $150.00 as Additional Rent, plus other amounts that Landlord is entitled to charge Resident under this Lease. In any civil action or dispossessory for breach of this Lease, the prevailing party will be entitled to reasonable attorney's fees actually incurred and all expenses of litigation, including, but not limited to, court costs and administrative filing fees for evictions plus all costs of collection. All sums due which are in default shall bear interest at the lessor of 1.5% per month or the greatest amount permissible by law. No termination of this Lease prior to the normal ending thereof shall affect or abridge Management's right to collect Rent and other charges for the period prior to such termination or as otherwise provided in this Lease.

## 18. PROPERTY LOSS AND INSURANCE:

1.  Resident shall be responsible to insure Resident's personal property against loss or damage. Management shall at no time and under no circumstances be responsible for any loss of or damage to Resident's property or for any injury to Resident's Guests or Invitees.

2.  Resident is required to maintain renter's insurance, to name Management as an additional insured, and to provide Management with a certificate of insurance at Management's request. Resident hereby authorizes Management, upon inquiry, to receive all information regarding Resident's insurance coverage from Resident's insurer or insurance agent. If at any time Resident's renter's insurance lapses or is canceled during Resident's occupancy, or if Resident, upon request by Management fails to provide a current certificate of insurance as set forth herein. Without waiving any other remedy available to Landlord herein, Landlord may, but shall not be obliged to, purchase Renter's insurance in Resident's name and Resident shall reimburse Management for the cost thereof, plus a ten percent (10%) administrative fee.

3.  Resident shall obtain and keep in force during the term of this Lease a policy of general liability insurance naming Landlord and Management as additional insurance. Such insurance shall be in an amount of $300,000 for injury to or death of one person in any one accident or occurrence and in an amount of $500,000 for injury to or death of more than one person in any one accident or occurrence. Such insurance shall also provide coverage for property damage of at least $50,000. The limits of said insurance shall not, however, limit the liability of Resident hereunder. Said insurance shall have an Additional Insured-Lessor endorsement attached thereto. If Resident fails to procure and maintain said insurance Landlord may, but shall not be required to, procure and maintain the same, but at the expense of Resident. Said insurance policy shall be underwritten by companied rated A or better in "Best's Insurance Guide". The Lessee shall

Page 10 of 38

62B-FD6BA



deliver prior to possession to the Lessor copies of policies of such insurance or certificates evidencing the existence and amounts of such insurance with loss payable clauses as provided herein. No such policy shall be cancellable or subject to reduction of coverage or other modification except after ten (10) days' prior written notice to Management. Resident shall, within ten (10) days prior to the expiration of such policies, furnish Management with renewals or "binders" thereof, or Lessor may order such insurance and charge the cost thereof to Resident, which amount shall be payable by Lessee upon demand. Resident shall not do or permit to be done anything which shall invalidate the insurance policy. Resident shall forthwith, upon demand, reimburse Management for any additional premiums attributable to any act or omission or operation of Resident causing such increase in the cost of insurance.

4.    Resident acknowledges that it is necessary for Resident to provide appropriate climate control, keep the Premises clean, and take other measures to retard and prevent mold and mildew from occurring and/or accumulating in the Premises. Resident agrees to clean and dust the Premises on a regular basis and to remove visible moisture accumulation on windows, walls and other surfaces as soon as reasonably possible. Resident agrees not to block or cover any of the heating, ventilation or air-conditioning ducts in the Home. No waterbeds or space heaters are permitted on the Premises. Resident agrees to immediately report to Management: (i) any evidence of a water leak or excessive moisture in the Premises; (ii) any evidence of mold or mildew-like growth that cannot be removed by simply applying a common household cleaner and wiping the area; (iii) any failure or malfunction in the heating, ventilation, air conditioning systems or laundry systems in the Premises; and (iv) any inoperable doors or windows. Resident further agrees that (a) Resident shall be responsible for damage to the Premises and Resident's property as well as injury to Resident and permitted occupants resulting from Resident's failure to comply with the Terms of this Paragraph or with the Community Policies and (b) Resident's compliance with the Terms of this Paragraph or with the Community Policies shall not absolve Resident of Resident's obligations to maintain the Premises in accordance herewith this Paragraph nor give Resident cause for constructive eviction, abatement or termination.

**19. FIRE EXTINGUISHERS AND SMOKE ALARMS:** It is the responsibility of the Resident to periodically check extinguisher and smoke alarm(s) furnished to Resident in the Premises, if any, and to advise Management of any malfunctions and whether such equipment needs to be recharged or replaced. Any such equipment is to remain in and as a part of the Premises. In the event either such fire extinguisher or smoke alarm is removed from the Premises, a charge of $50.00 will be assessed to the Resident for each piece of such equipment removed from the Premises, and Resident shall be liable for and shall indemnify and hold harmless Management from all damages and losses as a result thereof. Resident further agrees

62B-FD6BA



that Resident shall be responsible for (and shall indemnify and hold Management harmless from) damage to the Premises and Resident's property, as well as injury to Resident, permitted Occupants, and Guests and Invitees, resulting from Resident's failure to comply with the terms of this Paragraph or with the Community Policies.

**20. LIMITATIONS ON LANDLORD'S LIABILITY**: In case Landlord or any successor to Landlord's interest in the Premises shall convey or otherwise dispose of the entire Premises and turn over to the transferee any funds held by it hereunder in which Resident has an interest; all liabilities and obligations on the part of such Landlord or its successor as Landlord under this Lease accruing before such conveyance or disposal shall terminate upon such conveyance or disposal, and thereupon all such liabilities and obligations shall be binding upon any such new owner of Landlord's interest in the Premises. Notwithstanding anything to the contrary contained in this agreement (each and every provision of this agreement being hereby made specifically subject to the provisions of this Section 20), if Landlord or any successor in interest of Landlord shall be an individual, grantor trust, joint venture or corporation, tenancy-in-common, firm or partnership, general or limited, it is specifically understood and agreed that there shall be absolutely no personal liability on the part of such individual or entity, or on the part of the members of such corporation, firm, partnership, grantor trust or joint venture with respect to any of the provisions of this agreement, and each and every Resident hereunder shall look solely to the equity of Landlord or such successor in interest, in the Premises for the satisfaction of each and every remedy of Resident or by any such successor in interest of any of the provisions of this agreement to be performed by either or Landlord or Management, such exculpation of personal liability to be absolute and without any exception whatsoever.

**21. FAILURE OF MANAGEMENT TO ACT:** Failure of Management to insist upon strict compliance with the terms of this Lease, or uniform enforcement thereof throughout the Property, shall not constitute a waiver of any of Management's rights or Resident's obligations.

**22. REMEDIES CUMULATIVE:** All remedies under this Lease or available by law or in equity shall be cumulative. Breach of this Lease establishes a breach by Resident.

**23. RENEWAL TERM AND NOTICE OF NON-RENEWAL:** Management shall have the right to increase the Rent due at the end of the initial term or any subsequent renewal period. Management employees are not authorized to accept a verbal notice of non-renewal or termination from Resident and the Resident has no right to rely on a Management employee's statement that a verbal notice is acceptable. Resident's notice must be in writing, dated, signed, and specify the move-out date. Resident should keep a signed receipt of the non-renewal notice for his personal records in case of any dispute as to whether such notice was given and received. If Resident does not obtain a signed receipt of such notice from Management or if Management does not have a signed original non-renewal notice from Resident, then it will be presumed that Resident failed to give a proper written notice.

**24. FLOOD DISCLOSURE:** Management states that the Premises _ have <u>X</u> have not (one must be checked) been damaged in any manner by flooding in 3 of the last 5 years.



**25. NOTICES:** Any notice required by this lease shall be in writing, dated, and signed and shall be deemed to be given immediately if delivered personally or refused, and upon receipt or three days after mailing if mailed by registered or certified mail, return receipt requested, or by standard overnight delivery: (a) if to Resident, to the Premises or the last known address of Resident; (b) if to Management, to the address listed for HavenBrook Homes on Page 1 of this Lease.

**26. REPAIRS:** Resident acknowledges that Resident has inspected the Premises and accepts the condition as is. Within a reasonable period of time after receipt of written notice from Resident, Management will repair major deficiencies which create unsafe or uninhabitable conditions. Major repairs shall include: electrical, plumbing, heating, cooling, built-in appliances or structural defects. Resident shall, throughout the initial term of this Rental Agreement, and any extension or renewal thereof, at its expense, shall otherwise maintain in good order and repair the Premises, including but not limited to periodic maintenance to equipment and fixtures, except those repairs expressly required to be made by Management hereunder. Resident further agrees to care for the ground around the dwelling, including cleaning of paving, the mowing of grass, care of shrubs and general landscaping. If Resident fails to fulfill any such obligations to care for the Premises pursuant hereto, Management may (but shall not be obligated to) perform or direct the performance of such services necessary to fulfill Resident's obligations to care for the Premises at the sole expense of Resident, the cost of such services, plus a Ten Percent (10%) management fee, shall be considered Additional Rent and be due and payable by Resident immediately. Management agrees to keep in good repair the roof, foundations and exterior walls of the dwelling (exclusive of all glass and exclusive of all exterior doors) and underground utility and sewer pipes outside the exterior walls of the dwelling, except repairs rendered necessary by the negligence or intentional wrongful acts of Resident, Guests, or Invitees. Resident shall promptly report in writing to Management any defective condition known to it which Management is required to repair and failure so to report such conditions shall make Resident responsible to Management for any liability incurred by Management by reason of such conditions. If any damage, beyond normal wear and tear, is caused by Resident, Guests, or Invitees, Resident agrees to pay Management the cost of repair as Additional Rent with the next rent payment due hereunder. Resident may not remodel or make alterations without the prior written consent of Management. Alterations include, without limitation, any structural change, wallpapering, painting of the Premises, changing locks, modification of appliances, or removal of any fixtures, trees or shrubs. No nails, screws or adhesive hangers except standard picture hooks, shade brackets and curtain rod brackets may be placed in walls, woodwork or any part of Premises without Management's written permission. Absolutely no penetration, by nails or otherwise, is permitted of the exterior siding of the Premises.

**27. ABANDONMENT:** Resident shall not abandon the Premises or Resident's personal property. If Resident removes or attempts to remove all or substantially all of Resident's personal property from the Premises other than in the usual course of continuing occupancy without first having paid Management all monies due for proper termination of this Rental Agreement, Resident shall be in default under this Lease, and Management shall have the right, without notice, to store or dispose of any property left in or upon the Premises by Resident.

62B-FD6BA

DocuSign Envelope ID: 6FVF0C58-875-7ADB-AE9A-0BB0B521E33F



Management shall also have the right to store or to dispose of any of Resident's property remaining in or upon the Premises after the termination of this Lease. Resident agrees that such circumstances as evidence of Resident's abandonment of the Premises include, but are not limited to, the failure to pay rent or other charges, discontinuance of any utility service, failure to respond to any notices, phone calls, or correspondence from Management, or removal of a substantial amount of Resident's personal property from the Premises. In the event the Premises is abandoned, Management shall also have the right, without notice, to secure the Premises with new locks, to store or dispose of any property or personal possessions left in or upon the Premises or Property by Resident, Guests, or Invitees, and to re-enter the Premises for new occupancy, without filing a dispossessory warrant or obtaining a writ of possession, and without waiving any claims against the Resident hereunder. Resident agrees that Management shall have no liability for any actions taken to secure the Premises, to obtain possession of the Premises, or to store or dispose of any personal property or possessions found in the Premises when the Premises is abandoned or upon termination of this Lease. Resident acknowledges and agrees that Management's acts or failure to act with regard to securing the Premises, obtaining possession of the Premises, or storing or disposing of any personal property or possessions found in or upon the Premises under circumstances which are or may indicate abandonment are a contractual matter to which the Resident has given the Resident's consent, and any alleged breach shall not give rise to a claim against Management in tort, nor to a claim for punitive, consequential, or other damages.

BY SIGNING THIS RENTAL AGREEMENT, THE TENANT AGREES THAT UPON SURRENDER, ABANDONMENT, OR RECOVERY OF POSSESSION OF THE DWELLING UNIT DUE TO THE DEATH OF THE LAST REMAINING TENANT, AS PROVIDED BY CHAPTER 83, FLORIDA STATUTES, THE LANDLORD SHALL NOT BE LIABLE OR RESPONSIBLE FOR STORAGE OR DISPOSITION OF THE TENANT'S PERSONAL PROPERTY.

**28. MORTGAGEE'S RIGHTS:** Resident's rights under this Lease shall at all times be automatically subordinate and subject to any deed to secure debt, deed of trust, or mortgage which is now or shall hereafter be placed on the Premises. If requested, Resident shall execute promptly any certificate or document that Management may request to specifically implement the terms of this paragraph.

**29. COMMUNITY POLICIES:** As a material consideration of this Lease, Resident shall comply and cause Resident's Guests and Invitees to comply with the New Home Orientation Handbook and Community Policies and with modifications Management may make from time to time and publish in writing. Such Handbook and Community Policies with modifications as referenced heretofore constitute a part of the Lease. Management will provide Resident with a printed copy of the New Home Orientation Handbook at New Home Orientation.

**30. SECURITY:** Resident acknowledges and agrees that Management has not made any representations, covenants, or warranties, either express or implied, that security devices or



security personnel are, have been, or will be provided to protect Resident or the property of Resident, Guests, or Invitees from crime to person or Property. Management is not an insurer of Resident's safety or the safety of Resident's property. Resident acknowledges and understands that Resident has a duty to exercise care for Resident, Guests, and Invitees of the Premises' safety and welfare, and that Management is not liable for criminal acts of other persons. Resident agrees to rely solely on local law enforcement agencies for all information regarding criminal activity in the geographic area of the Premises. Resident agrees to look solely to public law enforcement, emergency services, or fire services for security services or protection. RESIDENT AGREES THAT THE FURNISHING OF SAFETY DEVICES AND PATROL SERVICE (IF APPLICABLE) DOES NOT CONSTITUTE A GUARANTEE OR WARRANTY OF THEIR EFFECTIVENESS OR OPERATION OR IMPOSE ANY OBLIGATION TO CONTINUE SUCH ITEMS, EXCEPT AS MAY BE REQUIRED BY APPLICABLE STATE LAWS. RESIDENT RELEASES AND AGREES TO HOLD HARMLESS MANAGEMENT FROM ALL CLAIMS WITH RESPECT TO ANY PERSONAL INJURY OR PROPERTY DAMAGE WHICH MAY IN ANY WAY RELATE EITHER TO RESIDENT'S RELIANCE UPON ANY OF THE SAFETY DEVICES OR PATROL SERVICE, OR ANY ABSENCE, DEFECT, MALFUNCTION, OR INADEQUACY THEREOF. .

**31. INDEMNIFICATION:** Resident releases Management and Landlord from liability for, and agrees to indemnify Management and Landlord against all costs, losses, expenses and damages, including, without limitation, reasonable attorneys' fees, incurred or suffered by either or both Management or Landlord resulting from, arising from, related to, connected to, or caused by, any one or more of the following: (a) Resident's failure to perform any covenant or condition of this agreement; (b) any damage or injury happening in or about Premises to Resident, permitted occupants of the Premises, or Guest or Invitees; (c) Resident's failure to comply with any requirements imposed by any governmental authority; (d) any judgment, lien or other encumbrance filed against Premises as a result of any act or omission of Resident, Guests, or Invitees; (e) the negligence or willful or wanton acts of one or more of Resident, Guests or Invitees; or (f) Resident's occupancy of the Premises.

**32. SEVERABILITY:** If any provision of this agreement shall be declared invalid or unenforceable, the remainder of the agreement shall continue in full force and effect.

**33. ENTIRE AGREEMENT:** This agreement and any attached addendums and riders constitute the entire agreement between the parties and no representations, inducements, promises or agreements, oral or otherwise between the parties not embodied herein shall be of any force or effect.

**34. LEAD BASED PAINT NOTIFICATION (LBPN):** Prior to entering into this Lease, Resident has had an opportunity to inspect the Premises for the presence of lead-based paint, if any, in the Home. The LBPN addendum, if applicable, is incorporated by reference.

**35. ATTORNMENT, SALE, FORECLOSURE, RENOVATION AND FORMER EMPLOYEES:** In the event the Premises or any portion thereon is foreclosed, sold, placed



under contract to be sold, or scheduled for substantial renovation, rehabilitation, or demolition, either Management or the new owner shall have the right to terminate the Lease on 60 days written notice. In the event that Management elects to terminate the occupancy or this Lease under this provision, then, as consideration for such right of termination and during the 30 day period immediately preceding either the termination date of Resident's occupancy or the termination of the Lease, the Resident's Rent shall be reduced by fifty percent (50%); however, if the Resident shall hold over beyond the termination date, then Resident shall pay the holdover Rent as provided in Paragraph 13.

**36. NO OWNERSHIP:** This lease only creates the relationship of landlord (Management) and tenant (Resident) and does not create any ownership or transferable rights in real estate. This lease is not an estate for years.

**37. JOINT AND SEVERAL LIABILITY:** Each person or entity that signs this lease or any guarantor under a separate guarantor's agreement is jointly and severally liable for all rent or other charges which come due. Management may look to any Resident or guarantor for payment of all or a part of any obligation due without first suing or attempting to collect from any other responsible party.

**38. KNOW YOUR NEIGHBORS:** Certain individuals convicted of certain sex-related crimes are required to register their name and current address on an index maintained by the state or county in which they reside. You may access that index in order to determine whether any such individuals live in proximity to a certain location. The public may access the Internet to view all sex offenders registered in the state. The Department of Justice's Sex Offender Registry can be obtained through the Internet at www.nsopr.gov. The public may also contact the local Law Enforcement Office to view a list of the sex offenders listed in their county. Residents are encouraged to research the Sex Offender Registry prior to executing the Lease as the proximity of the Premises to the residence of a known sex offender shall not be cause for Resident to breach the Lease.

**39. RADON GAS:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.



In witness hereof, the parties have caused this Rental Agreement to be signed in person or by a person duly authorized, the date and year first above written.

*Rudyard Jeffers*                                                        8/1/2016

Rudyard Jeffers (Joint and Several)                          Date

*Maurisia Jeffers*                                                       8/1/2016

Maurisia Jeffers (Joint and Several)                         Date


HavenBrook Homes, LLC,

By *Cathy Petakos*

Cathy Petakos

Title: Leasing Coordinator


As to Management, this __1__ day of __August__, 20_16_

Notary Public: _____

My Commission Expires: _____

> ZAILY NEPOMUCENO
> MY COMMISSION # FF 196881
> EXPIRES February 05, 2019
> FloridaNotaryService.com



**Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards**

Premises: 2170 NE 1st Ave, Pompano Beach, FL 33060

Lessee: Rudyard Jeffers, Maurisia Jeffers

This Addendum shall become part of the Rental Agreement (the "Lease") for the above described Premises dated 9/6/2016 between HavenBrook Homes, LLC as agent for the Lessor of the above described Premises and the above described Lessee(s). For the purposes of this Addendum, "Agent" means the managing agent who is acting on behalf of the lessor, landlord or owner of the Premises. "Lessor" means owner or landlord of the Premises. "Lessee" means Resident leasing the Premises.

**Lead Warning Statement:**
Housing built before 1978 may contain lead based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, Lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.

**Lessor's Disclosure:**
   (a)  Presence of lead-based paint and/or lead-based paint hazards (check one below):

[__]     There are known lead-based paint and/or lead-based paint hazards in the housing unit.
         Details: _____
_CP_     Lessor has no knowledge of any lead-based paint and/or any lead-based paint hazards in the housing unit.

   (b)  Records and reports that were made available to Lessor (check one below):

[__]     Lessor has provided the Lessee with all available records and reports that pertain to lead based paint and/
         or lead-based paint hazards in the housing unit.
_CP_     Documents provided: _____
         Lessor has no reports or records pertaining to lead-based paint and/or any lead-based paint hazards in the
         housing unit.

**Lessee's Acknowledgment: (Initial)**
_RJ_ _MJ_     Lessee has received copies of all information listed above.
              Lessee has received the pamphlet *Protect Your Family from Lead in Your Home*.

**Agent's Acknowledgement: (Initial)**
_____     Agent has informed the Lessor of the Lessor's obligations under 42 U.S.C. 4852(d) and is aware of his/her
             responsibility to ensure compliance.

**Certification of Accuracy**
The following parties have reviewed the above information and certify, to the best of their knowledge, that the information they have provided is accurate and true.

62B-FD6BA

DocuSigned by:

Lessee: Maurisia Jeffers
— B2D88F7A11E041F

Lessee: Rudyard Jeffers
— B2D88F7A17ED81F

Lessor: Cathy Patakos
— 7910CD5F7B2F411.

Agent: _____

Date: 8/1/2016

Date: 8/1/2016

Date: 8/1/2016

Date: _____

62B-FD6BA

**2017 FOREIGN LIMITED LIABILITY COMPANY ANNUAL REPORT**

DOCUMENT# M13000006159

Entity Name: HAVENBROOK HOMES, LLC

**FILED**

**Jan 12, 2017**
**Secretary of State**
**CC3638748825**

Current Principal Place of Business:

3505 KOGER BLVD.
SUITE 400
DULUTH, GA 30096

**Current Mailing Address:**

3505 KOGER BLVD.
SUITE 400
DULUTH, GA 30096 US

FEI Number: 80-0822583

Certificate of Status Desired: Yes

Name and Address of Current Registered Agent:

CORPORATION SERVICE COMPANY
1201 HAYS STREET
TALLAHASSEE, FL 32301 US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: HOLLY JONES                                              01/12/2017
            Electronic Signature of Registered Agent                        Date

Authorized Person(s) Detail :

| Title | MGR | | Title | BROKER MANAGER |
|---|---|---|---|---|
| Name | WHELAN, PATRICK | | Name | GARDNER, ANDREW O.H. |
| Address | 3505 KOGER BLVD. SUITE 400 | | Address | 3505 KOGER BLVD. SUITE 400 |
| City-State-Zip: | DULUTH GA 30096 | | City-State-Zip: | DULUTH GA 30096 |



*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath, that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes, and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: PATRICK WHELAN                        CEO                01/12/2017
            Electronic Signature of Signing Authorized Person(s) Detail              Date

# 2017 FOREIGN LIMITED LIABILITY COMPANY ANNUAL REPORT

DOCUMENT# M13000006154

**Entity Name:** RHA 2 LLC

FILED
Jan 12, 2017
Secretary of State
CC1328985572

**Current Principal Place of Business:**
3505 KOGER BLVD, STE. 400
DULUTH, GA 30096

**Current Mailing Address:**
3505 KOGER BLVD, STE. 400
DULUTH, GA 30096 US

**FEI Number:** 46-3043323

**Certificate of Status Desired:** Yes

**Name and Address of Current Registered Agent:**
CORPORATION SERVICE COMPANY
1201 HAYS STREET
TALLAHASSEE, FL 32301 US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: ROBERT LEE                    01/12/2017
Electronic Signature of Registered Agent          Date

**Authorized Person(s) Detail :**

| | | | |
|---|---|---|---|
| Title | MGR | Title | MGR |
| Name | RHA 2, INC | Name | WHELAN, PATRICK |
| Address | 3505 KOGER BLVD, STE. 400 | Address | 3505 KOGER BLVD, STE. 400 |
| City-State-Zip: | DULUTH GA 30096 | City-State-Zip: | DULUTH GA 30096 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath, that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: CASSEY DAVIS          PARALEGAL          01/12/2017
Electronic Signature of Signing Authorized Person(s) Detail          Date



**p mpano**
**beach**
Florida's Warmest Welcome

**City of Pompano Beach**
100 West Atlantic Boulevard
Pompano Beach, Florida 33060

### CODE COMPLIANCE NOTICE OF VIOLATION
### AND
### NOTICE OF HEARING

**Date:**

01/10/2017

**Sent To:**

CORPORATION SERVICE
COMPANY

1201 HAYS STREET
TALLAHASSEE, FL 32301

**Property Owner:**

RHA 2 LLC

3505 KOGER BLVD #400
DULUTH, GA 30096

**Case #:**

17010053

**Certified Mail #:**

70160910000179690826

**Property Description:**

484226090290

**Legal Description:**

VERA VILLAS 2ND SEC 48-47 B LOT 22
BLK 4

**AKA:**

2170 NE 1 AVE, POMPANO BEACH, FL
33060

YOU ARE HEREBY NOTIFIED that the undersigned inspector alleges that on 1/10/2017 the following violation(s) of the City of Pompano Beach Code of Ordinances existed on the property above:

| Chapter/Section | Description | Violation Description/Correction |
|---|---|---|
| 1 Chapter 152: Buildings 152.01(B) Permits Required | It shall be unlawful for any person, firm, or corporation to violate any of the requirements of the Florida Building Code, as adopted by this chapter. Each such person, firm, or corporation shall be deemed to be in violation of a separate offense for each and every day during which any violation of any of the provisions of said Code is committed or continued, and upon conviction thereof, shall be punished.<br><br>Pursuant to FBC 105.1: Any owner or authorized agent who intends to construct, enlarge, alter, repair, move, demolish, or change the occupancy of a building or structure, or to erect, install, enlarge, alter, repair, remove, convert or replace any impact resistant coverings, electrical, gas, mechanical or plumbing system, the installation of which is regulated by this code, or to cause any such work to be done, shall first make application to the building official and obtain the required permit. | *WWOP (WORK WITHOUT PERMIT) KITCHEN CABINET REMOVAL/REPLACEMENT. PLEASE OBTAIN APPROVED PERMITS FOR ALL WORK REQUIRING PERMITS. |

| 2 | Chapter 153: Rental Housing Code 153.23(C)(1)(a) Basic Bathroom Facilities | Each dwelling unit and each moveable unit shall not have less than the following: A property installed flush water closet, lavatory basin and a bathtub or shower in a sanitary and good working condition. | *BACKFLOW INTO BATHROOM TUB. PLEASE INSURE ALL BATHROOM FACILITIES ARE PROPERLY INSTALLED, CAULKED AND SEALED, IN SANITARY CONDITION AND IN GOOD WORKING CONDITION. |
|---|---|---|---|
| 3 | Chapter 153: Rental Housing Code 153.23(C)(1)(c) Approved Kitchen Sink Required | Each dwelling unit and each moveable unit shall not have less than the following: An approved type kitchen sink; | MISSING KITCHEN SINK. PLEASE INSURE AN APPROVED KITCHEN SINK INSTALLED. |
| 4 | Chapter 153: Rental Housing Code 153.23(D) Extermination Requirement | Extermination requirement. The owner shall be responsible to make reasonable provisions for extermination in the following cases. (1) When infestation exists in one or more units of a multiple-unit structure. (2) When infestation exists in shared or public areas of a multiple-unit structure. (3) When infestation existing in a single unit structure is due to failure of the owner to maintain the dwelling in a rat-proof and reasonably insect-proof condition. | *ROACH AND FLY INFESTATION. PLEASE OBTAIN RECEIPT FROM CERTIFIED PEST CONTROL THAT INSURES SERVICE HAS BEEN OBTAINED AND THAT BUILDING IS FREE OF INFESTATION OF INSECTS / RODENTS / VERMIN. IN ADDITION, PLEASE INSURE SERVICE WILL BE MAINTAINED ON A REGULAR BASIS. |
| 5 | Chapter 153. Rental Housing Code 153.23(E)(1) Supplied Cabinets and/or Shelves | Supplied cabinets and/or shelves for the storage of eating, drinking and cooking equipment and utensils shall be properly installed and maintained in a sanitary condition and kept in a good state of repair. | *CABINETS IN DISREPAIR. PLEASE INSURE ALL CABINETS / SHELVES ARE PROPERLY INSTALLED, IN SANITARY CONDITION AND IN GOOD WORKING CONDITION |
| 6 | Chapter 153: Rental Housing Code 153.23(E)(3)(b) Condition of Plumbing Equipment | Every plumbing fixture, water pipe, waste pipe, gas line and drain line shall be maintained in good working condition; maintained in a sanitary condition and free of leaks, defects and obstructions. | *LEAK UNDER KITCHEN SINK. PLEASE INSURE EACH UNIT HAS A KITCHEN SINK INSTALLED PROPERLY AND MAINTAINED IN GOOD WORKING CONDITION. |
| 7 | Chapter 153: Rental Housing Code 153.23(E)(4)(d) HVAC in Proper Working Condition | Every supplied air conditioning and heating facility or similar device shall be properly installed and maintained in good working condition. | *LEAK COMING FROM INTERIOR A/C HANDLER. PLEASE INSURE AIR CONDITIONING AND HEATING FACILITIES ARE PROPERLY INSTALLED AND IN GOOD WORKING CONDITION |
| 8 | Chapter 155: Zoning 155.4303(X)4.e. Standards for Specific acessory Uses and Structures. | PARKING OR STORAGE OF MOTOR VEHICLES, RECREATIONAL VEHICLES, BOATS, OR TRAILERS IN RESIDENTIAL ZONING DISTRICTS. Standards. The parking or storing of a motor vehicle, recreational vehicle, boat, or trailer on a public right-of-way or property in a residential zoning district is allowed as an accessory use, subject to the following standards (unless exempted by subsection 3.b above): Any motor vehicle, recreational vehicle, boat, or trailer parked or stored in a required front yard or a street side yard shall be parked or stored on a hard, dustless, and bonded surface (such as asphaltic concrete, Portland cement, or other material normally used to surface vehicle areas) that is the same size or larger than the parked or stored motor vehicle, recreational vehicle, boat, airboat, or trailer. Driveways or accessways serving the parking or storage area need not be such a hard, dustless, and bonded surface. | *VEHICLE PARKED ON AN UNAPPROVED SURFACE. PLEASE INSURE ALL VEHICLES ARE PARKED ON APPROVED HARD SURFACE OR IN SWALE FACING THE FLOW OF TRAFFIC. |
| 9 | Chapter 96: Health and Safety 96.26(C)(6) Public Nuisance; Discarded/Unused Objects | The following are declared to be public nuisances when occurring upon any street, sidewalk, alley, or other public place or property, or upon any private property: The presence of any discarded or unused objects and/or equipment, including but not limited to furniture, stoves, refrigerators, freezers, tires, cans, or containers. | *UNUSED/ DISCARDED OBJECT(S) ON THE PROPERTY. PLEASE REMOVE ALL UNUSED / DISCARDED OBJECTS FROM PROPERTY OR STREET VIEW |

Notes/Means of Correction:
*UNUSED/ DISCARDED OBJECT(S) ON THE PROPERTY. PLEASE REMOVE ALL UNUSED / DISCARDED OBJECTS FROM PROPERTY OR STREET VIEW.

*VEHICLE PARKED ON AN UNAPPROVED SURFACE. PLEASE INSURE ALL VEHICLES ARE PARKED ON APPROVED HARD SURFACE OR IN SWALE FACING THE FLOW OF TRAFFIC.

*WWOP (WORK WITHOUT PERMIR) KITCHEN CABINET REMOVAL/REPLACEMENT. PLEASE OBTAIN APPROVED PERMITS FOR ALL WORK REQUIRING PERMITS.

*CABINETS IN DISREPAIR. PLEASE INSURE ALL CABINETS / SHELVES ARE PROPERLY INSTALLED, IN SANITARY CONDITION AND IN GOOD WORKING CONDITION

*MISSING KITCHEN SINK. PLEASE INSURE AN APPROVED KITCHEN SINK INSTALLED.

*LEAK UNDER KITCHEN SINK. PLEASE INSURE EACH UNIT HAS A KITCHEN SINK INSTALLED PROPERLY AND MAINTAINED IN GOOD WORKING CONDITION.

*LEAK COMING FROM INTERIOR A/C HANDLER. PLEASE INSURE AIR CONDITIONING AND HEATING FACILITIES ARE PROPERLY INSTALLED AND IN GOOD WORKING CONDITION.

*BACKFLOW INTO BATHROOM TUB. PLEASE INSURE ALL BATHROOM FACILITIES ARE PROPERLY INSTALLED, CAULKED AND SEALED, IN SANITARY CONDITION AND IN GOOD WORKING CONDITION.

*ROACH AND FLY INFESTATION. PLEASE OBTAIN RECEIPT FROM CERTIFIED PEST CONTROL THAT INSURES SERVICE HAS BEEN OBTAINED AND THAT BUILDING IS FREE OF INFESTATION OF INSECTS / RODENTS / VERMIN. IN ADDITION, PLEASE INSURE SERVICE WILL BE MAINTAINED ON A REGULAR BASIS.

QUESTIONS/CONCERNS/RE-INSPECTION: PLEASE CONTACT CODE COMPLIANCE INSPECTOR MR. AMANI MURRAY OFFICE: (954) 786-4361 MOBILE: (954) 534-0837 EMAIL: MMURRAY@CGASOLUTIONS.COM.

*If the referenced violations are corrected within 7 days from the date of issuance of this notice, you must contact the Code Compliance Inspector at 954-786-4361.*

Should all violations not be corrected and approved by the undersigned Code Compliance Inspector within the date and time, specified above, you will be required to appear at the prosecution of this matter before the City's Special Magistrate for Code Compliance, pursuant to Chapter 37 of the City of Pompano Beach Code of Ordinances and Chapter 162, Florida Statutes.

A hearing for this matter has been set by the Special Magistrate Clerk on 8th day of March, 2017 at 1:00 p.m. in the City of Pompano Beach Commission Chambers, 100 West Atlantic Boulevard, Pompano Beach, Florida. **THIS HEARING, requiring you to be present, will be held if the violation(s) have not been brought into compliance and approved by Code Compliance by 7:00 a.m. on 3/3/2017, as evidenced by the issuance of an Affidavit of Compliance by the Code Compliance Inspector.**

The purpose of this Hearing is for the Special Magistrate to make "Findings of Fact" and "Conclusions of Law" relating to the violation(s) specified in the attached Violation detail and to issue an appropriate Order. The Hearing is also your opportunity to present evidence and/or contest the alleged violations, should you wish to do so. If a violation is found, the Order may require you to correct the violation(s) by a specified date. In addition, the Order may impose a daily fine of up to $1,000.00 per day if the Order is not complied with or a daily fine of up to $5,000.00 per day for each day the same violation(s) is or has been repeated after being brought into compliance, even if the repeated violation(s) is/are again in compliance prior to the Hearing. Fines of up to $15,000.00 per violation may be imposed if the Special Magistrate finds the violation to be irreparable or irreversible in nature. Additionally, fines may be imposed to recover all costs incurred by the City in prosecuting this matter, if all violations are not complied prior to the Hearing date and you may be assessed any such costs.

You should be aware that if the alleged violation(s) is/are corrected prior to the Hearing and recurs within one year from the date of the original Notice of Violation, the case may be presented to the Special Magistrate as a Recurring Violation even if the violation is subsequently corrected.

You have the right to be represented by an attorney and to respond and present evidence and witnesses at the Hearing. If you wish to be represented by an attorney, your attorney MUST notify the Special Magistrate's Clerk in writing at least five working days before the Hearing.

You may also have other rights which are set forth in Chapter 37 of the City of Pompano Beach Code of Ordinances. If a person decides to appeal any decision with respect to any matter considered at this Hearing, such person will need to ensure that a verbatim record of the proceedings is made, which includes the testimony and evidence upon which the appeal is to be based, Section 286.0105, Florida Statutes.

For additional HEARING information, contact the Special Magistrate Clerk at 954-786-4361.

For additional VIOLATION information, or to request an inspection for compliance prior to the listed compliance date, contact the Code Compliance Inspector listed below at 954-786-4361.

Malaika Murray

Code Compliance Inspector

_____

Signature

_____

Date Prepared

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL DISTRICT
IN AND FOR BROWARD COUNTY, FLORIDA

RUDYARD JEFFERS, and )
MAURISIA JEFFERS )
               Plaintiffs, )
v. )
               )
HAVENBROOK HOMES, LLC, and )
RHA 2, LLC, and )
PATRICK WHELAN )
               )
               )
               )
          Co-Defendants. )

Case No. 17006711
Division: 12

---

### CO-DEFENDANTS HAVENBROOK HOMES, LLC'S, RHA 2LLC, AND PATRIC WHELAN'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS RUDYARD JEFFERS AND MAURISIA JEFFERS' COMPLAINT

**COMES NOW**, Co-Defendants, HavenBrook Homes, LLC, RHA 2, LLC and Patrick Whelan (hereinafter, "Co-Defendants"), by and through its undersigned counsel and hereby files this its Answer and Affirmative Defenses to Plaintiffs Complaint.

### ANSWER

1. Defendants are without knowledge as to the allegations contained in Paragraph 1 of Plaintiffs Complaint. They are, therefore, denied and Defendants demand strict proof thereof.

2. Defendants are without knowledge as to the allegations contained in Paragraph 2 of Plaintiffs Complaint. They are, therefore, denied and Defendants demand strict proof thereof.

3. Defendants are without knowledge as to the allegations contained in Paragraph 3 of Plaintiffs Complaint. They are, therefore, denied and Defendants demand strict proof

thereof.

4. Defendants are without knowledge as to the allegations contained in Paragraph 4 of Plaintiffs Complaint. They are, therefore, denied and Defendants demand strict proof thereof.

5. Defendants are without knowledge as to the allegations contained in Paragraph 5 of Plaintiffs Complaint. They are, therefore, denied and Defendants demand strict proof thereof.

6. Defendants are without knowledge as to the allegations contained in Paragraph 6 of Plaintiffs Complaint. They are, therefore, denied and Defendants demand strict proof thereof.

7. Defendants are without knowledge as to the allegations contained in Paragraph 7 of Plaintiffs Complaint. They are, therefore, denied and Defendants demand strict proof thereof.

8. Defendants are without knowledge as to the allegations contained in Paragraph 8 of Plaintiffs Complaint. They are, therefore, denied and Defendants demand strict proof thereof.

9. Defendants are without knowledge as to the allegations contained in Paragraph 9 of Plaintiffs Complaint. They are, therefore, denied and Defendants demand strict proof thereof.

10. Defendants are without knowledge as to the allegations contained in Paragraph 10 of Plaintiffs Complaint. They are, therefore, denied and Defendants demand strict proof thereof.

11. Defendants are without knowledge as to the allegations contained in Paragraph 11 of

Plaintiffs Complaint.  They are, therefore, denied and Defendants demand strict proof thereof.

12. Defendants are without knowledge as to the allegations contained in Paragraph 12 of Plaintiffs Complaint.  They are, therefore, denied and Defendants demand strict proof thereof.

13. Defendants are without knowledge as to the allegations contained in Paragraph 13 of Plaintiffs Complaint.  They are, therefore, denied and Defendants demand strict proof thereof.

14. Defendants are without knowledge as to the allegations contained in Paragraph 14 of Plaintiffs Complaint.  They are, therefore, denied and Defendants demand strict proof thereof.

15. Defendants are without knowledge as to the allegations contained in Paragraph 15 of Plaintiffs Complaint.  They are, therefore, denied and Defendants demand strict proof thereof.

16. Defendants are without knowledge as to the allegations contained in Paragraph 16 of Plaintiffs Complaint.  They are, therefore, denied and Defendants demand strict proof thereof.

17. Defendants are without knowledge as to the allegations contained in Paragraph 17 of Plaintiffs Complaint.  They are, therefore, denied and Defendants demand strict proof thereof.

18. Defendants are without knowledge as to the allegations contained in Paragraph 18 of Plaintiffs Complaint.  They are, therefore, denied and Defendants demand strict proof thereof.

19. Defendants are without knowledge as to the allegations contained in Paragraph 19 of Plaintiffs Complaint.  They are, therefore, denied and Defendants demand strict proof thereof.

20. Defendants are without knowledge as to the allegations contained in Paragraph 20 of Plaintiffs Complaint.  They are, therefore, denied and Defendants demand strict proof thereof.

21. Defendants are without knowledge as to the allegations contained in Paragraph 21 of Plaintiffs Complaint.  They are, therefore, denied and Defendants demand strict proof thereof.

22. Defendants are without knowledge as to the allegations contained in Paragraph 22 of Plaintiffs Complaint.  They are, therefore, denied and Defendants demand strict proof thereof.

23. Defendants are without knowledge as to the allegations contained in Paragraph 23 of Plaintiffs Complaint.  They are, therefore, denied and Defendants demand strict proof thereof.

24. Defendants are without knowledge as to the allegations contained in Paragraph 24 of Plaintiffs Complaint.  They are, therefore, denied and Defendants demand strict proof thereof.

25. Defendants are without knowledge as to the allegations contained in Paragraph 25 of Plaintiffs Complaint.  They are, therefore, denied and Defendants demand strict proof thereof.

26. Denied and Defendants demand strict proof thereof.

27. Denied and Defendants demand strict proof thereof.

28. Denied and Defendants demand strict proof thereof.

## AFFIRMATIVE DEFENSES

1. The Complaint fails to state a claim against Co-Defendants upon which relief can be granted.

2. Plaintiffs claims are barred in whole or in part by the doctrines of unclean hands, estoppel, laches, waiver or acquiescence.

3. Plaintiffs' claims are barred in whole or in part based upon a failure of conditions precedent to Plaintiffs cause of action.

4. Plaintiffs' claims are barred in whole or in part due to Plaintiffs' own actions, negligence, and/or legal fault, or that of Plaintiffs' agents or third party.

5. Co-Defendants gives notice that it intends to rely upon and invoke any other defenses that may become available or appear at a later date, and reserves the right to amend this Answer to include any such defenses.

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a true and correct copy of the foregoing Co-Defendants' Answer To Plaintiff's Complaint via regular mail United States Postal Service postage prepaid and via electronic service addressed to:

Rudyard Jeffers
Maurisia Jeffers
PO Box 5754
Ft. Lauderdale, FL  33310

Respectfully submitted this _____ day of May, 2017.

**MORRIS MANNING & MARTIN, LLP**
Counsel for Defendants, HavenBrook Homes, LLC, RHA 2, LLC, and Patrick Whelan
990 Hammond Drive Suite 300
Atlanta, GA 30328
Tel: (404) 255-6900
Fax: (404) 843-2317

By: _____
Lauri Gerson
Florida Bar No. 42781
Primary email: lgerson@mmmlaw.com
Secondary: lwilson@mmmlaw.com

## RETURN OF SERVICE

**State of Florida**      **County of Broward**      **17th Judicial Circuit Court**

4/25/17     9:55

Case Number: 17006711 12

Plaintiff:
**Rudyard Jeffers, Maurisia Jeffers**
vs.
Defendant:
**RAH 2 LLC, Patrick Whelan, Havenbrook Homes, LLC**

For: Rudyard Jeffers, pro se

Received by All Broward Process Corp on the 19th day of April, 2017 at 9:00 am to be served on **RHA 2 LLC, 1201 Hays Street, Tallahassee, FL 32301**. I, _Michael C. Klein_____, do hereby affirm that on the _25th_ day of _April_, 20_17_ at _9_ : _55_ m., executed service by delivering a true copy of the **Summons: Personal Service on an Individual, Civil Cover Sheet, Complaint, Exhibits** in accordance with state statutes in the manner marked below:

( ) PUBLIC AGENCY: By serving _____ as _____ of the within-named agency.
( ) SUBSTITUTE SERVICE: By serving _____ as _____
(✓) CORPORATE SERVICE: By serving _Jeyse Markly_____ as
_Authorized Representative_____
( ) OTHER SERVICE: As described in the Comments below by serving _____ as
_____
( ) NON SERVICE: For the reason detailed in the Comments below.

COMMENTS: _____
_____
_____
_____

Age _50+_ Sex M/(F) Race _W_ Height _5'7'_ Weight _180_ Hair _Black_ Glasses Y/(N)

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

PROCESS SERVER # _111_
Appointed in accordance with State Statutes

**All Broward Process Corp**
**701 N Fig Tree Lane**
**Plantation, FL 33317**
**(954) 214-5194**

Our Job Serial Number: 2017000937

Copyright © 1992-2017 Database Services, Inc. - Process Server's Toolbox V7.1j

IN THE CIRCUIT COURT OF THE _____ 17ᵗʰ _____ JUDICIAL CIRCUIT,
IN AND FOR Broward _____ COUNTY, FLORIDA

Case No.: **17006711**
Division: _____

Rudyard Jeffers
Maurisia Jeffers ,
                    Petitioner,

4/25/17                    9:55 P

RHA 2 LLC, and Patrick Whelan
Havenbrook Homes LLC
                    Respondent.

## SUMMONS: PERSONAL SERVICE ON AN INDIVIDUAL
## ORDEN DE COMPARECENCIA: SERVICIO PERSONAL EN UN INDIVIDUO
## CITATION: L'ASSIGNATION PERSONAL SUR UN INDIVIDUEL

TO/PARA/A: {enter other party's full legal name} _ RHA 2 LLC _
{address (including city and state)/location for service _ 1201 Hays Street, TALLAHASSEE, FL 323

### IMPORTANT

A lawsuit has been filed against you. You have **20 calendar days** after this summons is served on you to file a written response to the attached complaint/petition with the clerk of this circuit court, located at: {street address} 201 SE 6ᵗʰ St. RM 4130 Fort Lauderdale, FL 33301 A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be **filed** if you want the Court to hear your side of the case.

**If you do not file your written response on time, you may lose the case, and your wages, money, and property may be taken thereafter without further warning from the Court.** There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also serve a copy of your written response on the party serving this summons at:

{Name and address of party serving summons} Rudyard Jeffers & Maurisia Jeffers PO Box 5764, Ft. Lauderdale, FL 33310

**If the party serving summons has designated e-mail address(es) for service or is represented by an attorney, you may designate e-mail address(es) for service by or on you. Service must be in accordance with Florida Rule of Judicial Administration 2.516.**

**Copies of all court documents in this case, including orders, are available at the Clerk of the Circuit Court's office. You may review these documents, upon request.**

Florida Family Law Rules of Procedure Form 12.910(a), Summons: Personal Service on an Individual (09/12)

## RETURN OF SERVICE

State of Florida        County of Broward        17th Judicial Circuit Court

Case Number: 17006711 12

Plaintiff:
**Rudyard Jeffers, Maurisia Jeffers**
vs.
Defendant:
**RAH 2 LLC, Patrick Whelan, Havenbrook Homes, LLC**

For: Rudyard Jeffers, pro se

Received by All Broward Process Corp on the 19th day of April, 2017 at 9:00 am to be served on **Havenbrook Homes LLC, 1014 Gateway Blvd., Boynton Beach, FL 33426.** I, _Denise Sulcate_, do hereby affirm that on the _1st_ day of _May_, 20_17_ at _11:50_ _m._, executed service by delivering a true copy of the **Summons: Personal Service on an Individual, Civil Cover Sheet, Complaint, Exhibits** in accordance with state statutes in the manner marked below:

( ) PUBLIC AGENCY: By serving _____ as _____ of the within-named agency.
( ) SUBSTITUTE SERVICE: By serving _____ as _____
( ) CORPORATE SERVICE: By serving _Ana Feliz_ as _adm. assist._
_____
( ) OTHER SERVICE: As described in the Comments below by serving _____ as
_____
( ) NON SERVICE: For the reason detailed in the Comments below.

COMMENTS: _____
_____
_____
_____

Age _50_ Sex M **F** Race _C_ Height _5'3_ Weight _137_ Hair _crl_ Glasses Y **N**

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

_____
PROCESS SERVER # _____
Appointed in accordance with State Statutes

**All Broward Process Corp**
**701 N Fig Tree Lane**
**Plantation, FL 33317**
**(954) 214-5194**

Our Job Serial Number: 2017000936

Copyright © 1992-2017 Database Services, Inc. - Process Server's Toolbox V7.1i

IN THE CIRCUIT COURT OF THE _____ 17ᵗʰ _____ JUDICIAL CIRCUIT,
IN AND FOR _Broward_ COUNTY, FLORIDA

Case No.: **17 0 0 6 7 1 1**
Division: _____

Rudgard Jeffers
Maurisia Jeffers
                    Petitioner,

and

RAH2 LLC, Patrick Whelan
HAVENBROOK HOMES LLC,
                    Respondent.

## SUMMONS: PERSONAL SERVICE ON AN INDIVIDUAL
### ORDEN DE COMPARECENCIA: SERVICIO PERSONAL EN UN INDIVIDUO
### CITATION: L'ASSIGNATION PERSONAL SUR UN INDIVIDUEL

TO/PARA/A: {enter other party's full legal name} _Havenbrook Homes LLC_
{address (including city and state)/location for service} _1014 Gateway Blvd, Boynton Bch, FL 3342_

## IMPORTANT

A lawsuit has been filed against you. You have **20 calendar days** after this summons is served on you to file a written response to the attached complaint/petition with the clerk of this circuit court, located at: {street address} _201 SE 6ᵗʰ St. RM 4130   Fort Lauderdale   FL 33301_
A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be **filed** if you want the Court to hear your side of the case.

**If you do not file your written response on time, you may lose the case, and your wages, money, and property may be taken thereafter without further warning from the Court.** There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also serve a copy of your written response on the party serving this summons at:

{Name and address of party serving summons} _Rudgard & Maurisia Jeffers_
_PO Box 57164, Ft. Laud_

If the party serving summons has designated e-mail address(es) for service or is represented by an attorney, you may designate e-mail address(es) for service by or on you. Service must be in accordance with Florida Rule of Judicial Administration 2.516.

**Copies of all court documents in this case, including orders, are available at the Clerk of the Circuit Court's office. You may review these documents, upon request.**

Florida Family Law Rules of Procedure Form 12.910(a), Summons: Personal Service on an Individual (09/12)

## AFFIDAVIT OF SERVICE

**State of Florida**                    **County of Broward**                    **17th Judicial Circuit Court**

Case Number: 17006711 12

Plaintiff:
**Rudyard Jeffers, Maurisia Jeffers**
vs.
Defendant:
**RAH 2 LLC, Patrick Whelan, Havenbrook Homes, LLC**

For: Rudyard Jeffers, pro se

Received by All Broward Process Corp on the 19th day of April, 2017 at 9:00 am to be served on **Patrick Whelan,
3505 Koger Blvd., #400, Duluth, GA 30096**. I, _Kris Stanton_, being duly sworn, depose and
say that on the __10__ day of __May__, 20_17_ at _2_ : _100_ .m., executed service by delivering a true copy of
the **Summons: Personal Service on an Individual, Civil Cover Sheet, Complaint, Exhibits** in accordance with
state statutes in the manner marked below:

( ) PUBLIC AGENCY: By serving _____ as _____ of
the within-named agency.
( ) SUBSTITUTE SERVICE: By serving _____ as

( ) CORPORATE SERVICE: By serving _____ as

(✓) OTHER SERVICE: As described in the Comments below by serving _Patrick Whelan_ as
_____.
( ) NON SERVICE: For the reason detailed in the Comments below.

**COMMENTS:** _Served Patrick Whelan personally_

Age _50_ Sex (M) F   Race _White_   Height _6'0_   Weight _190_   Hair _Brown_   Glasses Y (N)

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in
which this service was made.

Subscribed and Sworn to before me on the __11__
day of __May__, 2017 by the affiant who
is personally known to me.

_____
NOTARY PUBLIC

PROCESS SERVER # _149_
Appointed in accordance with State Statutes

**All Broward Process Corp**
**701 N Fig Tree Lane**
**Plantation, FL 33317**
**(954) 214-5194**

Our Job Serial Number: 2017000938

Copyright © 1992-2017 Database Services, Inc. - Process Server's Toolbox V7.1i

IN THE CIRCUIT COURT OF THE _____ JUDICIAL CIRCUIT,
IN AND FOR ___Broward___ COUNTY, FLORIDA

Case No.: _____
Division: _____

Rudyard Jeffers
Maurisia Jeffers,
Petitioner,

RAH 2 LLC and Patrick Whelan
Havenbrook Homes LLC
Respondent.

## SUMMONS: PERSONAL SERVICE ON AN INDIVIDUAL
## ORDEN DE COMPARECENCIA: SERVICIO PERSONAL EN UN INDIVIDUO
## CITATION: L'ASSIGNATION PERSONAL SUR UN INDIVIDUEL

TO/PARA/A: *(enter other party's full legal name)* ___Patrick Whelan___
*(address (including city and state)/location for service)* ___5505 KOGER BLVD #400, Duluth GA. 30096___

## IMPORTANT

A lawsuit has been filed against you. You have **20 calendar days** after this summons is served on you to file a written response to the attached complaint/petition with the clerk of this circuit court, located at: *(street address)* ___201 SE 6th St. RM 4130 Fort Lauderdale FC. 33301___
A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be **filed** if you want the Court to hear your side of the case.

**If you do not file your written response on time, you may lose the case, and your wages, money, and property may be taken thereafter without further warning from the Court.** There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also serve a copy of your written response on the party serving this summons at:

*(Name and address of party serving summons)* ___Rudyard Jeffers & Maurisia Jeffers___
___PObox 5764, Ft Lauderdale, FL 33310___.

If the party serving summons has designated e-mail address(es) for service or is represented by an attorney, you may designate e-mail address(es) for service by or on you. Service must be in accordance with Florida Rule of Judicial Administration 2.516.

Copies of all court documents in this case, including orders, are available at the Clerk of the Circuit Court's office. You may review these documents, upon request.

Florida Family Law Rules of Procedure Form 12.910(a), Summons: Personal Service on an Individual (09/12)

You must keep the Clerk of the Circuit Court's office notified of your current address. (You may file Designation of Current Mailing and E-mail Address, Florida Supreme Court Approved Family Law Form 12.915.) Future papers in this lawsuit will be served at the address on record at the clerk's office.

**WARNING: Rule 12.285, Florida Family Law Rules of Procedure, requires certain automatic disclosure of documents and information. Failure to comply can result in sanctions, including dismissal or striking of pleadings.**

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Localizado en: _____. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, usted puede consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presente su respuesta ante el tribunal, usted debe enviar por correo o entregar una copia de su respuesta a la persona denominada abajo.

Si usted elige presentar personalmente una respuesta por escrito, en el mismo momento que usted presente su respuesta por escrito al Tribunal, usted debe enviar por correo o llevar una copia de su respuesta por escrito a la parte entregando esta orden de comparencencia a:

Nombre y direccion de la parte que entrega la orden de comparencencia: _____

_____.

**Copias de todos los documentos judiciales de este caso, incluyendo las ordenes, estan disponibles en la oficina del Secretario de Juzgado del Circuito [Clerk of the Circuit Court's office]. Estos documentos pueden ser revisados a su solicitud.**

**Usted debe de manener informada a la oficina del Secretario de Juzgado del Circuito de su direccion actual. (Usted puede presentar _____ el Formulario: Ley de Familia de la Florida 12.915, Florida Supreme Court Approved Family Law Form 12.915, Designation of Current Mailing and E-mail Address.) Los papelos que se presenten en el futuro en esta demanda judicial seran env ados por correo a la direccion que este registrada en la oficina del Secretario.**

ADVERTENCIA: Regla 12.285 (Rule 12.285), de las Reglas de Procedimiento de Ley de Familia de la Florida [Florida Family Law Rules of Procedure], requiere cierta revelacion automatica de documentos e informacion. El incumplimient, puede resultar en sanciones, incluyendo la desestimacion o anulacion de los alegatos.

## IMPORTANT

Des poursuites judiciaries ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Qui se trouve a: *(L'Adresse)* _____. Un simple coup de telephone est insuffisant pour vous proteger; vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le delai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite a la partie qui vous depose cette citation.

Nom et adresse de la partie qui depose cette citation: _____

Les photocopies de tous les documents tribunaux de cette cause, y compris des **arrets**, sont disponible au bureau du greffier. Vous pouvez revue ces documents, sur demande.

**Il faut aviser le greffier de votre adresse actuelle. (Vous pouvez deposer Florida Supreme Court Approved Family Law Form 12.915, Designation of Current Mailing and E-mail Address.) Les documents de l'avenir de ce proces seront envoyer a l'adresse que vous donnez au bureau du greffier.**

ATTENTION: La regle 12.285 des regles de procedure du droit de la famille de la Floride exige que l'on remette certains renseignements et certains documents a la partie adverse. Tout refus de les fournir pourra donner lieu a des sanctions, y compris le rejet ou la suppression d'un ou de plusieurs actes de procedure.

THE STATE OF FLORIDA
TO EACH SHERIFF OF THE STATE:   You are commanded to serve this summons and a copy of the complaint in this lawsuit on the above-named person.

DATED: _____

(SEAL)

CLERK OF THE CIRCUIT COURT

By: _____
Deputy Clerk

IN THE CIRCUIT COURT OF THE 17th
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CIVIL DIVISION

CASE NO. CACE17006711

Judge Michael L. Gates

RUDYARD JEFFERS and MAURISIA
JEFFERS,

     Plaintiffs,

v.

RHA 2, LLC; HAVENBROOK HOMES,
LLC; and PATRICK WHELAN

     Defendants.

## NOTICE OF EMAIL DESIGNATION

I, RORY ERIC JURMAN, being sworn, certify that my current mailing address is: One
Financial Plaza, Suite 2100, 100 Southeast Third Avenue, Fort Lauderdale, FL 33394, Telephone
No. (954) 377-8100, Fax No. (954) 377-8101.

I designate as my current e-mail address(es): rjurman@fowler-white.com;
admiszewicki@fowler-white.com; rejeserve@fowler-white.com; jgainey@fowler-white.com;
mmejia@fowler-white.com.

**I understand that I must keep the clerk's office and the opposing party or parties
notified of my current mailing and e-mail address(es) and that all future papers in this
lawsuit will be served at the address(es) on record at the clerk's office.**

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

CASE NO. CACE17006711

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of June, 2017, the foregoing document was electronically filed with the Clerk of the Court using the Florida e-filing portal. I also certify that the foregoing document is being served this day on Mr. and Mrs. Rudyard and Maurisia Jeffers, PO Box 5764, Fort Lauderdale, FL 33310.

Respectfully submitted,

/s/ *Rory E. Jurman*
Rory Eric Jurman
Fla. Bar No. 194646
Email: rjurman@fowler-white.com

Aaron M. Dmiszewicki
Fla. Bar No. 111455
Email: admiszewicki@fowler-white.com

FOWLER WHITE BURNETT, P.A.
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
Telephone:    (954) 377-8100
Facsimile:     (954) 377-8101

4851-6249-7354, v. 1

- 2 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

IN THE CIRCUIT COURT OF THE 17th
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CIVIL DIVISION

CASE NO. CACE17006711

Judge Michael L. Gates

RUDYARD JEFFERS and MAURISIA
JEFFERS,

        Plaintiffs,

v.

RHA 2, LLC; HAVENBROOK HOMES,
LLC; and PATRICK WHELAN

        Defendants.

## NOTICE OF APPEARANCE

PLEASE TAKE NOTICE that the undersigned attorneys hereby appear as counsel on behalf of the Defendants, RHA 2, LLC; HAVENBROOK HOMES, LLC; and PATRICK WHELAN, as attorneys of record in the above-numbered cause.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of June, 2017, the foregoing document was electronically filed with the Clerk of the Court using the Florida e-filing portal. I also certify that the foregoing document is being served this day on Mr. and Mrs. Rudyard and Maurisia Jeffers, PO Box 5764, Fort Lauderdale, FL 33310.

CASE NO. CACE17006711

Respectfully submitted,

/s/ *Rory E. Jurman*

Rory Eric Jurman
Fla. Bar No. 194646
Email: rjurman@fowler-white.com

Aaron M. Dmiszewicki
Fla. Bar No. 111455
Email: admiszewicki@fowler-white.com

FOWLER WHITE BURNETT, P.A.
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
Telephone:   (954) 377-8100
Facsimile:    (954) 377-8101

4834-6760-5322, v. 1



## IN THE COUNTY COURT OF THE 17th
## JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY
## FLORIDA CIVIL ACTION

CASE: CACE17006711
DIVISION:12

Rudyard Jeffers
Maurisia Jeffers,

        Plaintiff

SUES.

Rha2 Llc,
Havenbrook Homes,
Patrick Whelan,

        Defendants
_____/

## MOTION FOR LEAVE TO FILE FIRST AMMENDED COMPLAINT

    Plaintiffs, Rudyard & Maurisia Jeffers pursuant to Rule1.190 of Florida Civil Procedure, herby files this Motion for Leave to File a First Amended Complaint, and in support thereof states the following:

1. On or about April 2017, Plaintiffs filed its initial Complaint against Defendants.
2. ALL Defendants were served and filed a response to the Plaintiffs' Initial Complaint, by and through their former counsel.
3. Plaintiffs attempted to file similar amendment on June 9th, 2017 but was not docketed. (Exhibit "B")
4. Florida Rules of Civil Procedure 1.190 (e) provides: '[a]t any time in furtherance of justice, upon such terms as may be just, the court may permit any...pleading...to be amended or material supplemental matter to be set forth in an amended or supplemental pleading."
5. Public policy favors the liberal amendment of pleadings so that cases can be tried on their merits. *See Sun Valley Homeowners, Inc. v. American Land Lease, Inc. 927 So.2d 259* (Fla. 2ndDCA 2006).

6. It is well established under Florida law that a party should be given leave to amend the pleading unless said party has abused the amendment privilege; allowing the amendment would prejudice the other party; or the amendment would be futile. *See Morgan Co. Inc. v Orange County*, 818 So. 2d 640 (Fla. 5th DCA 2002); *Greene v Well Care HMO, Inc.*, 778 So. 2d 1037 (Fla. 4th DCA 2001).

7. This is Plaintiffs' first request to amend our Complaint and will not prejudice the Defendants. Attorneys for the defendant has already indicated that they do not object to this filing.

8. In this case, justice requires that leave to amend be granted to properly seek justice relative to Plaintiffs damages and sufferance.

9. This motion is made in good faith and not for the purpose of delay.

10. The proposed Amended Complaint is attached hereto as Exhibit "A".

WHEREFORE, Plaintiffs, Rudyard Jeffers and Maurisia Jeffers, respectfully requests that this Honorable Court enter an Order granting this Motion for leave to File a First Amended Complaint and deeming the First Amended Compliant attached to this Motion as Exhibit "A" as filed on the date of the Court's Order, and for such other relief as this Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent by mail to all counsel of record in the above captioned case this 7th day of July, 2017.

Respectfully submitted,

Rudyard & Maurisia Jeffers
P O Box 9764
Fort Lauderdale, FL 33310

Exhibit "A"

IN THE COUNTY COURT OF THE 17th
JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY
FLORIDA CIVIL ACTION

CASE: CACE17006711
DIVISION:12

Rudyard Jeffers
Maurisia Jeffers,

                    Plaintiff

SUES.

RHA2 LLC,
Havenbrook Homes,
PATRICK WHELAN,

                    Defendants

_____/

## FIRST AMMENDED COMPLAINT

The Plaintiff, Rudyard and Maurisia Jeffers, hereby sue Defendants, RHA2 LLC, Havenbrook Homes LLC and Patrick Whelan, and as grounds therefore alleges as follows:

1.  This action for damages I excess of Fifteen thousand ($15, 000.00) Dollars, exclusive of fees and costs.

2.  At all material times Plaintiffs, Rudyard & Maurisia Jeffers, was a resident of Pompano Beach, Broward County, Florida and is otherwise *sui juris*.

3.  At all material times Defendant, RHA2 LLC, is a foreign registered corporation out of Delaware with authorization to conduct and are actively conducting business in the state of Florida and in Broward County, Florida.

4.  More specifically, on or about March 17, 2014 RHA2 LLC purchased the rental property in question 2170 NE 1st Ave, Pompano Beach FL, 33060.

5.  The Plaintiffs, Rudyard & Maurisia Jeffers were the 1st and only tenants to lease from the Defendants the said property on September 6, 2014 within their 6 months of purchase and has now renewed 2 more times making us currently in our 3rd year.

6. At all material times Defendant uses, Corporation Service Company is a foreign registered corporation out of Delaware with authorized to conduct and are actively conducting business in the state of Florida.

7. More specifically, Corporation Service Company has been listed as the registered agent on record for both RHA2 LLC and Havenbrook Homes LLC during our tenancy at the rental property in question.

8. At all material times Defendant, Havenbrook Homes is a foreign registered corporation out of Delaware with authorized to conduct and is actively conducting business in the state of Florida and in Broward County, Florida.

9. More specifically, as per contracted lease between the parties, Havenbrook Homes LLC *"is authorized to manage the premises and to act on behalf of the Landlord with respect to this lease, including, without limitation, for the service of process and receiving and receipting for demands and notice"* of RHA2 LLC specifically for 2170 NE 1st Ave, Pompano Beach FL 33060, the rental property in question.

10. At all material time Defendant, Patrick Whelan is the CEO of Havenbrook Homes LLC which conducts and is actively conducting business in the state of Florida and in Broward County, Florida.

11. Rudyard and Maurisia Jeffers held two prior contracts during September 6, 2014 to September 5, 2016.

12. Rudyard and Maurisia Jeffers currently holds a renewed lease agreement with Havenbrook Homes LLC for RHA 2LLC signed July 28th, 2016 for term of 12 months from September 6, 2016 to September 5, 2017 and with a security deposit brought forward of two thousand six hundred and twenty-five dollars ($2625.00) from 2014 initial lease.

13. Water stains were evident in Kitchen cupboards under the sink in 2014 and concerns were expressed but were assure that they were old stain and non-essential from 2014 initial inspection.

14. Since leasing the property, 2170 NE 1st Ave, Pompano Beach FL 33060 in 2014 from the defendants, the property has had severe plumbing problems and air conditioning and water leaks.

15. Plaintiffs consistently requested maintenance services within 5 months of initial lease in 2014 for major backflow issues in the property second bathroom through the tub and toilet.

16. Reimbursements/concessions were made to plaintiffs for hotel stay during said repairs and we could reoccupy the home upon the completion.

17. Within another several months into the next years' lease renewal for 2015 the water stains under the kitchen sinks became more and more obvious as it was spreading but once reported there was very little to no response from Havenbrook Homes LLC.

18. During the early months 2016, the house started flooding in various rooms such as laundry, bathroom, closets, kitchen and living room walls without any idea of the source.

19. In July 2016 Havenbrook reached out to us about a third (3rd) lease renewal and we responded with specific uncertainty due to the water leaks and the broken ac and we were given the assurance that they will be immediately.

20. In good faith, we renewed the lease and unfortunately water and ac flooding got worse, the horrible odor increased as the walls were overloaded with water which lead to mold and infestation of roaches, flies and bugs living and breathing through the walls making the air quality poor and very difficult live in or enjoy the house.

21. Household started getting sick from poor conditions, Rudyard was rush to the hospital for treatment to due poor air quality and his son ZJ who suffers from 11 ailments including asthma also had to relocate from the house because his conditions were becoming more inflamed.

22. In November 2016 thanksgiving was embarrassing and unbearable we couldn't eat or cook in the house and had to spend most of the time outside.

23. In December, we were forced to pay over $1500 to fix the ac unit and find the source of the leak behind the kitchen, however, despite numerous requests we are yet to be reimbursed for patching the copper pipes to stop the leaks.

24. Since September 2016 we were not able to use 1 bull bathroom, use the dishwasher or the washing machines, in the home despite paying full rent.

25. We reached out to the State Department in December to help us to mediate with Havenbrook fix all these problems and they denied the issues even existed whilst on the other hand claiming to have fixed them.

26. Havenbrook has been cited by the City of Pompano Beach for many more issues that we in addition to the complaints that we have been advocating to have repaired in the home and to which they have admitted guilt.

## CERTIFICATE OF SERVICE

The Plaintiffs' certify that a copy the foregoing document has been furnished to Aaron Dmiszewicki Esq, Fowler White Burnett, Defendants attorney, One Financial Plaza, 100 SE 3rd Avenue, 21st Floor, Fort Lauderdale, FL 33394 via mail on July 7th, 2017.

Date: 7-7-2017

_____
Signature of Plaintiff
Rudyard & Maurisia Jeffers
P O Box 5764
Fort Lauderdale, FL 33310
T: 954-873-5413

*Exhibit "E"*

### IN THE COUNTY COURT OF THE 17th
### JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY
### FLORIDA CIVIL ACTION

CASE: CACE17006711
DIVISION:12

Rudyard Jeffers
Maurisia Jeffers,

          Plaintiff



A TRUE COPY

**JUN 09 2017**

BRENDA O. FORMAN
CLERK OF THE CIRCUIT COURT
BROWARD COUNTY, FL

SUES.

RHA2 LLC,
Havenbrook Homes,
PATRICK WHELAN,

          Defendants

_____/

## AMMENDED COMPLAINT

The Plaintiff, Rudyard and Maurisia Jeffers, hereby sue Defendants, RHA2 LLC, Havenbrook Homes LLC and Patrick Whelan, and as grounds therefore alleges as follows:

1. This action for damages I excess of Fifteen thousand ($15, 000.00) Dollars, exclusive of fees and costs.

2. At all material times Plaintiffs, Rudyard & Maurisia Jeffers, was a resident of Pompano Beach, Broward County, Florida and is otherwise *sui juris.*

3. At all material times Defendant, RHA2 LLC, is a foreign registered corporation out of Delaware with authorization to conduct and are actively conducting business in the state of Florida and in Broward County, Florida.

4. More specifically, on or about March 17, 2014 **RHA2 LLC** purchased the rental property in question 2170 NE 1st Ave, Pompano Beach FL, 33060.

5. The Plaintiffs, Rudyard & Maurisia Jeffers were the 1st and only tenants to lease from the Defendants the said property on September 6, 2014 within their 6 months of purchase and has now renewed 2 more times making us currently in our 3rd year.

1

6. At all material times Defendant uses, Corporation Service Company is a foreign registered corporation out of Delaware with authorized to conduct and are actively conducting business in the state of Florida.

7. More specifically, Corporation Service Company has been listed as the registered agent on record for both RHA2 LLC and Havenbrook Homes LLC during our tenancy at the rental property in question.

8. At all material times Defendant, Havenbrook Homes is a foreign registered corporation out of Delaware with authorized to conduct and is actively conducting business in the state of Florida and in Broward County, Florida.

9. More specifically, as per contracted lease between the parties, Havenbrook Homes LLC *"is authorized to manage the premises and to act on behalf of the Landlord with respect to this lease, including, without limitation, for the service of process and receiving and receipting for demands and notice"* of RHA2 LLC specifically for 2170 NE 1st Ave, Pompano Beach FL 33060, the rental property in question.

10. At all material time Defendant, Patrick Whelan is the CEO of Havenbrook Homes LLC which conducts and is actively conducting business in the state of Florida and in Broward County, Florida.

11. Rudyard and Maurisia Jeffers held two prior contracts during September 6, 2014 to September 5, 2016.

12. Rudyard and Maurisia Jeffers currently holds a renewed lease agreement with Havenbrook Homes LLC for RHA 2LLC signed July 28th, 2016 for term of 12 months from September 6, 2016 to September 5, 2017 and with a security deposit brought forward of two thousand six hundred and twenty-five dollars ($2625.00) from 2014 initial lease.

13. Water stains were evident in Kitchen cupboards under the sink in 2014 and concerns were expressed but were assure that they were old stain and non-essential from 2014 initial inspection.

14. Since leasing the property, 2170 NE 1st Ave, Pompano Beach FL 33060 in 2014 from the defendants, the property has had severe plumbing problems and air conditioning and water leaks.

2

15. Plaintiffs consistently requested maintenance services within 5 months of initial lease in 2014 for major backflow issues in the property second bathroom through the tub and toilet.

16. Reimbursements/concessions were made to plaintiffs for hotel stay during said repairs and we could reoccupy the home upon the completion.

17. Within another several months into the next years' lease renewal for 2015 the water stains under the kitchen sinks became more and more obvious as it was spreading but once reported there was very little to no response from Havenbrook Homes LLC.

18. During the early months 2016, the house started flooding in various rooms such as laundry, bathroom, closets, kitchen and living room walls without any idea of the source.

19. In July 2016 Havenbrook reached out to us about a third $(3^{rd})$ lease renewal and we responded with specific uncertainty due to the water leaks and the broken ac and we were given the assurance that they will be immediately.

20. In good faith, we renewed the lease and unfortunately water and ac flooding got worse, the horrible odor increased as the walls were overloaded with water which lead to mold and infestation of roaches, flies and bugs living and breathing through the walls making the air quality poor and very difficult live in or enjoy the house.

21. Household started getting sick from poor conditions, Rudyard was rush to the hospital for treatment to due poor air quality and his son ZJ who suffers from 11 ailments including asthma also had to relocate from the house because his conditions were becoming more inflamed.

22. In November 2016 thanksgiving was embarrassing and unbearable we couldn't eat or cook in the house and had to spend most of the time outside.

23. In December, we were forced to pay over $1500 to fix the ac unit and find the source of the leak behind the kitchen, however, despite numerous requests we are yet to be reimbursed for patching the copper pipes to stop the leaks.

24. Since September 2016 we were not able to use 1 bull bathroom, use the dishwasher or the washing machines, in the home despite paying full rent.

25. We reached out to the State Department in December to help us to mediate with Havenbrook fix all these problems and they denied the issues even existed whilst on the other hand claiming to have fixed them.

26. Havenbrook has been cited by the City of Pompano Beach for many more issues that we in addition to the complaints that we have been advocating to have repaired in the home and to which they have admitted guilt.

27. We had requested early termination of lease but are at total impasse as to the terms

28. It is now almost 3 years of renting this home and it is now unintenantable.

Plaintiff brings forth the following counts and allegations supporting this cause of action:

## COUNT 1-BREACH OF CONTRACT

a. Defendant failed to perform the duties in the written contract which obligates landlord in taking care of the premises when indicated by plaintiffs as per pages 8, 11, 12, 13 & 14.

b. Defendant failed to perform the duties under contract and as required by FL Statute 83.05, 83.201, 83.49, 83.51.

c. Defendant failed to comply with right of access under contract on page 7-8 and FL Statue 83.53.

d. Defendant failed to returned Security deposit to the Plaintiffs under this contract and failed to notice plaintiff of any intent to imposé a claim on those deposits.

e. Defendant also failed to adopt under its own contract to place security to escrow since this complaint was already filed and received by them. (FL 83.61)

f. Defendant failed by prohibiting plaintiff from entering the dwelling and took illegal possession (FL Statue 83.67).

4

## COUNT 2-NEGLIGENCE

a. Defendant failed to perform the duties in the written contract in keeping the dwelling safe and in an effective manner which lead to the injuries sustained by the plaintiffs and their family.

b. Defendants failed to perform under FL Statue 83.51

c. Defendant failed to care for and repair dwelling despite being cited by City of Pompano Beach violating the ordinances of the city and the terms of this contract as well as FL Statute.

Plaintiff further states that the Defendant is/ is not in the Military Service of the United States.

Plaintiff further states that a copy of the written instrument or invoice on which this suit is based is attached hereto.

The undersigned, being duly sworn, says that the foregoing is a just and true statement of the amount owing the Plaintiff by said Defendant, exclusive of all setoffs and just grounds of defense, and that this suit is brought in good faith.

## DAMAGES

The Plaintiffs Rudyard and Maurisia Jeffers, respectfully requests this honorable Court enter a Judgment in our favor against Defendant (s) RHA2 LLC, Havenbrook Homes LLC, and Patrick Whelan, for damages in accordance to FL Statute 83.55 and as such not limited to the complaint for damages in the sum of $50, 000 (fifty thousand dollars) together with the court costs, expenses and interest, an order termination of the current lease, also ordering an injunction against the defendant from posting negatively to the plaintiff's credit report and barring the filing under eviction against this lease on Plaintiff that may be incurred and any other just and further relief as this Honorable Court deems just and proper.

Date: 6-9th-2017

Signature of Plaintiff
Rudyard & Maurisia Jeffers
P O Box 5764
Fort Lauderdale, FL 33310
T: 954-873-5413

## CERTIFICATE OF SERVICE

The Plaintiffs' certify that a copy the foregoing document has been furnished to Morris & Martin LLP, Counsel for the Defendants at 990 Hammond Drive, suite 300, Atlanta GA 30328 via mail on June 9th, 2017.

Date: 6-9-2017

Signature of Plaintiff
Rudyard & Maurisia Jeffers
P O Box 5764
Fort Lauderdale, FL 33310
T: 954-873-5413

CASE NO. CACE17006711

IN THE CIRCUIT COURT OF THE 17th
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CIVIL DIVISION

CASE NO. CACE17006711

Judge Michael L. Gates

RUDYARD JEFFERS and MAURISIA
JEFFERS,

      Plaintiffs,

v.

RHA 2, LLC; HAVENBROOK HOMES,
LLC; and PATRICK WHELAN

      Defendants.

## NOTICE OF UNAVAILIBILITY

Now comes Plaintiffs Rudyard and Maurisia Jeffers, hereby files this Notice of

Unavailability stating that the undersigned will be unavailable from November 9, 2017 through

January 2, 2018. Plaintiffs requests that no hearings, depositions, mediations, orders, and other

proceedings requiring Plaintiff attendance, be scheduled during that period.

                                                Respectfully submitted,

                                                /s/Rudyard & Maurisia Jeffers
                                                Plaintiffs
                                                P O Box 5764
                                                Fort Lauderdale, FL 33310
                                                Tel:954-873-5413

CASE NO. CACE17006711

## CERTIFICATE OF SERVICE

WE HERBEY CERTIFY that the foregoing was filed with the Clerk of Court and served via mail to the defendants' counsel of record on this ___ day of November 2017.

/s/Rudyard & Maurisia Jeffers
**Plaintiffs**

IN THE CIRCUIT COURT OF THE 17th
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CIVIL DIVISION

RUDYARD JEFFERS and MAURISIA
JEFFERS,

      Plaintiffs,

v.

RHA 2, LLC; HAVENBROOK HOMES,
LLC; and PATRICK WHELAN

      Defendants.

CASE NO. CACE17006711

## NOTICE OF HEARING
### (Motion Calendar)

PLEASE TAKE NOTICE that the undersigned has set down for hearing before the Honorable Michael L. Gates, one of the Judges of the above-styled Court, in his Chambers at Broward County Courthouse, Courtroom 16175, 201 S.E. 6th St., Ft. Lauderdale, Florida 33301, on Wednesday, January 17, 2018 at 8:45 a.m., the following:

**MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

PLEASE GOVERN YOURSELVES ACCORDINGLY.

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Room 470, 201 S.E. Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

CASE NO. CACE17006711

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent to Rudyard Jeffers and Maurisia Jeffers via e-mail, maurisiajfl@aol.com; and via U.S. Mail and Certified Mail, Return Receipt Requested (Receipt No. 7017 2400 0000 6630 7029) P.O. Box 5764, Ft. Lauderdale, Florida 33310, this 2nd day of January, 2018

/s/ *Rory Eric Jurman*
Rory Eric Jurman
Fla. Bar No. 194646
Email: rjurman@fowler-white.com

Aaron M. Dmiszewicki
Fla. Bar No. 111455
Email: admiszewicki@fowler-white.com

FOWLER WHITE BURNETT, P.A.
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
Telephone:   (954) 377-8100
Facsimile:   (954) 377-8101

W:\WPTMP\CCC\Word2010Macros\WordMacros\WordForms\05_Real Estate\Wood\Warranty Deed (NO).docx

4821-2882-0313, v. 1

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

IN THE CIRCUIT COURT OF THE 17ʰ
JUDICIAL CIRCUIT, IN AND FOR Broward
COUNTY, FLORIDA

Rudyard and Maurisia
Jeffers

v.

Havenbrook Homes, et al.

Case No.: CACE17006711

Filed in Open Court,
CLERK OF THE CIRCUIT COURT
ON _____1-17-2018_____
BY _____

)
)
)
)
)
)

**ORDER**

Granting in part motion for leave to amend

THIS CAUSE having come on to be heard on Defendant's/Plaintiff's

Motion _for leave to file an amended complaint_

and the Court having heard argument of counsel, and being otherwise advised

in the Premises, it is hereupon,

ORDERED AND ADJUDGED that said Motion be, and the same is hereby

Granted in part. Plaintiffs shall file an amended
complaint within 10 days.

DONE AND ORDERED in Chambers, at

this ___17___ day of ___Jan___ 20_18_

_____
Circuit Judge

Copies furnished:

IN THE COUNTY COURT OF THE 17th
JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY
FLORIDA CIVIL ACTION

CASE: CACE17006711
DIVISION:12

Rudyard Jeffers
Maurisia Jeffers,

      **Plaintiff**

SUES,

Rha2 Llc,
Havenbrook Homes,
Patrick Whelan,

      Defendants
_____/

### WAIVER OF APPEARANCE

      I hereby waive my personal appearance in the case listed above for the January 17, 2018 scheduled for MOTION TO FILE AMMENDED COMPLAINT.

I enter this waiver with the acknowledgment and understanding of the following:

(1) I have maintained contact with my spouse & co-plaintiffs and I understand the nature of the proceeding that will be held on the date listed above and have discussed with my spouse & co-plaintiff any questions I have about the proceeding. I have every confident that Maurisia can speak on both our behalf favorably.

(2) This waiver is effective not only for the proceeding noted above, but all future proceedings unless my personal appearance is mandatory for a specific future proceeding. I cannot waive my personal appearance for jury selection or trial.

(3) It is my responsibility to maintain contact with my spouse & co-plaintiff about this case. It is my responsibility to notify all parties and the court of any change in my personal contacts.

(4) It is also my responsibility to notify the office of the Clerk of Court of any change in my address.

I understand that the Clerk of Court will notify me of scheduled court appearances by mail sent to the address I have given the Clerk of Court.

I have read the above conditions of my waiver of appearance and I understand these conditions and I am not under the influence of drugs or alcohol. I enter this waiver with the understanding that my personal appearance is unnecessary for this proceeding. No one has forced or threatened me to enter this waiver, and I am entering this waiver freely and voluntarily because I feel it is in my best interest. This waiver is signed the _11_ day of _January_, 20_18_.

Co-Plaintiff /Rudyard Jeffers

# IN THE COUNTY COURT OF THE 17th
## JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY
## FLORIDA CIVIL ACTION

CASE: CACE17006711

DIVISION:12

Rudyard Jeffers
Maurisia Jeffers,

Plaintiff

SUES.

RHA2 LLC,
Havenbrook Homes,
PATRICK WHELAN,

Defendants

_____/

## **FIRST AMMENDED COMPLAINT**

The Plaintiff, Rudyard and Maurisia Jeffers, hereby sue Defendants, RHA2 LLC, Havenbrook Homes LLC and Patrick Whelan, and as grounds therefore alleges as follows:

1. This action for damages I excess of Fifteen thousand ($15, 000.00) Dollars, exclusive of fees and costs.

2. At all material times Plaintiffs, Rudyard & Maurisia Jeffers, was a resident of Pompano Beach, Broward County, Florida and is otherwise *sui juris.*

3. At all material times Defendant, RHA2 LLC, is a foreign registered corporation out of Delaware with authorization to conduct and are actively conducting business in the state of Florida and in Broward County, Florida.

4. More specifically, on or about March 17, 2014 RHA2 LLC purchased the rental property in question 2170 NE 1st Ave, Pompano Beach FL, 33060.

5. The Plaintiffs, Rudyard & Maurisia Jeffers were the 1st and only tenants to lease from the Defendants the said property on September 6, 2014 within their 6 months of purchase and has now renewed 2 more times making us currently in our 3rd year.

1

6. At all material times Defendant uses, Corporation Service Company is a foreign registered corporation out of Delaware with authorized to conduct and are actively conducting business in the state of Florida.

7. More specifically, Corporation Service Company has been listed as the registered agent on record for both RHA2 LLC and Havenbrook Homes LLC during our tenancy at the rental property in question.

8. At all material times Defendant, Havenbrook Homes is a foreign registered corporation out of Delaware with authorized to conduct and is actively conducting business in the state of Florida and in Broward County, Florida.

9. More specifically, as per contracted lease between the parties, Havenbrook Homes LLC "*is authorized to manage the premises and to act on behalf of the Landlord with respect to this lease, including, without limitation, for the service of process and receiving and receipting for demands and notice*" of RHA2 LLC specifically for 2170 NE 1st Ave, Pompano Beach FL 33060, the rental property in question.

10. At all material time Defendant, Patrick Whelan is the CEO of Havenbrook Homes LLC which conducts and is actively conducting business in the state of Florida and in Broward County, Florida.

11. Rudyard and Maurisia Jeffers held two prior contracts during September 6, 2014 to September 5, 2016.

12. Rudyard and Maurisia Jeffers currently holds a renewed lease agreement with Havenbrook Homes LLC for RHA 2LLC signed July 28th, 2016 for term of 12 months from September 6, 2016 to September 5, 2017 and with a security deposit brought forward of two thousand six hundred and twenty-five dollars ($2625.00) from 2014 initial lease.

13. Water stains were evident in Kitchen cupboards under the sink in 2014 and concerns were expressed but were assure that they were old stain and non-essential from 2014 initial inspection.

14. Since leasing the property, 2170 NE 1st Ave, Pompano Beach FL 33060 in 2014 from the defendants, the property has had severe plumbing problems and air conditioning and water leaks.

2

15. Plaintiffs consistently requested maintenance services within 5 months of initial lease in 2014 for major backflow issues in the property second bathroom through the tub and toilet.

16. Reimbursements/concessions were made to plaintiffs for hotel stay during said repairs and we could reoccupy the home upon the completion.

17. Within another several months into the next years' lease renewal for 2015 the water stains under the kitchen sinks became more and more obvious as it was spreading but once reported there was very little to no response from Havenbrook Homes LLC.

18. During the early months 2016, the house started flooding in various rooms such as laundry, bathroom, closets, kitchen and living room walls without any idea of the source.

19. In July 2016 Havenbrook reached out to us about a third (3rd) lease renewal and we responded with specific uncertainty due to the water leaks and the broken ac and we were given the assurance that they will be immediately.

20. In good faith, we renewed the lease and unfortunately water and ac flooding got worse, the horrible odor increased as the walls were overloaded with water which lead to mold and infestation of roaches, flies and bugs living and breathing through the walls making the air quality poor and very difficult live in or enjoy the house.

21. Household started getting sick from poor conditions, Rudyard was rush to the hospital for treatment to due poor air quality and his son ZJ who suffers from 11 ailments including asthma also had to relocate from the house because his conditions were becoming more inflamed.

22. In November 2016 thanksgiving was embarrassing and unbearable we couldn't eat or cook in the house and had to spend most of the time outside.

23. In December, we were forced to pay over $1500 to fix the ac unit and find the source of the leak behind the kitchen, however, despite numerous requests we are yet to be reimbursed for patching the copper pipes to stop the leaks.

24. Since September 2016 we were not able to use 1 bull bathroom, use the dishwasher or the washing machines, in the home despite paying full rent.

25. We reached out to the State Department in December to help us to mediate with Havenbrook fix all these problems and they denied the issues even existed whilst on the other hand claiming to have fixed them.

3

26. Havenbrook has been cited by the City of Pompano Beach for many more issues that we in addition to the complaints that we have been advocating to have repaired in the home and to which they have admitted responsibility.

27. We had requested early termination of lease but are at total impasse as to the terms

28. It is now almost 3 years of renting this home and it is now unintenantable.

Plaintiff brings forth the following counts and allegations supporting this cause of action:

## COUNT 1-BREACH OF CONTRACT

a. Defendant failed to perform the duties in the written contract which obligates landlord in taking care of the premises when indicated by plaintiffs as per pages 8, 11, 12, 13 & 14.

b. Defendant failed to perform the duties under contract and as required by FL Statute 83.05, 83.201, 83.49, 83.51.

c. Defendant failed to comply with right of access under contract on page 7-8 and FL Statue 83.53.

d. Defendant failed to returned Security deposit to the Plaintiffs under this contract and failed to notice plaintiff of any intent to impose a claim on those deposits. (FL Stat.772.11)

e. Defendant also failed to adopt under its own contract to place security to escrow since this complaint was already filed and received by them. (FL Stat. 83.61)

f. Defendant failed by prohibiting plaintiff from entering the dwelling and took illegal possession (FL Statue 83.67).

## COUNT 2-NEGLIGENCE

a. Defendant failed to perform the duties in the written contract in keeping the dwelling safe and in an effective manner which lead to the injuries and suffering sustained by the plaintiffs and their family.

b. Defendants failed to perform under FL Statue 83.51

4

c.  Defendant failed to care for and repair dwelling despite being cited by City of Pompano Beach violating the ordinances of the city and the terms of this contract as well as FL Statute.

d.  Defendants blatantly refused to resolve the repairs take actions to remove rodents' infestation from home despite receiving citation.

e.  Defendants lied to State Department of Agriculture about the damages to the property despite already having more than 4 different contractors attempt to assess the situation and quote them for the repairs.

## COUNT 3- GROSS NEGLIGENCE

a.  Defendants violated FL Statue 768.72 in its entirety by not taking care of the problems they knew existed to their property which could have prevented unnecessary suffering and loss to the Plaintiffs.

b.  Defendants had actual knowledge of the property damages and infestation after sending several contractors to the property and did nothing hence showing their "Intentional Misconduct" in the severity of the problems to themselves and kept charging and accepting the Plaintiffs rent. FL Statute 768.72 (2) (a)

c.  The Defendants with the afore said knowledge of potential harm intentionally kept Plaintiffs as tenants to further exploit them for the rents holding them to the tenancy.

d.  Defendants conduct was extremely reckless and in wanting for care to repairing the property that it constituted a conscious disregard or indifference to the 7 family member households' life, safety and rights. FL Statute 768 (2) (b)

e.  Defendants owe Plaintiff punitive damages despite being an employer, principal, corporation or legal entity for they are held to the actions/conduct of their employees or agents for they primarily knew of the despicable situation for the Plaintiffs and actively participated in keeping the tenancy which is a clear violation of FL Statute768 (3) (a-c).

f.  Defendants caused Plaintiff's emotional distress as a result of the property damage and infestation of rodents/insects, such as anxiety, depression, and insomnia all shared amongst the family at one point or another.

5

## COUNT 4- CIVIL THEFT

a.  Defendant failed to return Plaintiffs security deposit subject to Fla. Stat. sec 772.11

b.  Defendants failed to make a claim against the Plaintiff's Security deposit which constituted a forfeiture of the right to make a claim against the deposit.

c.  Despite the Plaintiffs notifying the Defendant in writing of the refusal to accept check made payable below the security amount demanding full refund the Defendants has ignored the plaintiff in so doing.

d.  Defendants failure to return deposit after the tenant made a claim for its return constitutes conversion of the funds.

Plaintiff further states that the Defendants are not in the Military Service of the United States.

The undersigned, being duly sworn, says that the foregoing is a just and true statement of the amount owing the Plaintiff by said Defendant, exclusive of all setoffs and just grounds of defense, and that this suit is brought in good faith.

## DAMAGES

The Plaintiffs Rudyard and Maurisia Jeffers, respectfully requests this honorable Court enter a Judgment in our favor against Defendant (s) RHA2 LLC, Havenbrook Homes LLC, and Patrick Whelan, for damages in accordance to FL Statutes 83.55, 772.11, 768 (1-3) and as such, not limited to the complaint for:

1.  Damages in the sum of $100, 000 (one hundred thousand dollars) together with the court costs, expenses and interest,

2.  An order termination of the current lease,

6

3. Also ordering an injunction against the defendant from posting negatively to the plaintiff's credit report

4. Barring the filing under eviction against this lease on Plaintiffs

5. Plaintiff should be awarded Punitive Damages to punish the egregious wrongdoing so as to deter such wrongdoing from ever occurring again especially since the Defendants are expert in their business of real estate investments and family rentals with over 500 properties in Broward County alone ignoring the other thousands across the state and their home state.

6. and any other just and further relief as this Honorable Court deems just and proper.

Date: 1-23-2018

<div style="text-align: right;">

_____s_____
Signature of Plaintiff
Rudyard Jeffers
Maurisia Jeffers
P O Box 5764
Fort Lauderdale, FL 33310
T: 954-873-5413

</div>

## CERTIFICATE OF SERVICE

The Plaintiffs' certify that a copy the foregoing document has been furnished to Aaron Dmiszewicki Esq, Fowler White Burnett, Defendants attorney, One Financial Plaza, 100 SE 3rd Avenue, 21st Floor, Fort Lauderdale, FL 33394 via email on January 23rd, 2017.

Date: 1-23-2018

<div style="text-align: right;">

_____s_____
Signature of Plaintiff
Rudyard Jeffers
Maurisia Jeffers
P O Box 5764
Fort Lauderdale, FL 33310
T: 954-873-5413

</div>

IN THE CIRCUIT COURT OF THE 17th
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CIVIL DIVISION

CASE NO. CACE17006711

Judge Michael L. Gates

RUDYARD JEFFERS and MAURISIA
JEFFERS,

      Plaintiffs,

v.

RHA 2, LLC; HAVENBROOK HOMES,
LLC; and PATRICK WHELAN

      Defendants.

## MOTION TO DISMISS FIRST AMENDED COMPLAINT

Defendants, RHA 2, LLC ("RHA"); HAVENBROOK HOMES, LLC ("Havenbrook");

and PATRICK WHELAN (collectively, the "Defendants"), by and through undersigned counsel,

files this Motion to Dismiss the Plaintiffs' First Amended Complaint, and in support thereof

states as follows:

**I.**     **The First Amended Complaint Must Be Dismissed Because It Does Not Conform With the Florida Rules of Judicial Administration.**

As an initial matter, the Plaintiff's First Amended Complaint ("FAC") must be dismissed

for failure to conform with the Florida Rules of Judicial Administration. Plaintiffs Rudyard and

Maurisia Jeffers are proceeding in this matter *pro se*. Rule 2.515(b) requires that "A party who is

not represented by an attorney shall sign any document and state the party's address and

telephone number, including area code." Rule 2.515(c) clarifies that a signature required under

subsection (b) can be either "(A) original signatures; (B) original signatures that have been

reproduced by electronic means, such as on electronically transmitted documents or photocopied

documents; (C) an electronic signature indicator using the '/s/', 's/', or '/s' [name] formats authorized by the person signing a document electronically served or filed; or (D) any other signature format authorized by general law, so long as the clerk where the proceeding is pending has the capability of receiving and has obtained approval from the Supreme Court of Florida to accept pleadings and documents with that signature format."

The signature on the FAC does not comply with the requirements of Rule 2.515, as the purported signature is only a typed letter "s", not followed by a name. Thus, the FAC is not signed, and must be dismissed.

However, even if the Court deems that the mere typing of the letter "s" is sufficient, it is not clear which Plaintiff has signed the FAC. Although the Plaintiffs are believed to be husband and wife, neither of them are Florida licensed attorneys. Thus, *both* Mr. *and* Mrs. Jeffers must sign a complaint in order for it to be effective, as one cannot represent the other.[1] Because it appears from the face of the FAC that only one plaintiff has signed it, and because it is not clear which plaintiff did so, the entire FAC should be dismissed with instructions that both Plaintiffs shall sign it.

## II.      Notwithstanding the FAC's Deficiencies Regarding the Rules of Judicial Administration, the FAC Must Be Dismissed for Failure to State a Cause of Action.

The purpose of a motion to dismiss is to test the sufficiency of a complaint to state a cause of action. *See Hammonds v. Buckey Cellulose Corp.*, 285 So. 2d 7 (Fla. 1973); *Augustine v. S. Bell Tel. & Tel. Co.*, 91 So. 2d 320 (Fla. 1956). The court's review "is limited to the allegations within the four corners of the complaint and the attachments incorporated into the complaint." *De Veaux v. Westwood Baptist Church*, 953 So. 2d 677, 681 (Fla. 1st DCA 2007);

---

[1] To that end, the Defendants object to the "Waiver of Appearance" filed by Mr. Jeffers on January 17, 2018. Mrs. Jeffers is not an attorney; she cannot represent her husband in court or any other legal proceedings.

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

CASE NO. CACE17006711

Fla. R. Civ. P. 1.130(b). Whether a complaint is legally sufficient to state a cause of action is a matter of law. *See W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 300 (Fla. 1st DCA 1999).

To state a cause of action, "a Complaint must allege sufficient ultimate facts to show that the pleader is entitled to relief." *Samuels v. King Motor Co. of Fort* Lauderdale, 782 So. 2d 489, 495 (Fla. 4th DCA 2001). Florida is a "fact pleading jurisdiction" which requires claimants to provide "a short and plain statement of the ultimate facts showing that the pleader is entitled to relief" and "state their pleadings with particularity for a defense to be prepared" *Arky, Freed. Stearns, Watson, Greer, Weaver & Harris, P.A. v. Bowmar Instr. Corp.*, 537 So. 2d 561 (Fla. 1988). Even if the Court looks at the allegations in the light most favorable to the Plaintiffs, it still would not be able to find in favor of the Plaintiffs.

### A.   Counts I-IV Must Be Dismissed Because Plaintiffs Fail to Properly Allege Which Defendants Did Which Actions.

Despite having sued three defendants in this case, the FAC repeatedly references actions by "Defendant" or "Defendants." Fla. R. Civ. P. 1.110(b) requires that a pleading setting forth a claim for relief shall contain "a short and plain statement of the ultimate facts showing that the pleader is entitled to relief." At the outset of a suit, litigants must state their pleadings with sufficient particularity for a defense to be prepared. *Horowitz v. Laske*, 855 So. 2d 169, 173 (Fla. 5th DCA 2003).

Here, it is impossible for any of the Defendants to prepare a defense because the FAC does not specify which of them each allegation pertains to. Without this necessary information, responding to the FAC in any meaningful capacity is impossible. The FAC should thus be dismissed for failure to state the pleadings with sufficient particularity for a defense to be prepared.

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

**B.**     **Count I (Breach of Contract) Must Be Dismissed for Failure to State a Cause of Action.**

Fla. R. Civ. P. 1.130(a) is quite clear: "All...contracts...or documents on which action may be brought or defense made...**must** be incorporated in or attached to the pleading." (emphasis added). When a party brings an action based upon a contract and fails to attach a necessary exhibit under Rule 1.130(a), the opposing party may attach the failure to attach a necessary exhibit through a motion to dismiss. *Samuels*, 782 So. 2d at 500. Where a complaint is based on a written instrument, the complaint does not state a cause of action until the instrument or an adequate portion thereof is attached to or incorporated in the complaint. *Id.*

The FAC does not attach a copy of the contract on which Count I is based, and its only reference to the actual language of the contract is by vague reference to paragraphs contained therein. That the contract was attached to the original complaint is irrelevant. "The fact that such exhibits were attached to the original complaint does not breathe life into the amended complaint which was void of exhibits." *Hughes v. Home Sav. of Am., F.S.B.*, 675 So. 2d 649, 650 (Fla. 2d DCA 1996). It is also worth noting that the Plaintiffs claim that the "Defendant" failed to perform numerous duties under contract as ostensibly required by Fla. Stat. §§ 83.05, 83.201, 83.49, and 83.51.[2] However, §§ 83.05 and 83.201 only apply to non-residential leases and have no bearing on this case.

**C.**     **Count II (Negligence) Must Be Dismissed for Failure to State a Cause of Action.**

In addition to the Plaintiffs' failure to sufficiently allege which "Defendant" or "Defendants" did what, the Plaintiffs also fail to state a cause of action for negligence. Under

---

[2] To that end, it is unclear as to whether the Plaintiffs are really seeking to recover under a breach of contract theory or whether they are attempting to plead statutory violations. Either way, because the Plaintiffs do not sufficiently allege which defendants are at fault, the claim must be dismissed.

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

Florida law, negligence has four elements: (1) a duty by defendant to conform to a certain standard of conduct; (2) a breach by defendant of that duty; (3) a causal connection between the breach and injury to plaintiff; and (4) loss or damage to plaintiff. *Bartsch v. Costello*, 170 So. 3d 83, 86 (Fla. 4th DCA 2015).

The FAC fails to set forth any of the elements of negligence. The only purported duty the Plaintiffs reference is failure to perform the duties in the written contract. However, as set forth above, the relevant contract was not attached to the FAC. Thus, the Defendants cannot properly respond to the FAC because they do not know which of them is alleged to have breached a duty, or even what the purported duty was. It perhaps goes without saying that without alleging a cognizable legal duty, the FAC does not—and cannot—allege a breach of that duty. And again, without a breach of a cognizable legal duty, the Plaintiffs do not—and cannot—allege damages proximately caused by such breach. As a result, Count II must be dismissed for failure to state a cause of action.

### D.  Count III (Gross Negligence) Must Be Dismissed for Failure to State a Cause of Action.

Once again, in addition to the Plaintiffs' failure to sufficiently allege which "Defendant" or "Defendants" did what, the Plaintiffs also fail to state a cause of action for gross negligence. Based on the allegations, however, it appears that the Plaintiffs are attempting to establish a claim for punitive damages. Such a claim is not permissible at the outset of a case. Section 768.72(1), Fla. Stat., provides that "In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." A plaintiff must specifically seek leave of court to amend to assert claims for punitive damages. *See generally Beverly Health & Rehabilitation Servs., Inc. v. Meeks*, 778 So. 2d 322 (Fla. 2d DCA

CASE NO. CACE17006711

2000). At this juncture, there *is* no evidence in the record, and the Plaintiffs make no proffer. As a result, the claim for gross negligence—a surrogate for punitive damages—must be dismissed.

Furthermore, under Florida law, in order to allege a cause of action for gross negligence, the Plaintiffs must allege (1) the existence of a composite of circumstances which, together, constitute an imminent or clear and present danger amounting to more than the normal and usual peril; (2) a showing of chargeable knowledge or awareness of the imminent danger; and (3) an act of omission occurring in a manner which evinces a conscious disregard of the consequences. *Deutsche Bank Nat'l Trust Co. v. Foxx*, 971 F. Supp. 2d 1106, 1117 (M.D. Fla. 2013) (applying Florida law); *Glaab v. Caudill*, 236 So. 2d 180, 183-184 (Fla. 2d DCA 1970).

The allegations of the FAC do not even come close to meeting this exceedingly high pleading standard. As a result, even to the extent the Plaintiffs are not pleading gross negligence as a mere surrogate for punitive damages, Count III must be dismissed.[3]

### E.      Count IV (Civil Theft) Must Be Dismissed for Failure to State a Cause of Action.

Once again, the Plaintiffs fail to allege which Defendant or Defendants are being accused of misconduct. For those reasons alone, Count IV should be dismissed.

Furthermore, to state a claim for civil theft under Florida law, the claimant must prove the statutory elements of theft, as well as criminal intent. § 772.11(1), Fla. Stat.; *Gersh v. Cofman*, 769 So. 2d 407, 409 (Fla. 4th DCA 2000). Where the property at issue is also the subject of a contract between the parties, a civil theft claim requires additional proof of "an intricate sophisticated scheme of deceit and theft." *Gersh*, 769 So. 2d at 409 (quoting *Trend Setter Villas of Deer Creek v. Villas on Green*, 569 So. 2d 766, 767 (Fla. 4th DCA 1990)).

---

[3] To that end, any claim for punitive damages made by the Plaintiffs should be stricken until such time as the Plaintiffs obtain leave of court to assert them.

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

CASE NO. CACE17006711

Lastly, and to that end, it is well-established law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil theft. *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008).

The FAC fails to establish any criminal intent on behalf of any of the Defendants that would support an action for civil theft. *Globe Commc'ns Corp. v. 2112 Congress Assocs., Ltd.*, 538 So. 2d 949, 949-50 (Fla. 4th DCA 1989) (affirming dismissal of a claim for civil theft involving the return of a security deposit based on the lack of criminal intent). And, of course, it is undisputed that the relationship between the Plaintiffs and at least one of the defendants is contractual in nature. Lastly, although this technically falls outside the scope of a motion to dismiss, the Plaintiffs' allegations are also false. Notice was sent to the Plaintiffs that portions of their security deposit would be withheld pursuant to § 83.49(3), Fla. Stat. The Plaintiffs then objected to it. Though, plainly, the Plaintiffs did not waive their right to seek full repayment of their security deposit if they feel they are entitled to it, the mechanism by which to do that is an action for return of the security deposit, not civil theft.

## III.   Conclusion

The Plaintiffs have wholly failed to both comply with the Florida Rules of Judicial Administration and state a claim upon which relief can be granted. For these reasons, the FAC must be dismissed. The FAC is now the second attempt by the Plaintiffs to state a cause of action, and they have again failed to do so. Defendants do not contest the Plaintiffs' ability to amend at this time. However, Defendants respectfully submit that the Plaintiffs' continued inability to state a claim upon which relief can be granted should result in a dismissal with prejudice. *Kohn v. City of Miami Beach*, 611 So. 2d 538, 539 (Fla. 3d DCA 1992) ("While there is no magical number of amendments which are allowed, we have previously observed that with amendments beyond the third attempt, dismissal with prejudice is generally not an abuse of

FOWLER WHITE BURNETT P.A., • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

CASE NO. CACE17006711

discretion.  There is simply a point in litigation when defendants are entitled to be relieved from the time, effort, energy, and expense of defending themselves against seemingly vexatious claims.") (internal citations omitted).

WHEREFORE, the Defendants respectfully request that this Court grant its Motion to Dismiss and grant any such further relief the Court deems just and appropriate under the circumstances.

### Certificate of Service

I HEREBY CERTIFY that on this 5th day of February, 2018, the foregoing document was electronically filed with the Clerk of the Court using the Florida e-filing portal.  I also certify that the foregoing document is being served this day on Mr. and Mrs. Rudyard and Maurisia Jeffers, PO Box 5764, Fort Lauderdale, FL 33310, maurisiajff@aol.com..

Respectfully submitted,

*/s/ Rory Eric Jurman*
Rory Eric Jurman
Fla. Bar No. 194646
Email: rjurman@fowler-white.com

Aaron M. Dmiszewicki
Fla. Bar No. 111455
Email: admiszewicki@fowler-white.com

FOWLER WHITE BURNETT, P.A.
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
Telephone:   (954) 377-8100
Facsimile:   (954) 377-8101

IN THE COUNTY COURT OF THE 17th
JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY
FLORIDA CIVIL ACTION

CASE: CACE17006711
DIVISION:12

Rudyard Jeffers
Maurisia Jeffers,

         Plaintiffs

SUES.

RHA2 LLC,
Havenbrook Homes,
PATRICK WHELAN,

         Defendants

_____/

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The Plaintiffs, Rudyard Jeffers and Maurisia Jeffers, submit its opposition to the Defendants' Motion to Dismiss hereby states collectively the following:

**I**

    i.    Counsel on the morning of the hearing acknowledged receipt of the filing and stated that he did not object to it and further went on to explain in the essence of time not to go before the judge and to let us sign the agreed order due to the clerk error of not scanning and docketing the complete FAC filed.

    ii.    In belief of the defendant's counsel plaintiffs agreed to the order and resubmitted the amended filing in question, counsel stated he had no objections to and has now filed a Motion to Dismiss. Is this not an objection?

    iii.    Defendants claim in footnote 1, that they object to the "Waiver of Appearance" filed by Mr. Jeffers and then accuse Mrs. Jeffers of representing her husband despite not being an attorney; these statements by counsel is misleading, speculative and mere assumptions. Defendants

1

cannot object to a filing in a footnote isn't this against the same said Federal Rules of Civil Procedure?

iv.   Defendants never filed an objection to Mr. Jeffers personal waiver of appearance for that days hearing.

v.    Mr. Jeffers waived his appearance only for that instant hearing and no more, simply due to not having sufficient notice of hearing to request a substitute for his employment as the defendants were the ones to schedule the hearing without mutually agreed date and time with the plaintiffs.

vi.   If defendants felt that Mr. Jeffers appearance was of such importance and that Mrs. Jeffers was unjustly representing Mr. Jeffers, then why did counsel made an agreed order instead of taking all these issues to the court and with Mrs. Jeffers only not contact Mr. Jeffers via phone for his approval?

vii.  Plaintiffs in good faith has made a firm effort in following the rules of procedure for this court whilst receiving contrary from the defendants' counsel. Defendants counsel is appearing insecure, impatient need to allow the court to take the lead in trial for the truth to come out and allow us due process Rule 57.105 of the Florida Civil Procedure and Rule 11 Federal Rules of Procedure.

## II

The defendants claim that the plaintiffs FAC failed to State a Cause of Action according to Fla. R. Civ. P. 1.130 (b) by not alleging sufficient ultimate facts to show entitlement to relief and not submitting evidence of such. As the defendant clearly stated that the "State of Florida is a fact-pleading jurisdiction" and as such is why the plaintiffs filed this case in the first instant.

i.    The plaintiffs listed 28 items of ultimate facts pertaining to the cause of action for this case

ii.   Upon meeting with Defendants counsel at the last hearing whereby we agreed for resubmitting the FAC counsel was asked if I needed to reattach the other exhibits previously used when initially filing this case he said "no", and I quote "you only need to resubmit this document with all pages." He also stated that this is just an extension of my original claim so refiling all that paperwork was not necessary. We believed him.

2

iii. Exhibits that were already docketed at the start of this case on 4/18/2017 which included a copy of the contract between the parties and corporate registrations, agents and ownership of the companies and city citations which showed the established relationships between the defendants and cause of action to plaintiffs. (Exhibits attached)

iv. Plaintiffs has met the "sufficiency test" with "particularity" in their complaint which will allow the defendants to prepare a defense if any.

v. This impossibility to raise a defense is also false as in the defendants' initial answer they already denied all points of our complaint and raised an affirmative defense. Simply put, this case should move forward to get to the truth of these allegations presented and let the evidence speak for themselves.

It is very premature of the defendants to request to dismiss a case with prejudice and the facts and cause of action of this complaint has firm merits.

A.

The defendants through these paragraphs are claiming the impossibility to defend against the plaintiffs' claim, if this is so it is not due to the insufficiency of the complaint but a strategic ploy to run away from the truth of the complaint for which there are no excuses and at that point no defense.

   i.   Plaintiffs have put forward a plausible claim for relief to overcome a motion to dismiss by the defendants as per FL. Civ. P. 12 (b) (6).

   ii.  The merits of the plaintiffs' claim are sound and the primary objective of law to obtain a decision can be made from this claim.

   iii. If the pleading is found weak on the part of the plaintiffs none the less the merits of this case outweighs the technicality of the pleading. *Rennie & Laughlin, Inc. v. Chrysler Corp., 242 F.2d 208, 213 (9th Cir. 1957) (citing DeLoach v. Crowley's, Inc., 128 F.2d 378, 380 (5th Cir. 1942)).*

   iv.  The defendants in this case filed an answer & affirmative defense on May 8, 2017 so how is it that now this case is impossible to defend?

B.

The defendants claim that Count I (Breach of Contract) should be dismissed for failure to State a cause of Action, plaintiffs in objection states the following;

i.      Upon meeting with Defendants counsel at the last hearing whereby we agreed for resubmitting the FAC counsel was asked if I needed to reattach the other exhibits previously used when initially filing this case he said "no", and I quote "you only need to resubmit this document with all pages." He also stated that this is just an extension of my original claim so refiling all that paperwork was not necessary. We believed him.

ii.     It is now becoming more apparent that the defendants counsel acted in bad faith when he stated such knowing that plaintiff would rely and act upon his advice hence now filing this motion to dismiss.

iii.    Exhibits that were already docketed at the start of this case on 4/18/2017 which included a copy of the contract between the parties and corporate registrations, agents and ownership of the companies and city citations which showed the established relationships between the defendants and damages to plaintiffs holding them accountable. (Exhibits attached)

iv.     A court must accept the facts alleged in a complaint and exhibits attached as true. *Visor v. Buhl*, 760 So. 2d 274, 275 (Fla. 4th DCA 2000); *Abele v. Sawyer*, 750 So. 2d 70 (Fla. 4th DCA 1999). The plaintiffs listed 28 items of facts in the complaint with 4 counts of which relief should be granted.

v.      The defendants cannot prove nor guarantee to the court that the plaintiffs cannot proves no set of facts in support of our claim which would entitle us to relief. *Conley v. Gibson, 355 U.S. 41 (1957)* hence a dismissal should not be ordered.

vi.     The plaintiffs first amended complaint should be granted when the plaintiff has not abused the litigation process and a minor change to the complaint would suffice to state a cause of action. Samuels, 782 So 2d at 501. "[T]he failure to attach necessary documents is a remediable offense." Wells Fargo Bank, N.A. v. Bohatka, 112 So. 3d 596, 601 (Fla. 1st DCA 2013) (citing Wells Fargo Bank, N.A. v. Reeves, 92 So. 3d 249, 253 (Fla. 1st DCA 2012)). Granting but for the steering of defense counsel not to attached the exhibits again this motion would not have been presented.

4

C.

The defendants claim that Count II (Negligence) should be dismissed for failure to State a Cause of Action, plaintiffs in objection states the following;

i. As stated above upon meeting with Defendants counsel at the last hearing whereby we agreed for resubmitting the FAC counsel was asked if I needed to reattach the other exhibits previously used when initially filing this case he said "no", and I quote "you only need to resubmit this document with all pages." He also stated that this is just an extension of my original claim so refiling all that paperwork was not necessary. We believed him."

ii. It is now becoming more apparent that the defendants counsel acted in bad faith when he stated such knowing that plaintiff would rely and act upon his advice.

iii. Exhibits that were already docketed at the start of this case on 4/18/2017 which included a copy of the contract between the parties and corporate registrations, agents and ownership of the companies and city citations which showed the established relationships between the defendants and damages to plaintiffs holding them accountable. (Exhibits attached)

iv. A court must accept the facts alleged in a complaint and exhibits attached as true. *Visor v. Buhl*, 760 So. 2d 274, 275 (Fla. 4th DCA 2000); *Abele v. Sawyer*, 750 So. 2d 70 (Fla. 4th DCA 1999). The plaintiffs listed 28 items complaint with 4 counts of which relief should be granted.

v. The defendants cannot prove nor guarantee to the court that the plaintiffs cannot proves no set of facts in support of our claim which would entitle us to relief. *Conley v. Gibson, 355 U.S. 41 (1957)* hence a dismissal should not be ordered.

vi. The plaintiffs first amended complaint should be granted when the plaintiff has not abused the litigation process and a minor change to the complaint would suffice to state a cause of action. Samuels, 782 So 2d at 501. "[T]he failure to attach necessary documents is a remediable offense." Wells Fargo Bank, N.A. v. Bohatka, 112 So. 3d 596, 601 (Fla. 1st DCA 2013) (citing Wells Fargo Bank, N.A. v. Reeves, 92 So. 3d 249, 253 (Fla. 1st DCA 2012)). Granting but for the steering of defense counsel not to attached the exhibits again this motion would not have been presented.

5

vii.   The plaintiffs didn't fail to sufficiently allege which defendant(s) to the claim. The defendants were collectively accused of all counts of breach and negligence against the plaintiffs. This was done due to the relationship shared between all the defendants and their obligations to the plaintiffs. It was also written this way as to not seem repetitive.

viii.   The plaintiffs did set out the elements of negligence as stated in the onset of the claim (1) true facts of their contractual relationship showing a duty on defendant's part to protect plaintiffs from the injury of which he complains; (2) defendant's failure to perform that duty as they are experts in their field of property management with over 200 property portfolio in our County alone; (3) proximate causation with us living in the home in deplorable conditions; and (4) damages due to plaintiff for our experience, costs and suffering for living in the defendants property.

D.

The defendants claim that Count III (Gross Negligence) should be dismissed for failure to State a Cause of Action, plaintiffs in objection states the following;

i.   As stated above upon meeting with Defendants counsel at the last hearing whereby we agreed for resubmitting the FAC counsel was asked if I needed to reattach the other exhibits previously used when initially filing this case he said "no", and I quote "you only need to resubmit this document with all pages." He also stated that this is just an extension of my original claim so refiling all that paperwork was not necessary. We believed him."

ii.   It is now becoming more apparent that the defendants counsel acted in bad faith when he stated such knowing that plaintiff would rely and act upon his advice.

iii.   Exhibits that were already docketed at the start of this case on 4/18/2017 which included a copy of the contract between the parties and corporate registrations, agents and ownership of the companies and city citations which showed the established relationships between the defendants and damages to plaintiffs holding them accountable. (Exhibits attached)

iv.   A court must accept the facts alleged in a complaint and exhibits attached as true. *Visor v. Buhl*, 760 So. 2d 274, 275 (Fla. 4th DCA 2000); *Abele v. Sawyer*, 750 So. 2d 70 (Fla. 4th DCA 1999). The plaintiffs listed 28 items complaint with 4 counts of which relief should be granted.

6

v.      The defendants cannot prove nor guarantee to the court that the plaintiffs cannot proves no set of facts in support of our claim which would entitle us to relief. *Conley v. Gibson, 355 U.S. 41 (1957)* hence a dismissal should not be ordered.

vi.     The plaintiffs first amended complaint should be granted when the plaintiff has not abused the litigation process and a minor change to the complaint would suffice to state a cause of action. Samuels, 782 So 2d at 501. "[T]he failure to attach necessary documents is a remediable offense." Wells Fargo Bank, N.A. v. Bohatka, 112 So. 3d 596, 601 (Fla. 1st DCA 2013) (citing Wells Fargo Bank, N.A. v. Reeves, 92 So. 3d 249, 253 (Fla. 1st DCA 2012)). Granting but for the steering of defense counsel not to attached the exhibits again this motion would not have been presented.

vii.    The plaintiffs didn't fail to sufficiently allege which defendant(s) to the claim. The defendants were collectively accused of all counts of breach and negligence against the plaintiffs. This was done due to the relationship shared between all the defendants and their obligations to the plaintiffs. It was also written this way as to not seem repetitive.

viii.   The plaintiffs did set out the elements of negligence as stated in the onset of the claim (1) true facts of their contractual relationship showing a duty on defendant's part to protect plaintiffs from the injury of which he complains; (2) defendant's failure to perform that duty as they are experts in their field of property management with over 200 property portfolio in our County alone; (3) proximate causation with us living in the home in deplorable conditions; and (4) damages due to plaintiff for our experience, costs and suffering for living in the defendants property.

ix.     The plaintiffs' count for punitive damages was made off of the seminal standard for the character of negligence in seeking an award of punitive damages *Carraway v. Revell, 116 So. 2d 16, 20 n.12 (Fla. 1959)* (cit. omit.)

x.      The defendants character of negligence was of a gross and flagrant character, evincing reckless disregard of human life of the plaintiffs and our family, or of the safety of us being exposed to the dangerous effects of the home and infestations, as there was a entire want of care which arose from the conscious indifference to consequences, which shows wantonness and/or recklessness which showed

7

indifference to our rights of which is equivalent to an intentional violation also notable by the City of Pompano Beach .

xi.     The defendants lack of actions/duty to the plaintiffs falls in line to the courts with statutory definitions for intentional misconduct and gross negligence, "these definitions appear consistent with the standard for punitive damage awards adopted by the courts." *6 Fla. Prac., Personal Injury & Wrongful Death Actions § 15.4 (2008 ed.); See Tiger Point Golf and Country Club v. Hipple, --- So. 2d ---, 2007 WL 4438923 *1 (Fla. 1st DCA 2007); Estate of Williams v. Tandem Health Care of FL, Inc., 899 So. 2d 369 (Fla. 1st DCA 2005).*

xii.    Plaintiffs acknowledges that we would have to provide the court with a reasonable evidentiary basis for punitive damages before the court may allow a claim for punitive damages to be included in a plaintiff's complaint. *Kraft General Foods, Inc. v. Rosenblum. 635 So. 2d 106 (Fla. 4th DCA 1994).* Which is why in the initial complaint evidence of severe violations by the defendants to the plaintiffs was submitted to pro offer this future request.  All be it as stated earlier this was said not to be necessary by defendants' counsel at the last hearing for

xiii.   In seeking to amend this complaint, the plaintiff sought to prove two separate claims to punitive damage against a corporation as per Sec. 768.72 (3) Fla. Stat.

    a.   In the case of an employer, principal, corporation, or other legal entity, punitive damages may be imposed for the conduct of an employee or agent only if the conduct of the employee or agent meets the criteria specified in subsection (2) and:

    b.   The employer, principal, corporation, or other legal entity actively and knowingly participated in such conduct; the officers, directors, or managers of the employer, principal, corporation, or other legal entity knowingly condoned, ratified, or consented to such conduct; or the employer, principal, corporation, or other legal entity engaged in conduct that constituted gross negligence and that contributed to the loss, damages, or injury suffered by the claimant.

8

Plaintiff is confident that once this case moves forward for trial through discovery the gross negligent character of the defendants would be proved worthy of punishment for them for egregiously injurious behavior operating as experts in the business of property management.

E.

The defendants claim that Count IV (Civil Theft) should be dismissed for failure to State a Cause of Action, plaintiffs in objection states the following:

i. As stated above upon meeting with Defendants counsel at the last hearing whereby we agreed for resubmitting the FAC counsel was asked if I needed to reattach the other exhibits previously used when initially filing this case he said "no", and I quote "you only need to resubmit this document with all pages." He also stated that this is just an extension of my original claim so refiling all that paperwork was not necessary. We believed him."

ii. It is now becoming more apparent that the defendants counsel acted in bad faith when he stated such knowing that plaintiff would rely and act upon his advice.

iii. Exhibits that were already docketed at the start of this case on 4/18/2017 which included a copy of the contract between the parties and corporate registrations, agents and ownership of the companies and city citations which showed the established relationships between the defendants and damages to plaintiffs holding them accountable. (Exhibits attached)

iv. A court must accept the facts alleged in a complaint and exhibits attached as true. *Visor v. Buhl*, 760 So. 2d 274, 275 (Fla. 4th DCA 2000); *Abele v. Sawyer*, 750 So. 2d 70 (Fla. 4th DCA 1999). The plaintiffs listed 28 items complaint with 4 counts of which relief should be granted.

v. The defendants cannot prove nor guarantee to the court that the plaintiffs cannot proves no set of facts in support of our claim which would entitle us to relief. *Conley v. Gibson, 355 U.S. 41 (1957)* hence a dismissal should not be ordered.

vi. The plaintiffs first amended complaint should be granted when the plaintiff has not abused the litigation process and a minor change to the complaint would suffice to state a cause of action. Samuels, 782 So 2d at 501. "[T]he failure to attach necessary documents is a remediable offense." Wells Fargo Bank, N.A. v. Bohatka, 112 So. 3d

9

596, 601 (Fla. 1st DCA 2013) (citing Wells Fargo Bank, N.A. v. Reeves, 92 So. 3d 249, 253 (Fla. 1st DCA 2012)). Granting but for the steering of defense counsel not to attached the exhibits again this motion would not have been presented.

vii.    The plaintiffs didn't fail to sufficiently allege which defendant(s) to the claim. The defendants were collectively accused of all counts of breach and negligence against the plaintiffs. This was done due to the relationship shared between all the defendants and their obligations to the plaintiffs. It was also written this way as to not seem repetitive.

viii.    Fla. Statue 772.11 is clear as to the return of security deposit to plaintiffs which the defendants failed to claim and pay despite demands of the plaintiffs.

ix.    The plaintiff has the means and every intention to prove through discovery that the defendants conduct was blatantly deceptive in depriving the plaintiffs of the funds rendering theft. This depth of information merely cannot be stated in the pleading.

x.    The monies owed is not a matter of simple debt for if, so it would not be subject to such harsh multiples set forth by Fla. Statutes.

III.    Conclusion

The Defendants clearly has set forth a Hail Mary Motion to Dismiss with Prejudice which is based on primarily questionable action on the defendant's counsel at the onset to undermine the plaintiffs claim and the court. The defendants keep continually stating that they don't object to the plaintiffs' filings but their action says otherwise;

1.    At previous hearing the defendants counsel bid to plaintiffs to file an agreed motion on what he claim was a clerical error of the court which was his only reason for the objection to have the document resubmitted.

2.    If defendants felt that Mr. Jeffers appearance was of such importance, then why didn't they filed an objection to it? Furthermore, if he felt that Mrs. Jeffers was unjustly representing Mr. Jeffers, then why did counsel made an agreed order instead of taking all these issues to the court instead of communicating only to Mrs. Jeffers and not contacting Mr. Jeffers via phone for his approval? If procedure was not followed by then the Agreed order should be set aside and allow the FAC should be resubmitted.

10

3. Despite being pro se the Plaintiffs in good faith has made a firm effort in following the rules of procedure for this court whilst receiving contrary from the defendants' counsel.

4. As stated above upon meeting with Defendants counsel at the last hearing whereby we agreed for resubmitting the FAC, counsel was asked if I needed to reattach the other exhibits previously used when initially filing this case he said "no", and I quote "you only need to resubmit this document with all pages." He also stated that this is just an extension of my original claim so refiling all that paperwork was not necessary. We believed him."

5. It is now becoming more apparent that the defendants counsel acted in bad faith when he stated such knowing that plaintiff would rely and act upon his advice.

6. Exhibits that were already docketed at the start of this case on 4/18/2017 which included a copy of the contract between the parties and corporate registrations, agents and ownership of the companies and city citations which showed the established relationships between the defendants and damages to plaintiffs holding them accountable. (Exhibits attached) They do not merely breathe new life into the case but the FAC is by the plaintiffs as an extension/amendment of the initial complaint as such believe counsel when he suggested just resubmit all pages.

7. Clearly if counsels' statements were not relied upon and the initial exhibits were attached the defendants would have no basis to rely on in requesting a dismissal.

8. A court must accept the facts alleged in a complaint and exhibits attached as true. *Visor v. Buhl*, 760 So. 2d 274, 275 (Fla. 4th DCA 2000); *Abele v. Sawyer*, 750 So. 2d 70 (Fla. 4th DCA 1999). The plaintiffs listed 28 items complaint with 4 counts of which relief should be granted.

9. The defendants cannot prove nor guarantee to the court that the plaintiffs cannot proves no set of facts in support of our claim which would entitle us to relief. *Conley v. Gibson, 355 U.S. 41 (1957)* hence a dismissal should not be ordered.

10. The plaintiffs first amended complaint should be granted when the plaintiff has not abused the litigation process and a minor change to the complaint would suffice to state a cause of action. Samuels, 782 So 2d at 501. "[T]he failure to attach necessary documents is a remediable offense." Wells Fargo Bank, N.A. v. Bohatka, 112 So.

11

3d 596, 601 (Fla. 1st DCA 2013) (citing Wells Fargo Bank, N.A. v. Reeves, 92 So. 3d 249, 253 (Fla. 1st DCA 2012)). Granting but for the steering of defense counsel not to attached the exhibits again this motion would not have been presented.

11. The plaintiffs didn't fail to sufficiently allege which defendant(s) to the claim. The defendants were collectively accused of all counts of breach and negligence against the plaintiffs. This was done due to the relationship shared between all the defendants and their obligations to the plaintiffs. It was also written this way as to not seem repetitive.

12. Defendants counsel appearing insecure, impatient need to allow the court to take the lead in trial for the truth to come out and allow us due process Rule 57.105 of the Florida Civil Procedure and Rule 11 Federal Rules of Procedure.

Finally, as it is now made clearer that this is a Meritorious case and as the FAC can be modified simply to attached the initial evidence and more if necessary, and the fact there is no set limit for allowed amendments, the need to Dismiss the FAC with prejudice is not warranted due to the nature of misleading information given by the defense but rather the court can; Moot this motion to dismiss by the defendant and allow parties to move forward with the case and or allow the plaintiffs a Second opportunity to amend the claim so as to satisfy any minor technical omissions.

Date: 02/15/2018

/s/ Maurisia Jeffers

/s/ Rudyard Jeffers

Mrs. Maurisia Jeffers
Mr. Rudyard Jeffers
P O Box 5764
Fort Lauderdale, FL 33310
maurisiajfl@aol.com
T:954-873-5413

12

## Certificate of Service

We hereby certify that on this day 15th day of February, 2018, the foregoing document was electronically filed with the Clerk of Court using the e-filing portal. We also certify that the foregoing document is being served this day on Rory Eric Jurman Esq. via fax at 9543778101.

Respectfully submitted,

*/s/ Maurisia Jeffers*

*/s/ Rudyard Jeffers*

Mrs. Maurisia Jeffers
Mr. Rudyard Jeffers
P O Box 5764
Fort Lauderdale, FL 33310
maurisiajfl@aol.com
T:954-873-5413

13

Exhibits  A - E

DocuSign Envelope ID: 61CF6E58-0797-4A06-AE9A-CB8B3D27E959



## (1) RENTAL AGREEMENT

Date of Lease: 7/28/2016

Address of Premises: 2170 NE 1st Ave, Pompano Beach, FL 33060

Name of Owner: RHA 2 LLC

Agent: HavenBrook Homes, LLC

Name of Resident: Rudyard Jeffers,Maurisia Jeffers

Authorized Occupants: Rudyard Jeffers,Leah Jeffers,Junivia Jeffers

Housing Choice:

Utilities Provided: N/A

Term of Lease: 12 Months and 0 Days

Lease shall begin on: 9/6/2016

Lease shall terminate on: 9/5/2017, at 12 Noon.

Rent: $1,926.00 Per Month

Security Deposit: $2,625.00

Pet Fee: $0.00 *If your initial Rental Agreement indicates a Pet Fee has been paid, you are not required to pay an additional Pet Fee with this lease renewal

Re-Key Charge: $150.00

Pro-Rated Rent: $1,605.00

Document Number: 62B-FD6BA

**DISCLOSURE:** HavenBrook Homes, LLC, 3505 Koger Boulevard, Suite 400, Duluth, Georgia 30096, is authorized to manage the Premises and to act on behalf of Landlord with respect to this Lease, including, without limitation, for the purposes of serving of process and receiving and receipting for demands and notice. Management's corporate name and license number as required by the Florida Department of Business and Professional Regulation are ___HavenBrook Homes, LLC___ and ___CQ1044680.___

Page 1 of 38

62B-FD6BA

DocuSign Envelope ID: 81CF6E58-0797-4AD8-AE9A-CB8B3D27E959



## RENTAL AGREEMENT

Each person, or entity that signs this lease or any guarantor under a separate guarantor's agreement is jointly and severally liable for all Rent or other charges which come due. Management may look to any Resident or guarantor for payment of all or a part of any obligation due without first suing or attempting to collect from any other responsible party. Landlord rents to Resident, and Resident (jointly and severally) rents from Landlord the Premises, on and subject to the following conditions:

**1. DEFINITIONS:** "Landlord" means the owner of the Premises (also, sometimes, "Owner"). "Agent" means the property management company, as agent for the Landlord. "Management" means Landlord and Agent collectively. "Lease" or "Rental Agreement" means this lease agreement, as amended from time to time. "Resident" includes all tenants or other persons who signed or are obligated under the Lease and refers to the tenant. "Rent" means the base lease payment Resident shall pay to Landlord each month as further described in this Lease. "Additional Rent" means any late fees, returned check charges, or other fees as further set forth in this Lease. "Concessions" means any incentive or concession provided to the Resident as an inducement to enter into this Lease and to perform strictly according to the terms of the Lease throughout the entirety of the Term, including, but not limited to, free rent, reduced rent, or other incentives, or the reasonable value thereof. "His" shall also mean "her" when applicable. "Guests" and "Invitees" include, without limitation, the family of the Resident(s) and any individual(s), other than Resident, who are occupying, visiting, or attempting to visit the Premises for any purpose whatsoever. "Home" means the single-family structure located on the Premises. "Premises" means the Home located at <u>2170 NE 1st Ave, Pompano Beach, FL 33060</u> together with all fixtures, grounds, landscaping, improvements, and appurtenances. The full legal description of the Premises is the same as is recorded with the Clerk of the Superior Court of the county in which the Premises is located and is made a part of this Lease by reference.

**2. TERM:** The initial term of this Lease shall be for the term set forth on the first page of the Rental Agreement (the "Term"). Resident may not terminate this Lease prior to the end of the Term except in strict compliance with the provisions of this lease.

**3. POSSESSION:** If there is a delay in delivery of possession by Landlord, rent shall be abated on a daily basis until possession is granted, and Landlord shall not be liable for damages for delay in delivery of possession. The Resident acknowledges that he/she has inspected the Premises with a representative of the Management and accurately noted the condition of the Premises. Resident accepts the Premises in its current condition as suitable for occupancy by the Resident unless otherwise noted on the move-in inspection form.

**4. RENT:** Rent is payable monthly, in advance, on the first day of each month during the initial Term or any extended Term of this Lease, at the office of Management or such other place as Management may designate. No cash or third party checks will be accepted. No Management employee is authorized to accept cash under any circumstances, and the Resident may not rely on any statement made to him by a Management representative that cash will be accepted. Payment

62B-FD6BA

DocuSign Envelope ID: 61CF6E58-0797-4AD8-AE9A-CB8B3D27E959



should be made with one personal check, cashier's check, money order, credit card, debit card or electronic funds transfer and shall be payable to the order of Landlord, unless otherwise specified in written notice from Management. All other fees or charges due under this lease in addition to the Rent shall be known as "Additional Rent." In the event that this Lease commences on a date other than the FIRST day of the month, the Rent for the partial month shall be computed based upon a daily rate equal to 1/30th of the monthly Rent, and shall be due upon execution of the Lease.

**5. LATE PAYMENTS AND RETURNED CHECKS:** Time is of the essence of this Lease and, if Management elects to accept rent after the fifth (5th) day of the month, a late charge of 10% of the rent amount (the "Late Charge") shall be due at the time Rent is paid as Additional Rent. All late rents must be paid to Management in the form of a Bank Check or Money Order, as Resident's check will not be accepted. In the event Resident's check is not honored by the bank, Resident agrees to pay Management a handling charge of $30.00 or five percent (5%) of the face amount of the instrument, whichever is greater, plus an amount equal to that charged to Management by the bank as a result of the instrument not being honored and also, if due, the Late Charge. Resident agrees that the charges imposed by this paragraph are reasonable compensation for delay, administrative costs, and time in collecting past due rent, and are not penalties and that such costs are difficult to estimate accurately. Returned checks must be redeemed by Cashier's Check or Money Order. In the event more than one check is returned during the term of the Lease, Resident, upon written notice from Management, agrees to pay all future rents and charges in the form of Bank Check or Money Order. Late payment of Rent constitutes a default under the terms of this Lease; therefore, in addition to the other amounts due hereunder, any concession granted to the Resident becomes immediately due and re-payable as Additional Rent hereunder. Payments received shall be applied first to pay any unpaid Additional Rent, then to the monthly recurring Rent as stipulated in Paragraph 4

**6. SECURITY DEPOSIT AND FEES:** Resident agrees to deposit the Security Deposit with Management before taking possession of the Premises as security for Resident's fulfillment of the conditions of this Lease. Management has the right, in its sole discretion, to place the Security Deposit in an escrow account established only for the purpose of holding tenant security deposits, which may be an interest-bearing account, in which case tenant is entitled to 75% of the annualized average interest rate payable on such account or 5% per year simple interest, at Landlord's election, or to protect the deposit by a surety bond on file with the Clerk of Circuit Court and:

Resident's Security Deposit is held in an escrow account at Wells Fargo Bank, 12751 S. Cleveland Ave., Fort Myers, FL   33907.

Resident's Security Deposit will be refunded within fifteen (15) days after vacate date if:

(a) Lease Term has expired or Lease has been terminated by agreement of both parties, and Resident has vacated and surrendered possession of the Premises as of the effective date of such expiration or termination; and

62B-FD6BA

DocuSign Envelope ID: 61CF6E58-0797-4AD8-AE9A-CB6B3D27E959



(b) All monies due Management by Resident for Rent and Additional Rent have been paid through the effective date of termination; and

(c) Premises is not, in the sole discretion of Management, damaged and possession is surrendered in its original condition as of the effective date of termination or expiration, normal wear and tear accepted.

Security Deposit may be applied by Management to satisfy all or part of Resident's obligations, but such act shall not prevent Management from claiming damages in excess of the Security Deposit. Resident agrees not to apply the Security Deposit to any Rent payment and to pay the Re-Key Charge if all keys and garage door openers are not delivered to Management immediately upon Resident's move-out.

Other fees that may be due are not a Security Deposit, are not refundable, and do not reduce liability for damages to the Premises. In the event that Resident enters into a payment plan with Management with respect to the Security Deposit, Security Deposit Addendum, attached hereto and incorporated by reference into this Lease Agreement, will describe such payment plan details.

NOTICE:   YOUR LEASE REQUIRES PAYMENT OF CERTAIN DEPOSITS. THE LANDLORD MAY TRANSFER ADVANCE RENTS TO THE LANDLORD'S ACCOUNT AS THEY ARE DUE AND WITHOUT NOTICE. WHEN YOU MOVE OUT, YOU MUST GIVE THE LANDLORD YOUR NEW ADDRESS SO THAT THE LANDLORD CAN SEND YOUR NOTICES REGARDING YOUR DEPOSIT. THE LANDLORD MUST MAIL YOU NOTICE, WITHIN 30 DAYS AFTER YOU MOVE OUT, OF THE LANDLORD'S INTENT TO IMPOSE A CLAIM AGAINST THE DEPOSIT. IF YOU DO NOT REPLY TO THE LANDLORD STATING YOUR OBJECTION TO THE CLAIM WITHIN 15 DAYS AFTER RECEIPT OF THE LANDLORD'S NOTICE, THE LANDLORD WILL COLLECT THE CLAIM AND MUST MAIL YOU THE REMAINING DEPOSIT, IF ANY.

IF THE LANDLORD FAILS TO TIMELY MAIL YOU NOTICE, THE LANDLORD MUST RETURN THE DEPOSIT BUT MAY LATER FILE A LAWSUIT AGAINST YOU FOR DAMAGES. IF YOU FAIL TO TIMELY OBJECT TO A CLAIM, THE LANDLORD MAY COLLECT FROM THE DEPOSIT, BUT YOU MAY LATER FILE A LAWSUIT CLAIMING A REFUND.

YOU SHOULD ATTEMPT TO INFORMALLY RESOLVE ANY DISPUTE BEFORE FILING A LAWSUIT. GENERALLY, THE PARTY IN WHOSE FAVOR A JUDGMENT IS RENDERED WILL BE AWARDED COSTS AND ATTORNEY FEES PAYABLE BY THE LOSING PARTY.

THIS DISCLOSURE IS BASIC. PLEASE REFER TO PART II OF CHAPTER 83, FLORIDA STATUTES, TO DETERMINE YOUR LEGAL RIGHTS AND OBLIGATIONS.

DocuSign Envelope ID: 61CF6E38-0797-4AD8-AE9A-CB8B3D27E959



**7. EXTENDED TERMS:** Either party may terminate this Lease at the end of the initial Term by giving the other party at least sixty (60) days written notice prior to the end of the initial Term. If no such notice is given by either party, then the Term of this Lease will be automatically extended on a month-to-month basis (each such month being an "Extension Term") at a rent equal to the rent stipulated in the Lease renewal notice delivered by Management to the Resident, plus 20% thereof, until terminated by either party thereafter, which termination shall require fifteen (15) days notice prior to the end of any monthly period by either party. During such time as Resident remains on a month-to-month basis, Management and Resident shall remain bound by the terms of this Lease; provided, however, that Management may alter the terms and conditions of this Lease, including, without limitation, the amount of Rent due, upon sixty (60) days written notice to Resident.

**8. EARLY TERMINATION:** Resident may terminate this Lease at any time (an "Early Termination") by:

a. Giving Management at least sixty (60) days written notice (15 days during an Extension Term); plus

b. Paying all monies due through date of termination; plus

c. Paying an additional amount equal to one month's Rent as due under the Rental Agreement, as consideration for such right of termination; plus

d. Paying the amount of $2,071.00 as expenses for re-painting and cleaning the Premises if Resident hasn't resided at the Premises for at least one (1) year prior to termination; plus.

e. Repaying an amount equal to any Concessions that were given.

The foregoing shall not relieve Resident of the Resident's responsibilities and obligations regarding any damage to Premises. Resident must turn in all keys and garage door openers and receive a receipt from Management; it is the Resident's responsibility to produce this receipt as proof the keys and garage door openers were returned. If locks have been changed or if keys or garage door openers are not returned, Resident will owe and pay the Re-Key Charge. Keys and garage door openers must be physically handed to a representative of Management and may not be left in a night rent drop box. **In an Early Termination, Resident is not entitled to a refund of any termination fees or Security Deposit, even if the Premises is re-let prior to the end of the notice period.**

Management employees are not authorized to waive any notice and/or termination fees, and the Resident has no right to and may not rely on any Management employee's statement that Resident will not have to pay such fees or to comply with this provision in order to terminate the Lease early.

Notwithstanding the foregoing, if Resident is on active duty with the United States military and Resident or Resident's immediate family receives permanent change of station orders or

Page 5 of 38

62B-FD6BA

DocuSign Envelope ID: 61CF6E58-0797-4AD8-AE9A-CB8B3D27E959



temporary duty orders for a period in excess of three months, Resident's early termination rights under this Lease shall be controlled by the Soldiers' and Sailors' Civil Relief Act of 1940 as amended in 50 U.S.C.A. § 50-590 and/or Florida Statutes Chapter 83, Part II, Section 682.

**9. NO ASSIGNMENT OR SUBLETTING:** Resident may not sub-let the Premises or assign this Lease without the prior written consent of Management, which consent may be granted or withheld in the sole discretion of Management.

**10. UTILITIES:** Resident agrees to pay promptly all utilities required under this Lease, including but not limited to electricity, gas, water, hot water, sanitation and sewer (collectively referred to "Required Utilities"), and any optional utilities desired by Resident including but not limited to telephone, internet, satellite or cable television (collectively referred to "Optional Utilities"). All utility accounts shall be established by Resident directly with the applicable utility company. Required Utilities in the Premises must remain active through the full term of the lease. In the event Resident fails to timely establish utility/services (or utilities/services are transferred back to Management during the term), Management may charge Resident for any utility/service billed to Management with respect to the property and may charge a reasonable administration fee (for each month or part thereof) for billing of the utility/service in the amount of $25 per invoice.

Landlord is responsible for the payment of trash collection only when included in municipal taxes. In the event that trash collection is billed separately from municipal taxes, payment for trash collection is Tenant's responsibility, and Tenant is required to contract for professional trash collection and may not take individual responsibility for trash removal.

Resident acknowledges that continued occupancy of the Premises when any Required Utility services have been terminated is hazardous. Resident agrees not to terminate, cut off, interrupt, or discontinue any Required Utilities to the Premises. Breach of this provision shall constitute a default under this Lease, giving Management the right to terminate Resident's right of possession and/or this Lease immediately and to obtain possession of the Premises. Any charges billed to Management for any utilities due to Resident's breach of this provision shall be due as Additional Rent upon demand. Management does not warrant that the service of the utilities will be free from interruption; Resident acknowledges that any one or more of such services may be suspended by reason of accident or of repairs, alterations or improvements, or by operation of law, or for causes beyond the reasonable control of Management. Any such interruption or discontinuance of service shall not be deemed an eviction or disturbance of Resident's use or possession of the Premises, or any part thereof, or render Management liable to Resident for any damages, or entitle the Resident to any reduction or abatement of Rent, or relieve Resident from performance of the Resident's obligations under this Lease.

**11. DAMAGE OR DESTRUCTION OF THE PREMISES**: If the Premises is damaged by fire or casualty or malfunction of equipment or utilities, Resident shall immediately notify Management. Management, at its option, may (a) terminate this Lease upon written notice to Resident without liability for termination, or (b) cause the damage to be repaired, in which event

DocuSign Envelope ID: 61CF6E68-0707-4AD8-AE9A-C88B3D27E959



the Rent shall be abated to the extent and only for such time and to the extent that the Premises remains untenantable. If Resident or Resident's occupants, or Guests or Invitees, were responsible for the fire or casualty or malfunction of equipment or utilities and the Premises is untenantable, then Resident and all others must vacate the Premises and will still remain liable for the rent and damages.

**12. CONDEMNATION:** If the whole of the Premises, or any portion thereof which renders the dwelling uninhabitable, is condemned by any legally constituted authority, then this Lease shall terminate as of the date of such condemnation and the rent shall be accounted for as between Management and Resident as of that date. All damages for any condemnation of all or any part of the Premises including, without limitation, all damages as compensation for diminution in value of the leasehold, reversion and fee of the Premises, shall be the sole property of the Management without any deduction therefrom for any present or future estate of Resident, and Resident hereby assigns to Management all its right, title and interest to any such award; provided, Resident shall have the right to claim and recover from the condemning authority, but not from Management, such compensation as may be separately awarded or recoverable by Resident by reason of the condemnation and for or on account of any cost or loss which Resident might occur in removing Resident's personal property, provided that the effect of such award is not to reduce the award otherwise payable to Management.

**13. HOLD OVER/TRESPASS:** Resident shall remove all of Resident's property and deliver possession of the Premises in a clean condition and good order and repair to Management upon termination or expiration of this Lease. In the event the Resident fails to vacate the Premises after termination, non-renewal or expiration of this Lease (including, without limitation, the automatic renewal provisions of Section 7 above), then Resident shall pay Management an amount equal to two (2) times the existing Rent, prorated for each day held over and beyond the termination or expiration of this Lease, in addition to the other damages provided for under this Lease. Management's rights continue and survive independently beyond expiration or termination of this lease or Resident's occupancy of the Premises.

Keys must be physically handed to a representative of Management and may not be left in the Premises. Rent and all related fees and charges shall be due until such time as Management receives the keys to the Premises. Resident is responsible for receiving a receipt from Management. Such receipt shall be the sole proof of keys being returned by Resident. After termination or expiration of this Lease, Resident shall be deemed to be a tenant at sufferance. After termination, Resident shall not return to any area of the Premises. Resident shall not permit entry of any person as his Guest or Invitee if notified that this Guest's or Invitee's presence on the Premises is subject to criminal trespass under F.S.§ 810.08-810.09 or that the Guest and/or Invitee is in violation of this Lease. Management may terminate the Lease and possession of the Premises if any Resident allows an unauthorized person or trespasser access to the Premises in violation of this provision or paragraph. Management's rights under this paragraph shall continue and survive independently beyond expiration or termination of the Lease or Resident's occupancy of the Premises.

628-FD6BA

DocuSign Envelope ID: 61CF6E58-0797-4AD8-AE9A-CB8B3D27E959



**14. RIGHT TO ACCESS:** Management may enter the Premises (but with no obligation to do so) during all reasonable hours, at any time, without notice. In non-emergency situations, including, without limitation, for the purpose of inspection, maintenance, repair, alterations as may be deemed necessary by Management for the safety and preservation of the Premises or for exhibiting the Premises for sale, lease, inspection, or mortgage financing, Management may enter the Premises upon 12 hours' notice to the Resident, except where prohibited by law. Management may enter the Premises at any time without notice to Resident to protect life and prevent damage to the Premises in the event of an emergency or perceived emergency by Management. For purposes of this paragraph, Resident agrees to notify Management of any anticipated extended absence in excess of seven (7) days, and, during said absence, Management is specifically authorized, but is not obligated, to enter the Premises at times reasonably necessary. Resident authorizes Management to show the Premises to prospective residents once Resident has given or received a notice of non-renewal or termination.

**15. USE:** Premises shall be occupied only by persons named in Resident's application to rent or listed as Authorized Occupants in this Lease. The Premises shall be used for Residential purposes only and so as to comply with all federal, state, county, and municipal laws and ordinances and subject to any and all covenants and restrictions of record (as they may be hereafter amended and/or modified from time to time) and any and all rules and regulations imposed by the applicable homeowner's association. Residents and Resident's Guests and Invitees shall not engage in disorderly or criminal activity, or any act intended to facilitate criminal activity, including drug-related criminal activity (including acts defined by Section 102 of the Controlled Substance Act (2) U.S.C. 802), or in acts of violence or threats of violence, including the discharge of firearms, on or near the Premises and Property. Resident agrees that Management shall be entitled to deem any arrest, indictment, charge or conviction for criminal activity as conclusive proof of his or his Guests or Invitees' engagement in such criminal activity. Management may promptly report any suspicious activities to, and cooperate fully with, the appropriate authorities without being deemed to invade the Resident's privacy. Resident shall not commit waste to the Premises and shall not commit any act nor fail to take any action that would allow or cause endangerment to life, health, safety, welfare, property, or any other person on the Premises. Resident shall maintain the Premises in a clean, orderly, and sanitary condition and shall not allow any damages to the Premises, normal wear and tear excepted, or infestation of vermin, insects, bed bugs, rodents, or other pests. Resident shall not bring abandoned or discarded furniture, clothing, bedding, or other personal property onto the Premises as it could introduce an infestation of pests and bed bugs. Resident shall not place in any trash receptacle, nor keep or dispose of any material, which is environmentally hazardous. Noxious or offensive smells are not permitted, and Resident shall be liable for damages exceeding normal wear and tear for the repair or replacement of any carpet, flooring, ceiling, or walls that are permeated with noxious or offensive odors, including, but not limited to, cigarette and tobacco smoke or animal odors. Residents shall park only on concrete or hardcore surfaces. There shall be no parking or storage of vehicles, trailers, RVs, or suchlike, on grass at any time. Resident shall not, on or in Premises, improperly dispose of motor oil, paints, paint thinners, gasoline, kerosene or any other product which can cause environmental contamination on or in

62B-FD68A

DocuSign Envelope ID: 61CF6E5B-0797-4AD8-AE9A-CB8B3D27E959



Premises. DO NOT PUT PAINT OR CHEMICALS DOWN THE DRAINS OR TOILETS except for ordinary and necessary cleaning chemicals. Motor vehicles with expired or missing license plates, non-operative vehicles, boats, trailers, RVs and campers are not permitted on Premises without written permission of the Management. Any such vehicle may be removed by Management at the expense of Resident for storage or for public or private sale, at Management's option, and Resident shall have no right or recourse against Management in connection therewith. Resident, Guests, and Invitees shall act in a courteous and reasonable manner towards Management. Resident is prohibited from committing business libel or slander or making untruthful, unfair, or misleading statements to others about Management, its employees, agents, or the Premises. Any form of verbally or physically abusive, intimidating, or aggressive behavior directed at Management or any other person is prohibited. Resident, Guests, and Invitees shall not interfere with the daily business operations or job duties of Management or its employees. When notified by Management, Resident shall be prohibited from contacting any Management or employee and must conduct all further communications in writing. Resident is liable for the conduct of his Guests and Invitees. VIOLATION OF THE ABOVE PROVISIONS SHALL BE A MATERIAL BREACH OF THIS LEASE AND SHALL CONSTITUTE CAUSE FOR IMMEDIATE TERMINATION OF THIS LEASE.

**16. PETS:** No animals of any kind, with the exception of bona fide service animals, shall be permitted on the Premises without the prior written consent of Management and the execution and delivery by Resident of a Pet Addendum to this Lease and compliance with the terms thereof. Management may enter the Premises at any time to remove any unauthorized animals, or animals believed to be neglected, distressed or endangered. Resident is liable for all costs of retrieving, caring for, and boarding of any animals removed by Management or abandoned by Resident and Resident relieves Management from liability of any kind when Management causes the removal of any animal from the Premises.

**17. DEFAULT BY RESIDENT:** If Resident fails to pay Rent or other charges as and when due hereunder, or if Resident abandons the Premises, or if Resident fails to perform any of the Resident's obligations hereunder, or if any facts contained in Resident's rental application are untrue or misleading in any material respect, or if Resident fails to pay or continue utility service as required under this Lease, or if Resident allows unauthorized persons access to the Premises in violation of this Lease, or if Resident or Guests or Invitees cause damage or cleaning in excess of normal wear and tear, or Resident or his Guests violate the Rental Agreement and any addenda, then, upon the happening of any said events, Resident shall be in default hereunder, and, Management at its sole option, may terminate this Lease and/or Resident's right of possession by written notice to Resident following seven (7) days' written notice and opportunity to cure. Resident shall surrender possession of the Premises to Management upon the effective date of such termination and Resident shall be liable to Management for, and shall indemnify Management against, all damages as a result of such breach of the Lease by Resident, available at law or in equity, including rent loss and other expenses (for, without limitation, reletting, refurbishing, cleaning or otherwise making the Premises suitable for reletting) suffered or incurred by Management as a result of Resident's default and/or the termination of this Lease. In

62B-FD6BA

DocuSign Envelope ID: 61CF6E58-0797-4AD8-AE9A-CB8B3D27E959



the event Resident fails to pay Rent or other charges when due, or in the event the Resident is otherwise in default as provided in this Lease, Resident agrees to pay all costs of collection including without limitation, any collection agency fees, and reasonable attorney's fees and other costs of Management, together with an additional administrative fee of $150.00 as Additional Rent, plus other amounts that Landlord is entitled to charge Resident under this Lease. In any civil action or dispossessory for breach of this Lease, the prevailing party will be entitled to reasonable attorney's fees actually incurred and all expenses of litigation, including, but not limited to, court costs and administrative filing fees for evictions plus all costs of collection. All sums due which are in default shall bear interest at the lessor of 1.5% per month or the greatest amount permissible by law. No termination of this Lease prior to the normal ending thereof shall affect or abridge Management's right to collect Rent and other charges for the period prior to such termination or as otherwise provided in this Lease.

## 18. PROPERTY LOSS AND INSURANCE:

1.  Resident shall be responsible to insure Resident's personal property against loss or damage. Management shall at no time and under no circumstances be responsible for any loss of or damage to Resident's property or for any injury to Resident's Guests or Invitees.

2.  Resident is required to maintain renter's insurance, to name Management as an additional insured, and to provide Management with a certificate of insurance at Management's request. Resident hereby authorizes Management, upon inquiry, to receive all information regarding Resident's insurance coverage from Resident's insurer or insurance agent. If at any time Resident's renter's insurance lapses or is canceled during Resident's occupancy, or if Resident, upon request by Management fails to provide a current certificate of insurance as set forth herein. Without waiving any other remedy available to Landlord herein, Landlord may, but shall not be obliged to, purchase Renter's insurance in Resident's name and Resident shall reimburse Management for the cost thereof, plus a ten percent (10%) administrative fee.

3.  Resident shall obtain and keep in force during the term of this Lease a policy of general liability insurance naming Landlord and Management as additional insurance. Such insurance shall be in an amount of $300,000 for injury to or death of one person in any one accident or occurrence and in an amount of $500,000 for injury to or death of more than one person in any one accident or occurrence. Such insurance shall also provide coverage for property damage of at least $50,000. The limits of said insurance shall not, however, limit the liability of Resident hereunder. Said insurance shall have an Additional Insured-Lessor endorsement attached thereto. If Resident fails to procure and maintain said insurance Landlord may, but shall not be required to, procure and maintain the same, but at the expense of Resident. Said insurance policy shall be underwritten by companied rated A or better in "Best's Insurance Guide". The Lessee shall

Page 10 of 38

62B-FD6BA

DocuSign Envelope ID: 61CF6E50-0797-4AD8-AE9A-CBBB3D27E939



deliver prior to possession to the Lessor copies of policies of such insurance or certificates evidencing the existence and amounts of such insurance with loss payable clauses as provided herein. No such policy shall be cancellable or subject to reduction of coverage or other modification except after ten (10) days' prior written notice to Management. Resident shall, within ten (10) days prior to the expiration of such policies, furnish Management with renewals or "binders" thereof, or Lessor may order such insurance and charge the cost thereof to Resident, which amount shall be payable by Lessee upon demand. Resident shall not do or permit to be done anything which shall invalidate the insurance policy. Resident shall forthwith, upon demand, reimburse Management for any additional premiums attributable to any act or omission or operation of Resident causing such increase in the cost of insurance.

4.      Resident acknowledges that it is necessary for Resident to provide appropriate climate control, keep the Premises clean, and take other measures to retard and prevent mold and mildew from occurring and/or accumulating in the Premises. Resident agrees to clean and dust the Premises on a regular basis and to remove visible moisture accumulation on windows, walls and other surfaces as soon as reasonably possible. Resident agrees not to block or cover any of the heating, ventilation or air-conditioning ducts in the Home. No waterbeds or space heaters are permitted on the Premises. Resident agrees to immediately report to Management: (i) any evidence of a water leak or excessive moisture in the Premises; (ii) any evidence of mold or mildew-like growth that cannot be removed by simply applying a common household cleaner and wiping the area; (iii) any failure or malfunction in the heating, ventilation, air conditioning systems or laundry systems in the Premises; and (iv) any inoperable doors or windows. Resident further agrees that (a) Resident shall be responsible for damage to the Premises and Resident's property as well as injury to Resident and permitted occupants resulting from Resident's failure to comply with the Terms of this Paragraph with the Community Policies and (b) Resident's compliance with the Terms of this Paragraph or with the Community Policies shall not absolve Resident of Resident's obligations to maintain the Premises in accordance herewith this Paragraph nor give Resident cause for constructive eviction, abatement or termination.

**19. FIRE EXTINGUISHERS AND SMOKE ALARMS:** It is the responsibility of the Resident to periodically check extinguisher and smoke alarm(s) furnished to Resident in the Premises, if any, and to advise Management of any malfunctions and whether such equipment needs to be recharged or replaced. Any such equipment is to remain in and as a part of the Premises. In the event either such fire extinguisher or smoke alarm is removed from the Premises, a charge of $50.00 will be assessed to the Resident for each piece of such equipment removed from the Premises, and Resident shall be liable for and shall indemnify and hold harmless Management from all damages and losses as a result thereof. Resident further agrees

DocuSign Envelope ID: 61CF6E5B-0797-4AD8-AE9A-CB883D27E959



that Resident shall be responsible for (and shall indemnify and hold Management harmless from) damage to the Premises and Resident's property, as well as injury to Resident, permitted Occupants, and Guests and Invitees, resulting from Resident's failure to comply with the terms of this Paragraph or with the Community Policies.

**20. LIMITATIONS ON LANDLORD'S LIABILITY:** In case Landlord or any successor to Landlord's interest in the Premises shall convey or otherwise dispose of the entire Premises and turn over to the transferee any funds held by it hereunder in which Resident has an interest; all liabilities and obligations on the part of such Landlord or its successor as Landlord under this Lease accruing before such conveyance or disposal shall terminate upon such conveyance or disposal, and thereupon all such liabilities and obligations shall be binding upon any such new owner of Landlord's interest in the Premises. Notwithstanding anything to the contrary contained in this agreement (each and every provision of this agreement being hereby made specifically subject to the provisions of this Section 20), if Landlord or any successor in interest of Landlord shall be an individual, grantor trust, joint venture or corporation, tenancy-in-common, firm or partnership, general or limited, it is specifically understood and agreed that there shall be absolutely no personal liability on the part of such individual or entity, or on the part of the members of such corporation, firm, partnership, grantor trust or joint venture with respect to any of the provisions of this agreement, and each and every Resident hereunder shall look solely to the equity of Landlord or such successor in interest, in the Premises for the satisfaction of each and every remedy of Resident or by any such successor in interest of any of the provisions of this agreement to be performed by either or Landlord or Management, such exculpation of personal liability to be absolute and without any exception whatsoever.

**21. FAILURE OF MANAGEMENT TO ACT:** Failure of Management to insist upon strict compliance with the terms of this Lease, or uniform enforcement thereof throughout the Property, shall not constitute a waiver of any of Management's rights or Resident's obligations.

**22. REMEDIES CUMULATIVE:** All remedies under this Lease or available by law or in equity shall be cumulative. Breach of this Lease establishes a breach by Resident.

**23. RENEWAL TERM AND NOTICE OF NON-RENEWAL:** Management shall have the right to increase the Rent due at the end of the initial term or any subsequent renewal period. Management employees are not authorized to accept a verbal notice of non-renewal or termination from Resident and the Resident has no right to rely on a Management employee's statement that a verbal notice is acceptable. Resident's notice must be in writing, dated, signed, and specify the move-out date. Resident should keep a signed receipt of the non-renewal notice for his personal records in case of any dispute as to whether such notice was given and received. If Resident does not obtain a signed receipt of such notice from Management or if Management does not have a signed original non-renewal notice from Resident, then it will be presumed that Resident failed to give a proper written notice.

**24. FLOOD DISCLOSURE:** Management states that the Premises _ have X have not (one must be checked) been damaged in any manner by flooding in 3 of the last 5 years.

DocuSign Envelope ID: 61CF6E58-0797-4AD8-AE9A-CB8B3D27E959



**25. NOTICES:** Any notice required by this lease shall be in writing, dated, and signed and shall be deemed to be given immediately if delivered personally or refused, and upon receipt or three days after mailing if mailed by registered or certified mail, return receipt requested, or by standard overnight delivery: (a) if to Resident, to the Premises or the last known address of Resident; (b) if to Management, to the address listed for HavenBrook Homes on Page 1 of this Lease.

**26. REPAIRS:** Resident acknowledges that Resident has inspected the Premises and accepts the condition as is. Within a reasonable period of time after receipt of written notice from Resident, Management will repair major deficiencies which create unsafe or uninhabitable conditions. Major repairs shall include: electrical, plumbing, heating, cooling, built-in appliances or structural defects. Resident shall, throughout the initial term of this Rental Agreement, and any extension or renewal thereof, at its expense, shall otherwise maintain in good order and repair the Premises, including but not limited to periodic maintenance to equipment and fixtures, except those repairs expressly required to be made by Management hereunder. Resident further agrees to care for the ground around the dwelling, including cleaning of paving, the mowing of grass, care of shrubs and general landscaping. If Resident fails to fulfill any such obligations to care for the Premises pursuant hereto, Management may (but shall not be obligated to) perform or direct the performance of such services necessary to fulfill Resident's obligations to care for the Premises at the sole expense of Resident, the cost of such services, plus a Ten Percent (10%) management fee, shall be considered Additional Rent and be due and payable by Resident immediately. Management agrees to keep in good repair the roof, foundations and exterior walls of the dwelling (exclusive of all glass and exclusive of all exterior doors) and underground utility and sewer pipes outside the exterior walls of the dwelling, except repairs rendered necessary by the negligence or intentional wrongful acts of Resident, Guests, or Invitees. Resident shall promptly report in writing to Management any defective condition known to it which Management is required to repair and failure so to report such conditions shall make Resident responsible to Management for any liability incurred by Management by reason of such conditions. If any damage, beyond normal wear and tear, is caused by Resident, Guests, or Invitees, Resident agrees to pay Management the cost of repair as Additional Rent with the next rent payment due hereunder. Resident may not remodel or make alterations without the prior written consent of Management. Alterations include, without limitation, any structural change, wallpapering, painting of the Premises, changing locks, modification of appliances, or removal of any fixtures, trees or shrubs. No nails, screws or adhesive hangers except standard picture hooks, shade brackets and curtain rod brackets may be placed in walls, woodwork or any part of Premises without Management's written permission. Absolutely no penetration, by nails or otherwise, is permitted of the exterior siding of the Premises.

**27. ABANDONMENT:** Resident shall not abandon the Premises or Resident's personal property. If Resident removes or attempts to remove all or substantially all of Resident's personal property from the Premises other than in the usual course of continuing occupancy without first having paid Management all monies due for proper termination of this Rental Agreement, Resident shall be in default under this Lease, and Management shall have the right, without notice, to store or dispose of any property left in or upon the Premises by Resident.

62B-FD6BA

DocuSign Envelope ID: 61CF6E58-0797-4AD8-AE9A-CB883D27E959



Management shall also have the right to store or to dispose of any of Resident's property remaining in or upon the Premises after the termination of this Lease. Resident agrees that such circumstances as evidence of Resident's abandonment of the Premises include, but are not limited to, the failure to pay rent or other charges, discontinuance of any utility service, failure to respond to any notices, phone calls, or correspondence from Management, or removal of a substantial amount of Resident's personal property from the Premises. In the event the Premises is abandoned, Management shall also have the right, without notice, to secure the Premises with new locks, to store or dispose of any property or personal possessions left in or upon the Premises or Property by Resident, Guests, or Invitees, and to re-enter the Premises for new occupancy, without filing a dispossessory warrant or obtaining a writ of possession, and without waiving any claims against the Resident hereunder. Resident agrees that Management shall have no liability for any actions taken to secure the Premises, to obtain possession of the Premises, or to store or dispose of any personal property or possessions found in the Premises when the Premises is abandoned or upon termination of this Lease. Resident acknowledges and agrees that Management's acts or failure to act with regard to securing the Premises, obtaining possession of the Premises, or storing or disposing of any personal property or possessions found in or upon the Premises under circumstances which are or may indicate abandonment are a contractual matter to which the Resident has given the Resident's consent, and any alleged breach shall not give rise to a claim against Management in tort, nor to a claim for punitive, consequential, or other damages.

BY SIGNING THIS RENTAL AGREEMENT, THE TENANT AGREES THAT UPON SURRENDER, ABANDONMENT, OR RECOVERY OF POSSESSION OF THE DWELLING UNIT DUE TO THE DEATH OF THE LAST REMAINING TENANT, AS PROVIDED BY CHAPTER 83, FLORIDA STATUTES, THE LANDLORD SHALL NOT BE LIABLE OR RESPONSIBLE FOR STORAGE OR DISPOSITION OF THE TENANT'S PERSONAL PROPERTY.

**28. MORTGAGEE'S RIGHTS:** Resident's rights under this Lease shall at all times be automatically subordinate and subject to any deed to secure debt, deed of trust, or mortgage which is now or shall hereafter be placed on the Premises. If requested, Resident shall execute promptly any certificate or document that Management may request to specifically implement the terms of this paragraph.

**29. COMMUNITY POLICIES:** As a material consideration of this Lease, Resident shall comply and cause Resident's Guests and Invitees to comply with the New Home Orientation Handbook and Community Policies and with modifications Management may make from time to time and publish in writing. Such Handbook and Community Policies with modifications as referenced heretofore constitute a part of the Lease. Management will provide Resident with a printed copy of the New Home Orientation Handbook at New Home Orientation.

**30. SECURITY:** Resident acknowledges and agrees that Management has not made any representations, covenants, or warranties, either express or implied, that security devices or

DocuSign Envelope ID: 61CF6E58-0797-4AD8-AE9A-CB8B3D27E959



security personnel are, have been, or will be provided to protect Resident or the property of Resident, Guests, or Invitees from crime to person or Property. Management is not an insurer of Resident's safety or the safety of Resident's property. Resident acknowledges and understands that Resident has a duty to exercise care for Resident, Guests, and Invitees of the Premises' safety and welfare, and that Management is not liable for criminal acts of other persons. Resident agrees to rely solely on local law enforcement agencies for all information regarding criminal activity in the geographic area of the Premises. Resident agrees to look solely to public law enforcement, emergency services, or fire services for security services or protection. RESIDENT AGREES THAT THE FURNISHING OF SAFETY DEVICES AND PATROL SERVICE (IF APPLICABLE) DOES NOT CONSTITUTE A GUARANTEE OR WARRANTY OF THEIR EFFECTIVENESS OR OPERATION OR IMPOSE ANY OBLIGATION TO CONTINUE SUCH ITEMS, EXCEPT AS MAY BE REQUIRED BY APPLICABLE STATE LAWS. RESIDENT RELEASES AND AGREES TO HOLD HARMLESS MANAGEMENT FROM ALL CLAIMS WITH RESPECT TO ANY PERSONAL INJURY OR PROPERTY DAMAGE WHICH MAY IN ANY WAY RELATE EITHER TO RESIDENT'S RELIANCE UPON ANY OF THE SAFETY DEVICES OR PATROL SERVICE, OR ANY ABSENCE, DEFECT, MALFUNCTION, OR INADEQUACY THEREOF. .

**31. INDEMNIFICATION:** Resident releases Management and Landlord from liability for, and agrees to indemnify Management and Landlord against all costs, losses, expenses and damages, including, without limitation, reasonable attorneys' fees, incurred or suffered by either or both Management or Landlord resulting from, arising from, related to, connected to, or caused by, any one or more of the following:  (a) Resident's failure to perform any covenant or condition of this agreement; (b) any damage or injury happening in or about Premises to Resident, permitted occupants of the Premises, or Guest or Invitees; (c) Resident's failure to comply with any requirements imposed by any governmental authority; (d) any judgment, lien or other encumbrance filed against Premises as a result of any act or omission of Resident, Guests, or Invitees; (e) the negligence or willful or wanton acts of one or more of Resident, Guests or Invitees; or (f) Resident's occupancy of the Premises.

**32. SEVERABILITY:** If any provision of this agreement shall be declared invalid or unenforceable, the remainder of the agreement shall continue in full force and effect.

**33. ENTIRE AGREEMENT:** This agreement and any attached addendums and riders constitute the entire agreement between the parties and no representations, inducements, promises or agreements, oral or otherwise between the parties not embodied herein shall be of any force or effect.

**34. LEAD BASED PAINT NOTIFICATION (LBPN):** Prior to entering into this Lease, Resident has had an opportunity to inspect the Premises for the presence of lead-based paint, if any, in the Home. The LBPN addendum, if applicable, is incorporated by reference.

**35. ATTORNMENT, SALE, FORECLOSURE, RENOVATION AND FORMER EMPLOYEES:** In the event the Premises or any portion thereon is foreclosed, sold, placed

DocuSign Envelope ID: 61CF6E58-0797-4AD8-AE9A-CB8B3D27E959



under contract to be sold, or scheduled for substantial renovation, rehabilitation, or demolition, either Management or the new owner shall have the right to terminate the Lease on 60 days written notice. In the event that Management elects to terminate the occupancy or this Lease under this provision, then, as consideration for such right of termination and during the 30 day period immediately preceding either the termination date of Resident's occupancy or the termination of the Lease, the Resident's Rent shall be reduced by fifty percent (50%); however, if the Resident shall hold over beyond the termination date, then Resident shall pay the holdover Rent as provided in Paragraph 13.

**36. NO OWNERSHIP:** This lease only creates the relationship of landlord (Management) and tenant (Resident) and does not create any ownership or transferable rights in real estate. This lease is not an estate for years.

**37. JOINT AND SEVERAL LIABILITY:** Each person or entity that signs this lease or any guarantor under a separate guarantor's agreement is jointly and severally liable for all rent or other charges which come due. Management may look to any Resident or guarantor for payment of all or a part of any obligation due without first suing or attempting to collect from any other responsible party.

**38. KNOW YOUR NEIGHBORS:** Certain individuals convicted of certain sex-related crimes are required to register their name and current address on an index maintained by the state or county in which they reside. You may access that index in order to determine whether any such individuals live in proximity to a certain location. The public may access the Internet to view all sex offenders registered in the state. The Department of Justice's Sex Offender Registry can be obtained through the Internet at www.nsopr.gov. The public may also contact the local Law Enforcement Office to view a list of the sex offenders listed in their county. Residents are encouraged to research the Sex Offender Registry prior to executing the Lease as the proximity of the Premises to the residence of a known sex offender shall not be cause for Resident to breach the Lease.

**39. RADON GAS:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

DocuSign Envelope ID: 61CF6E5B-0797-4AD8-AE9A-CB8B3D27E959



In witness hereof, the parties have caused this Rental Agreement to be signed in person or by a person duly authorized, the date and year first above written.

Rudyard Jeffers

8/1/2016

Rudyard Jeffers (Joint and Several)

Date

Maurisia Jeffers

8/1/2016

Maurisia Jeffers (Joint and Several)

Date


HavenBrook Homes, LLC,

By: Cathy Petakos

Cathy Petakos

Title: Leasing Coordinator


As to Management, this 1 day of August, 2016

Notary Public:

My Commission Exp

ZAILY NEPOMUCENO
MY COMMISSION # FF196881
EXPIRES February 05, 2019
407 398-0 53  Florida Notary Service.com

Page 17 of 38

62B-FD6BA

DocuSign Envelope ID: 61CF6E58-0797-4AD8-AE9A-CB8B3D27E969



### Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards

Premises: 2170 NE 1st Ave, Pompano Beach, FL 33060

Lessee: Rudyard Jeffers, Maurisia Jeffers

This Addendum shall become part of the Rental Agreement (the "Lease") for the above described Premises dated 9/6/2016 between HavenBrook Homes, LLC as agent for the Lessor of the above described Premises and the above described Lessee(s). For the purposes of this Addendum, "Agent" means the managing agent who is acting on behalf of the lessor, landlord or owner of the Premises. "Lessor" means owner or landlord of the Premises. "Lessee" means Resident leasing the Premises.

**Lead Warning Statement:**
Housing built before 1978 may contain lead based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, Lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.

**Lessor's Disclosure:**
    (a)  Presence of lead-based paint and/or lead-based paint hazards (check one below):

    [  ]   There are known lead-based paint and/or lead-based paint hazards in the housing unit.
          Details: _____

          Lessor has no knowledge of any lead-based paint and/or any lead-based paint hazards in the housing unit.

    (b)  Records and reports that were made available to Lessor (check one below):

    [  ]   Lessor has provided the Lessee with all available records and reports that pertain to lead-based paint and/ or lead-based paint hazards in the housing unit.
          Documents provided: _____

          Lessor has no reports or records pertaining to lead-based paint and/or any lead-based paint hazards in the housing unit.

**Lessee's Acknowledgment: (Initial)**
          Lessee has received copies of all information listed above.
          Lessee has received the pamphlet *Protect Your Family from Lead in Your Home*.

**Agent's Acknowledgement: (Initial)**
          Agent has informed the Lessor of the Lessor's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**
The following parties have reviewed the above information and certify, to the best of their knowledge, that the information they have provided is accurate and true.

Page 18 of 38

62B-FD68A

DocuSign Envelope ID: 61CF8E56-0797-4AD8-AE9A-CB8B3D27E959

Lessee: Maunsia Jeffers

Lessee: Rudyard Jeffers

Lessor: Cathy Pumkos

Agent: _____

Date: 8/1/2016

Date: 8/1/2016

Date: 8/1/2016

Date: _____

## 2017 FOREIGN LIMITED LIABILITY COMPANY ANNUAL REPORT

DOCUMENT# M13000006154

Entity Name: RHA 2 LLC

Current Principal Place of Business:

3505 KOGER BLVD, STE. 400
DULUTH, GA 30096

Current Mailing Address:

3505 KOGER BLVD, STE. 400
DULUTH, GA 30096 US

FEI Number: 46-3043323

**FILED**

Jan 12, 2017
Secretary of State
CC1328985572

Name and Address of Current Registered Agent:

CORPORATION SERVICE COMPANY
1201 HAYS STREET
TALLAHASSEE, FL 32301 US

Certificate of Status Desired: Yes

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: ROBERT LEE                                          01/12/2017

Electronic Signature of Registered Agent                        Date

### Authorized Person(s) Detail :

| | | | | |
|---|---|---|---|---|
| Title | MGR | | Title | MGR |
| Name | RHA 2, INC | | Name | WHELAN, PATRICK |
| Address | 3505 KOGER BLVD, STE. 400 | | Address | 3505 KOGER BLVD, STE. 400 |
| City-State-Zip: | DULUTH GA 30096 | | City-State-Zip: | DULUTH GA 30096 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: CASSEY DAVIS                    PARALEGAL          01/12/2017

Electronic Signature of Signing Authorized Person(s) Detail       Date

2/2/2017
Delaware.gov

Division of Corporations

Governor | General Assembly | Courts | Elected Officials | State Agencies

Department of State: Division of Corporations

Allowable Characters

Frequently Asked Questions   View Search Results

HOME
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location

SERVICES
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
Entity Search
Status
Validate Certificate
Customer Service Survey

INFORMATION
Corporate Forms
Corporate Fees
UCC Forms and Fees
Taxes
Expedited Services
Service of Process
Registered Agents
Get Corporate Status
Submitting a Request
How to Form a New Business Entity
Certifications, Apostilles & Authentication of
Documents

## Entity Details

THIS IS NOT A STATEMENT OF GOOD STANDING

| | | | |
|---|---|---|---|
| File Number: | 5350815 | Incorporation Date / Formation Date: | 6/13/2013 (mm/dd/yyyy) |
| Entity Name: | RHA 2 LLC | | |
| Entity Kind: | Limited Liability Company | Entity Type: | General |
| Residency: | Domestic | State: | DELAWARE |

### REGISTERED AGENT INFORMATION

| | |
|---|---|
| Name: | CORPORATION SERVICE COMPANY |
| Address: | 2711 CENTERVILLE RD SUITE 400 |
| City: | WILMINGTON |
| County: | New Castle |
| State: | DE |
| Postal Code: | 19808 |
| Phone: | 302-636-5401 |

Additional information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like    Status    Status,Tax & History Information   Submit

Back to Entity Search

For help on a particular field click on the Field Tag to take you to the help area.

site map  |  privacy  |  about this site  |  contact us  |  translate  |  delaware.gov

https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx

1/1



BR WARD COUNTY PROPERTY APPRAISER

| | 2170 NE 1 AVENUE, POMPANO BEACH | | | | 4842 26 09 0290 |
| | RHA 2 LLC | | | Millage | 1512 |
| | 3505 KOGER BLVD #400 DULUTH GA 30096 | | | Use | 01 |
| | VERA VILLAS 2ND SEC 48-47 B LOT 22 BLK 4 | | | | |

The just values displayed below were set in compliance with Sec. 193.011, Fla. Stat., and include a reduction for costs of sale and other adjustments required by Sec. 193.011(8).

Click here to see 2016 Exemptions and Taxable Values to be reflected on the Nov. 1, 2016 tax bill.

| | | | | Assessed / SOH Value | Tax |
|---|---|---|---|---|---|
| | $21,010 | $111,460 | $132,470 | $132,470 | |
| | $21,010 | $111,460 | $132,470 | $129,090 | $2,751.74 |
| | $21,010 | $96,350 | $117,360 | $117,360 | $2,575.25 |

| | | | | |
|---|---|---|---|---|
| | $132,470 | $132,470 | $132,470 | $132,470 |
| Portability | 0 | 0 | 0 | 0 |
| Assessed/SOH | $132,470 | $132,470 | $132,470 | $132,470 |
| Homestead | 0 | 0 | 0 | 0 |
| Add. Homestead | 0 | 0 | 0 | 0 |
| Wid/Vet/Dis | 0 | 0 | 0 | 0 |
| Senior | 0 | 0 | 0 | 0 |
| Exempt Type | 0 | 0 | 0 | 0 |
| | $132,470 | $132,470 | $132,470 | $132,470 |

| | Type | | | | | Type |
|---|---|---|---|---|---|---|
| 7/21/2015 | DRR-T | | 113148681 | $3.50 | 6,002 | SF |
| 3/17/2014 | WD-Q | $145,000 | 112196289 | | | |
| 4/12/2012 | SWD-Q-DS | $66,100 | 48754 / 411 | | | |
| 9/6/2011 | CET-D | $42,600 | 48212 / 1656 | | | |
| 1/19/2005 | WD | $162,000 | 38970 / 765 | Adj. Bldg. S.F. (Card, Sketch) | | 1571 |
| | | | | | | 1 |

Special Assessments

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 15 | | | | | | | | |
| R | | | | | | | | |



SAVE
MONEY

○ Sort By Folio Number    ○ Sort By Name    ● Sort By Address
Documents 151 - 200              543 Records Found              ◀ Prev 50 - Next 50 ▶

| | | |
|---|---|---|
| 514228022710 | RHA 2 LLC | 204 SW 2 AVENUE |
| 494229090130 | RHA 2 LLC | 2041 NW 29 TERRACE |
| 494229090480 | RHA 2 LLC | 2070 NW 29 AVENUE |
| 484226172770 | RHA 2 LLC | 2080 NW 5 TERRACE |
| 494202141490 | RHA 2 LLC | 211 SW 14 STREET |
| 494126030060 | RHA 2 LLC | 2110 NW 61 AVENUE |
| 514222221050 | RHA 2 LLC | 2114 WILEY COURT |
| 484319061710 | RHA 2 LLC | 2121 NE 34 STREET |
| 514222220620 | RHA 2 LLC | 2123 PLUNKETT COURT |
| 484226090290 | RHA 2 LLC | 2170 NE 1 AVENUE |
| 504205130670 | RHA 2 LLC | 218 NW 28 WAY |
| 494212090880 | RHAMES,IDA CATHIE | 2180 NE 56 COURT |
| 504208032040 | RHA 2 LLC | 219 SW 21 WAY |
| 484226090610 | RHA 2 LLC | 220 NE 23 STREET |
| 514114100090 | RHA 2 LLC | 220 SW 69 TERRACE |
| 484125100300 | RHA 2 LLC | 2206 NW 62 TERRACE |
| 484226160680 | RHA 2 LLC | 221 NW 19 STREET |
| 514204010790 | RHA 2 LLC | 2218 FARRAGUT STREET |
| 514123110580 | RHA 2 LLC | 2219 SW 68 TERRACE |
| 514209052900 | RHA 2 LLC | 2225 TAFT STREET |
| 514221120200 | RHA 2 LLC | 2242 WASHINGTON STREET |
| 514221032140 | RHA 2 LLC | 2244 MAYO STREET |
| 484135041020 | RHA 2 LLC | 225 NW 78 AVENUE |
| 514227080140 | RHA 2 LLC | 225 SE 2 STREET |
| 504208032370 | RHA 2 LLC | 228 SW 22 AVENUE |
| 504208130200 | RHA 2 LLC | 230 SW 29 AVENUE |
| 514126041930 | RHA 2 LLC | 2300 SUNSHINE BOULEVARD |
| 514219012542 | RHA 2 LLC | 2310 SW 44 AVENUE |
| 514204013200 | RHA 2 LLC | 2320 DOUGLAS STREET |
| 494232130330 | RHA 2 LLC | 2323 NW 12 COURT |



p⬥mpano
beach.
Florida's Warmest Welcome

City of Pompano Beach
100 West Atlantic Boulevard
Pompano Beach, Florida 33060

## CODE COMPLIANCE NOTICE OF VIOLATION
### AND
### NOTICE OF HEARING

**Date:**

01/10/2017

**Sent To:**

CORPORATION   SERVICE
COMPANY

1201 HAYS STREET
TALLAHASSEE, FL 32301

**Case #:**

17010053

**Property Owner:**

RHA 2 LLC

3505 KOGER BLVD #400
DULUTH, GA  30096

**Certified Mail #:**

70160910000179690826

**Property Description:**

484226090290

**Legal Description:**

VERA VILLAS 2ND SEC 48-47 B LOT 22
BLK 4

**AKA:**

2170 NE 1 AVE, POMPANO BEACH, FL
33060

YOU ARE HEREBY NOTIFIED that the undersigned inspector alleges that on 1/10/2017 the following violation(s) of the City of Pompano Beach Code of Ordinances existed on the property above:

| Chapter/Section | Description | Violation Description/Correction |
|---|---|---|
| 1 Chapter 152: Buildings 152.01(B) Permits Required | It shall be unlawful for any person, firm, or corporation to violate any of the requirements of the Florida Building Code, as adopted by this chapter. Each such person, firm, or corporation shall be deemed to be in violation of a separate offense for each and every day during which any violation of any of the provisions of said Code is committed or continued, and upon conviction thereof, shall be punished.

Pursuant to FBC 105.1: Any owner or authorized agent who intends to construct, enlarge, alter, repair, move, demolish, or change the occupancy of a building or structure, or to erect, install, enlarge, alter, repair, remove, convert or replace any impact resistant coverings, electrical, gas, mechanical or plumbing system, the installation of which is regulated by this code, or to cause any such work to be done, shall first make application to the building official and obtain the required permit. | *WWOP (WORK WITHOUT PERMIT) KITCHEN CABINET REMOVAL/REPLACEMENT. PLEASE OBTAIN APPROVED PERMITS FOR ALL WORK REQUIRING PERMITS. |

| 2 | Chapter 153: Rental Housing Code 153.23(C)(1)(a) Basic Bathroom Facilities | Each dwelling unit and each moveable unit shall not have less than the following:  A properly installed flush water closet, lavatory basin and a bathtub or shower in a sanitary and good working condition. | *BACKFLOW INTO BATHROOM TUB. PLEASE INSURE ALL BATHROOM FACILITIES ARE PROPERLY INSTALLED, CAULKED AND SEALED, IN SANITARY CONDITION AND IN GOOD WORKING CONDITION. |
| 3 | Chapter 153: Rental Housing Code 153.23(C)(1)(c) Approved Kitchen Sink Required | Each dwelling unit and each moveable unit shall not have less than the following:  An approved type kitchen sink. | MISSING KITCHEN SINK.  PLEASE INSURE AN APPROVED KITCHEN SINK INSTALLED. |
| 4 | Chapter 153: Rental Housing Code 153.23(D) Extermination Requirement | Extermination requirement.  The owner shall be responsible to make reasonable provisions for extermination in the following cases.  (1) When infestation exists in one or more units of a multiple-unit structure.  (2) When infestation exists in shared or public areas of a multiple-unit structure.  (3) When infestation existing in a single unit structure is due to failure of the owner to maintain the dwelling in a rat-proof and reasonably insect-proof condition. | *ROACH AND FLY INFESTATION. PLEASE OBTAIN RECEIPT FROM CERTIFIED PEST CONTROL THAT INSURES SERVICE HAS BEEN OBTAINED AND THAT BUILDING IS FREE OF INFESTATION OF INSECTS / RODENTS / VERMIN. IN ADDITION, PLEASE INSURE SERVICE  WILL BE MAINTAINED ON A REGULAR BASIS. |
| 5 | Chapter 153: Rental Housing Code 153.23(E)(1) Supplied Cabinets and/or Shelves | Supplied cabinets and/or shelves for the storage of eating, drinking and cooking equipment and utensils shall be properly installed and maintained in a sanitary condition and kept in a good state of repair. | *CABINETS IN DISREPAIR. PLEASE INSURE ALL CABINETS / SHELVES ARE PROPERLY INSTALLED, IN SANITARY CONDITION AND IN GOOD WORKING CONDITION |
| 6 | Chapter 153: Rental Housing Code 153.23(E)(3)(b) Condition of Plumbing Equipment | Every plumbing fixture, water pipe, waste pipe, gas line and drain line shall be maintained in good working condition, maintained in a sanitary condition and free of leaks, defects and obstructions. | *LEAK UNDER KITCHEN SINK. PLEASE INSURE EACH UNIT HAS A  KITCHEN SINK INSTALLED PROPERLY AND MAINTAINED IN GOOD WORKING CONDITION. |
| 7 | Chapter 153: Rental Housing Code 153.23(E)(4)(d) HVAC in Proper Working Condition | Every supplied air conditioning and heating facility or similar device shall be properly installed and maintained in good working condition. | *LEAK COMING FROM INTERIOR A/C HANDLER.  PLEASE PLEASE INSURE AIR CONDITIONING AND HEATING FACILITIES ARE PROPERLY INSTALLED AND IN GOOD WORKING CONDITION. |
| 8 | Chapter 155: Zoning 155.4303(X)4.e. Standards for Specific accessory Uses and Structures. | PARKING OR STORAGE OF MOTOR VEHICLES, RECREATIONAL VEHICLES, BOATS, OR TRAILERS IN RESIDENTIAL ZONING DISTRICTS.  Standards. The parking or storing of a motor vehicle, recreational vehicle, boat, or trailer on a public right-of- way or property in a residential zoning district is allowed as an accessory use, subject to the following standards (unless exempted by subsection 3.b above):  Any motor vehicle, recreational vehicle, boat, or trailer parked or stored in a required front yard or a street side yard shall be parked or stored on a hard, dustless, and bonded surface (such as asphaltic concrete, Portland cement, or other material normally used to surface vehicle areas) that is the same size or larger than the parked or stored motor vehicle, recreational vehicle, boat, airboat, or trailer. Driveways or accessways serving the parking or storage area need not be such a hard, dustless, and bonded surface. | *VEHICLE PARKED ON AN UNAPPROVED SURFACE.  PLEASE INSURE ALL VEHICLES ARE PARKED ON APPROVED HARD SURFACE OR IN SWALE FACING THE FLOW OF TRAFFIC. |
| 9 | Chapter 96: Health and Safety 96.26(C)(6) Public Nuisance; Discarded/Unused Objects | The following are declared to be public nuisances when occurring upon any street, sidewalk, alley, or other public place or property, or upon any private property:  The presence of any discarded or unused objects and/or equipment, including but not limited to furniture, stoves, refrigerators, freezers, tires, cans, or containers. | *UNUSED/ DISCARDED OBJECT(S) ON THE PROPERTY.  PLEASE REMOVE ALL UNUSED / DISCARDED OBJECTS FROM PROPERTY OR STREET VIEW. |

Notes/Means of Correction:
*UNUSED/ DISCARDED OBJECT(S) ON THE PROPERTY. PLEASE REMOVE ALL UNUSED / DISCARDED OBJECTS FROM PROPERTY OR STREET VIEW.

*VEHICLE PARKED ON AN UNAPPROVED SURFACE. PLEASE INSURE ALL VEHICLES ARE PARKED ON APPROVED HARD SURFACE OR IN SWALE FACING THE FLOW OF TRAFFIC.

*WWOP (WORK WITHOUT PERMIR) KITCHEN CABINET REMOVAL/REPLACEMENT. PLEASE OBTAIN APPROVED PERMITS FOR ALL WORK REQUIRING PERMITS.

*CABINETS IN DISREPAIR. PLEASE INSURE ALL CABINETS / SHELVES ARE PROPERLY INSTALLED, IN SANITARY CONDITION AND IN GOOD WORKING CONDITION

*MISSING KITCHEN SINK. PLEASE INSURE AN APPROVED KITCHEN SINK INSTALLED.

*LEAK UNDER KITCHEN SINK. PLEASE INSURE EACH UNIT HAS A KITCHEN SINK INSTALLED PROPERLY AND MAINTAINED IN GOOD WORKING CONDITION.

*LEAK COMING FROM INTERIOR A/C HANDLER. PLEASE INSURE AIR CONDITIONING AND HEATING FACILITIES ARE PROPERLY INSTALLED AND IN GOOD WORKING CONDITION.

*BACKFLOW INTO BATHROOM TUB. PLEASE INSURE ALL BATHROOM FACILITIES ARE PROPERLY INSTALLED, CAULKED AND SEALED, IN SANITARY CONDITION AND IN GOOD WORKING CONDITION.

*ROACH AND FLY INFESTATION. PLEASE OBTAIN RECEIPT FROM CERTIFIED PEST CONTROL THAT INSURES SERVICE HAS BEEN OBTAINED AND THAT BUILDING IS FREE OF INFESTATION OF INSECTS / RODENTS / VERMIN. IN ADDITION, PLEASE INSURE SERVICE WILL BE MAINTAINED ON A REGULAR BASIS.

QUESTIONS/CONCERNS/RE-INSPECTION: PLEASE CONTACT CODE COMPLIANCE INSPECTOR MR. AMANI MURRAY     OFFICE: (954) 786-4361     MOBILE: (954) 534-0837    EMAIL: MMURRAY@CGASOLUTIONS.COM.

*If the referenced violations are corrected within 7 days from the date of issuance of this notice, you must contact the Code Compliance Inspector at 954-786-4361.*

Should all violations not be corrected and approved by the undersigned Code Compliance Inspector within the date and time, specified above, you will be required to appear at the prosecution of this matter before the City's Special Magistrate for Code Compliance, pursuant to Chapter 37 of the City of Pompano Beach Code of Ordinances and Chapter 162, Florida Statutes.

A hearing for this matter has been set by the Special Magistrate Clerk on 8th day of March, 2017 at 1:00 p.m. in the City of Pompano Beach Commission Chambers, 100 West Atlantic Boulevard, Pompano Beach, Florida. **THIS HEARING, requiring you to be present, will be held if the violation(s) have not been brought into compliance and approved by Code Compliance by 7:00 a.m. on 3/3/2017, as evidenced by the Issuance of an Affidavit of Compliance by the Code Compliance Inspector.**

The purpose of this Hearing is for the Special Magistrate to make "Findings of Fact" and "Conclusions of Law" relating to the violation(s) specified in the attached Violation detail and to issue an appropriate Order. The Hearing is also your opportunity to present evidence and/or contest the alleged violations, should you wish to do so. If a violation is found, the Order may require you to correct the violation(s) by a specified date. In addition, the Order may impose a daily fine of up to $1,000.00 per day if the Order is not complied with or a daily fine of up to $5,000.00 per day for each day the same violation(s) is or has been repeated after being brought into compliance, even if the repeated violation(s) is/are again in compliance prior to the Hearing. Fines of up to $15,000.00 per violation may be imposed if the Special Magistrate finds the violation to be irreparable or irreversible in nature. Additionally, fines may be imposed to recover all costs incurred by the City in prosecuting this matter, if all violations are not complied _prior_ to the Hearing date and you may be assessed any such costs.

You should be aware that if the alleged violation(s) is/are corrected prior to the Hearing and recurs within one year from the date of the original Notice of Violation, the case may be presented to the Special Magistrate as a Recurring Violation even if the violation is subsequently corrected.

You have the right to be represented by an attorney and to respond and present evidence and witnesses at the Hearing. If you wish to be represented by an attorney, your attorney MUST notify the Special Magistrate's Clerk in writing at least five working days before the Hearing.

You may also have other rights which are set forth in Chapter 37 of the City of Pompano Beach Code of Ordinances. If a person decides to appeal any decision with respect to any matter considered at this Hearing, such person will need to ensure that a verbatim record of the proceedings is made, which includes the testimony and evidence upon which the appeal is to be based, Section 286.0105, Florida Statutes.

For additional HEARING information, contact the Special Magistrate Clerk at 954-786-4361.

For additional VIOLATION information, or to request an inspection for compliance prior to the listed compliance date, contact the Code Compliance Inspector listed below at 954-786-4361.

Malaika Murray

Code Compliance Inspector

Signature

Date Prepared

CASE NO. CACE17006711

IN THE CIRCUIT COURT OF THE 17th
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CIVIL DIVISION

CASE NO. CACE17006711

Judge Michael L. Gates

RUDYARD JEFFERS and
MAURISIA JEFFERS,

        Plaintiffs,

v.

RHA 2, LLC; HAVENBROOK HOMES,
LLC; and PATRICK WHELAN

        Defendants.

## NOTICE OF UNAVAILIBILITY

Now comes Plaintiffs Rudyard and Maurisia Jeffers, hereby files this Notice of Unavailability stating that the undersigned will be unavailable from February 23, 2018 through March 20, 2018. Plaintiffs requests that no hearings, depositions, mediations, orders, and other proceedings requiring Plaintiff attendance, be scheduled during that period.

Respectfully submitted,

*/s/Rudyard Jeffers*
*/s/Maurisia Jeffers*
Plaintiffs
Rudyard Jeffers
Maurisia Jeffers
P O Box 5764
Fort Lauderdale, FL 33310
maurisiajfl@aol.com
Tel:954-873-5413

CASE NO. CACE17006711

## CERTIFICATE OF SERVICE

We hereby certify that on this day 15th day of February, 2018, the foregoing document was electronically filed with the Clerk of Court using the e-filing portal. We also certify that the foregoing document is being served this day on Rory Eric Jurman Esq. via fax at 9543778101.

Respectfully submitted,

*/s/ Maurisia Jeffers*

*/s/ Rudyard Jeffers*

Plaintiffs
Mrs. Maurisia Jeffers
Mr. Rudyard Jeffers
P O Box 5764
Fort Lauderdale, FL 33310
maurisiajfl@aol.com
T:954-873-5413